**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE NATIONAL ELEVATOR INDUSTRY PENSION FUND,** | ) ) ) ) | |
|    **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **CASE NO.: 2:08-CV-162-MEF** |
| **DALLAS CAVINESS, D.C. c/o RHONDA CAVINESS, et al.** | ) ) ) ) | |
|    **Defendants.** | | |

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

COMES NOW, Robert Caviness, by and through undersigned counsel, and responds to the Motion for Summary Judgment filed on behalf of Dallas C. Caviness and Rhonda Caviness in her capacity as guardian for D.C., a minor, in the above-styled cause. In support thereof, Robert Caviness presents the following Response and Brief to Motion for Summary Judgment:

## INTRODUCTION

At the time of his death, George W. Caviness, Jr. ("George Caviness") was entitled to monthly pension benefits from National Elevator Industry Pension Fund. George Caviness designated his brother, Robert Caviness, as the sole beneficiary of the pension benefits. George Caviness' two sons also claimed an interest in the proceeds. Trustees of the National Elevator Industry Pension Fund filed an Interpleader with this Court due to competing claims for those benefits and requested this Court to determine the rightful and legal owner of the pension benefits.

## GEORGE CAVINESS' STATEMENT OF UNDISPUTED FACTS

1.    The National Elevator Industry (hereinafter referred to as "NEI") Pension Fund is a benefit plan administered by the Trustees of the National Elevator Industry Pension Fund in Newtown Square, Pennsylvania.  (Exhibit 1, Summary Plan Description of the National Elevator Industry Pension Plan, p. 34)

2.    George Caviness was a Participant in the NEI Pension Fund.  (Complaint, ¶ 2)

3.    George Caviness also held a $40,000 life insurance policy through ReliaStar Insurance Company.  (Exhibit 2, Complaint for Interpleader, ReliaStar Life Insurance Company v. Robert Caviness, Dallas Caviness, and Rhonda Caviness Pierce, U.S. District Court, Middle District of Alabama, Northern Division, Case No. 2:07-cv-1084)

4.    Rhonda Caviness Pierce ("Rhonda Caviness") was married to George Caviness until February 23, 2004, when they were divorced in Shelby County, Alabama.  (Exhibit 3-A, Final Judgment of Divorce)

5.    A marital settlement agreement ("Divorce Agreement") reached between George and Rhonda Caviness on January 23, 2004, was incorporated into their February 23, 2004 Final Judgment of Divorce.  (Exhibit 3, Agreement of the Parties)

6.    George and his wife, Rhonda, had two sons:  Dallas Caviness, date of birth August 21, 19xx, and D.C. Caviness, date of birth April 2, 19xx.  (Exhibit 3, ¶1)

7.    Dallas Caviness is the adult son of George and Rhonda Caviness.  At the time of the Caviness' divorce, Dallas was working and contributing to his own support, and therefore, the Agreement provided that no child support was to be paid on his behalf.  (Exhibit 3, ¶ 2(a)); (Exhibit 4, Affidavit of Robert Caviness, ¶¶ 6, 7)

8.      The Agreement provided that George Caviness would pay child support in the amount of $488 per month for the minor child D.C. until such time as he reached the age of 19, married or became self-supporting, whichever first occurred.  (Exhibit 3, ¶ 2(a))

9.      As a provision of the Agreement, George Caviness was required to maintain a single life insurance policy with the following conditions:

> Husband shall maintain and name the children the irrevocable beneficiary of a policy of life insurance on his life provided through his employer for so long as there is an obligation for child support or college expenses to be paid.

(Exhibit 3, ¶4(d))

10.     The Caviness' marital settlement agreement, incorporated in the Final Order of Divorce, provided for each party to take sole title and possession of any pension plan held in his/her name at the time the Agreement was executed as follows:

> The parties agree that each has made a full and fair disclosure of any assets, real and personal, vested in either of them, and each shall take sole title to and possession of all items of personal property currently in his or her name or belonging solely to him or her (and not specifically referred to in this agreement), including, without limitation, cash, checking and savings accounts, jewelry, securities, IRA's, KEOGH's, and/or pension and profit sharing plans, partnerships, business interest, insurance policies, and the like….

(Exhibit 3, ¶7(e))

11.     Rhonda Caviness agreed to renounce any interest in said property vested in George Caviness as follows:

> …and each hereby renounces any interest that he or she may have in property vested in the other.

(Exhibit 3, ¶7(e))

12.     On December 13, 2004, George Caviness designated his brother, Robert Caviness, as the sole beneficiary for any benefits due from the NEI Pension and Health Benefit Plans pursuant to the last Enrollment and Information Changes Form filed with NEI.  (Exhibit 5,

Enrollment and Information Changes, National Elevator Industry Benefit Plans, signed and notarized by George Caviness)[1]

13.    George Caviness died on January 25, 2007.  (Exhibit 6, Death Certificate)

14.    No change was made to the beneficiary designation between December 13, 2004, and George Caviness' death.  Consequently, the named beneficiary is Robert Caviness. (Complaint, ¶ 15)

15.    Prior to his death, George Caviness informed his brother, Robert Caviness, that he designated him the sole beneficiary of his life insurance and pension benefits.  (Exhibit 4, ¶¶ 3, 4)

16.    Robert Caviness received a notice dated February 26, 2007, from NEI of his potential entitlement to life insurance and pension benefits of George Caviness.  (Exhibit 7, NEI Notice of Benefits dated February 26, 2007)

17.    Robert Caviness filed a claim for the pension benefits, claiming entitlement by virtue of his status as the named beneficiary.  (Complaint in Interpleader (hereinafter referred to as "Complaint"), ¶ 16)

18.    Rhonda Caviness, in her capacity as mother and guardian of D.C., a minor, filed a claim for the life insurance benefits insuring the life of George Caviness on behalf of D.C. and Dallas Caviness.  (Complaint, ¶16)

---

[1]  The Caviness Defendants state as an undisputed fact that "George Caviness did not designate a beneficiary of his Pre-Retirement Death-in-Service benefits as prescribed by the Fund."  (Motion for Summary Judgment, p. 8) However, NEI specifically alleged that George Caviness was a participant in the NEI Pension Fund on his death (Complaint, ¶ 3) and that he met the requirements for Pre-Retirement Death-in-Service benefits.  (Complaint, ¶ 11) Although recognizing that no designated beneficiary form was on file with the NEI Pension Fund (Complaint, ¶ 4), they acknowledged that George Caviness named his brother, Robert Caviness, as the sole beneficiary on an Enrollment and Information Changes form filed with the NEI Benefits Office in December 2004.  (Complaint, ¶ 15)

19.    On or about March 6, 2008, the Trustees of the National Elevator Industry Pension Fund filed a Complaint in Interpleader with this Court based upon competing claims for the pension benefits.  (Complaint in Interpleader)

20.    The NEI Pension Plan, Section 6.01(a) provides for the eligibility of a participant's beneficiary to receive Death-In-Service benefits as follows:

> Upon the death at any age of a married Employee with Vested Status who is employed in Covered Employment or whose absence from Covered Employment is due to one of the reasons enumerated in Section 3.06(a), (b), (c), (d), (e), or (f), or if he is on layoff for not more than 24 months, his Spouse shall be entitled to receive a monthly pension benefit of one-half (1/2) of the Employee's monthly benefit calculated as if he had retired on a Normal Retirement Pension in the Straight Life Benefit form on the first day of the month in which his death occurs.

(Exhibit 8, NEI Plan of Pension Benefits, p. 33 § 6.01(a))

21.    According to NEI, George Caviness was vested and laid off on September 26, 2006, and therefore, met the requirements for Pre-Retirement Death-In-Service Benefits to be payable to his designated beneficiary according to the provisions in Section 6.04(a) as specified above.  (Complaint, ¶11)

21.    The requirements for the beneficiary of the pension fund benefits are specified by NEI in Section 6.05(a) of the Pension Fund Plan as follows:

> Each Employee may name a Designated Beneficiary or Beneficiaries to receive benefits under this Article by filing such designation in writing with the Trustees on a form prescribed by the Trustees.  The Employee has the right to change his Designated Beneficiary(ies) at any time.  Any designation or change shall be effective upon receipt by the Trustees prior to the death of the Employee.

> It shall be the responsibility of an individual who claims to be a Designated Beneficiary to demonstrate that a designation or change has been so received by the Trustees if the Fund records to not reflect such designation or change.

(Complaint, ¶12)

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate if "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex* at 324. A court ruling on motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. See e.g., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003). (The evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant.)

## BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

I.    GEORGE CAVINESS DID NOT WAIVE HIS RIGHT TO NAME HIS BROTHER AS THE BENEFICIARY OF HIS PENSION BENFITS

      A.    <u>George Caviness was only obligated to maintain a life insurance policy.</u>

George and Rhonda Caviness were married until February 23, 2004, when they were divorced in Shelby County, Alabama. (Exhibit 2)  Two sons were born as a result of the union of their marriage, namely, Dallas Caviness, date of birth August 21, 19xx, and D.C. Caviness,

date of birth April 2, 19xx.  (Exhibit 3, ¶1)  At the time of their divorce, Rhonda Caviness and George Caviness entered into a marital settlement agreement (Exhibit 3, Divorce Agreement) and said agreement was incorporated into the final order of divorce.  (Exhibit 2)

Rhonda and George Caviness' youngest son, D.C., was a minor at the time of divorce for the purpose of George Caviness' obligation to pay child support.  The parties agreed that George Caviness would "maintain a policy of life insurance on his life provided through his employer naming the children as the irrevocable beneficiary so long as there was an obligation to pay child support or college expenses."  (Exhibit 3, ¶4(d))

It is undisputed that at the time of his death, George Caviness held a $40,000 life insurance policy with ReliaStar Life Insurance Company through his employer, NEI.  (Exhibit 7)  Rhonda Caviness, in her capacity as mother and guardian of D.C., a minor, and Dallas Caviness filed claims for the life insurance benefits insuring the life of George Caviness.[2] (Complaint, ¶ 16) (Exhibit 9, Death Claim filed by Rhonda Caviness) (Exhibit 10, Death Claim filed by Dallas Caviness)

B.    Caviness' Life Insurance Policy is a separate policy from his Pension Fund.

In their Summary Judgment Brief, Dallas Caviness and Rhonda Caviness, in her capacity as guardian for D.C., a minor (hereinafter "Caviness Defendants") claim entitlement to "benefits" as both the life insurance proceeds and pension funds of George Caviness.  Factually, the policies must be distinguished as separate policies to determine the proper and legal distribution of benefits to each policy.

---

[2] The ReliaStar Life Insurance matter is presently submitted on summary judgment briefs before the Honorable Mark Fuller, U.S. District Judge, Middle District of Alabama.

The evidence is undisputed that George Caviness secured two separate policies with National Elevator Industry – the $40,000.00 life insurance policy through ReliaStar Life Insurance Company and the pension fund secured through the National Elevator Industry Plan of Pension Benefits.  NEI clearly designated the policies as separate in their February 26, 2007 Notice of Benefits to Robert Caviness.  (Exhibit 7)  In the notice, NEI designated those policies secured by George Caviness to which they considered Robert Caviness the named beneficiary; that of the "Life Insurance Benefit of $40,000.00 from the Health Fund, subject to approval by ReliaStar Life Insurance Co." and "[A] monthly pension benefit of 50% of your Brother's entitlement effective 02/017/07 [sic] for 10 years."  (Exhibit 7)

The facts are further undisputed that each policy was secured by a separate premium or contribution.  The amount of George Caviness' pension was based upon his years of service and his applicable benefit rate.  (Exhibit 10, Applicable Benefit Rate of Pension Memo, NEIP0018) The Life Insurance was secured through payment of a premium.

Most notably, both ReliaStar and NEI filed separate Complaints for Interpleader in the Middle  District of Alabama - this present action filed by NEI and the life insurance policy filed by ReliaStar. (See ReliaStar Life Insurance Company v. Robert W. Caviness, Dallas C. Caviness, and Rhonda Caviness Pierce (in her capacity as guardian for D.C., a minor [parties realigned on March 21, 2008 as Dallas C. Caviness and Rhonda Caviness Pierce (in her capacity as guardian for D.L.C., a minor), v. Robert W. Caviness] 2:07-cv-01084-WKW-SRW).

       C.      <u>George Caviness was under no legal obligation to name the Caviness</u>
<u>Defendants as beneficiaries of his pension fund benefits.</u>

The Caviness Defendants attempt to impute on George Caviness the obligation to have named them as beneficiaries of his pension fund proceeds, yet said allegation does not comport

with the evidence.  A close look at the language of the Caviness' Divorce Agreement shows that George Caviness was only responsible to provide a single policy of life insurance naming his children as the irrevocable beneficiaries.  (Husband to "maintain a life insurance policy")(Exhibit 3, ¶4(d), *emphasis added*)  The Divorce Agreement could not be clearer.  It specifies the type of policy required as life insurance and specifically lists pension benefits as a separate policy in a separate section of the Agreement and awarded the pension to the Husband.  (See § D herein below)  (See also Exhibit 3, ¶¶ 4(d) and 7(e))

Further, Alabama case law consistently indicates that the purpose of requiring a parent obligated to pay child support to maintain life insurance is to provide for a minor child in the event of the parent's untimely death.  *Jordan v. Jordan*, 688 So.2d 839 (Ala. Civ. App. 1997)(refusing to require trial courts to state their reasons for requiring supporting parents to maintain life insurance for the benefit of their children "because the reason will always be identical…quite obviously, to insure that minor children will receive support in the event the supporting parent dies.")  *Jordan*, id. at 842.   Based upon the specific language in the Caviness' Divorce Agreement and the legally recognized purpose of requiring life insurance coverage, George Caviness was required to maintain only the ReliaStar life insurance policy.

George Caviness' Pension Fund was a separate policy than the ReliaStar life insurance policy and was not required to be maintained to protect child support according to the language of the Divorce Agreement or applicable case law.  [3]

---

[3]  In their original Complaint for Interpleader, ¶ 12, NEI alleges that the Pension Plan provides that the employee's designated beneficiary must be an individual, not an estate, nor a trust, nor more than one individual.  Defendant Robert Caviness received in production from NEI a slightly different plan provision which did not include the language excluding multiple beneficiaries.  However, in the event such provision is applied in this matter, Robert Caviness alleges that the claims by Rhonda Caviness and Dallas Caviness are due to be denied as claiming entitlement to the pension fund benefits for both Dallas and D.C.

D.    <u>George Caviness was awarded sole title and possession of his pension plan at the time of his divorce.</u>

According to Rhonda and George Caviness' Divorce Agreement incorporated into the final order of divorce, "[T]he parties agree that each has made a full and fair disclosure of any assets, real and personal, vested in either of them, and *each shall take sole title to and possession* of all items of personal property currently *in his or her name* or belonging solely to him or her (and not specifically referred to in this agreement), including, without limitation, cash, checking and savings accounts, jewelry, securities, IRA's, KEOGH's, and/or *pension and profit sharing plans*, partnerships, business interest, insurance policies, and the like…." (Exhibit 3, ¶7(e), *emphasis added*)

Not only did the Agreement award George Caviness his pension plan, Rhonda Caviness renounced any interest in the pension benefits with the provision that "…each hereby renounces any interest that he or she may have in property vested in the other." (Exhibit 3, ¶ 7(e)) George Caviness, therefore, was entitled to do with the pension funds as he pleased, including naming the person to receive the benefits in the event of his death. Rhonda Caviness unambiguously agreed that George Caviness would be the sole owner of his pension fund benefits in the Divorce Agreement. *Jardine v. Jardine*, 918 So.2d 127 (Ala. Civ. App. 2005) Divorce judgments are to be construed like other written instruments, and, if there is any uncertainty, the court must construe them so as to express the intent of the parties; such intent can be derived from the provisions of property settlement agreement incorporated into divorce judgment.

On or about December 13, 2004, George Caviness designated his brother, Robert Caviness, as the sole beneficiary for any benefits due from the NEI Pension and Health Benefit Plan. (Exhibit 5) George Caviness died on January 25, 2007. (Complaint, ¶2) (Exhibit 6, Death

Certificate)  No change was made to the beneficiary designation between December 13, 2004, and the date of George Caviness' death.  (Complaint, ¶ 15)

Because George Caviness was granted sole title and possession of his pension plan in the Divorce Decree with no conditions or encumbrances attached, George Caviness did not waive his right to name the beneficiary of the pension benefits.  Consequently, the rightful beneficiary of the pension plan benefits is Robert Caviness.

II.     ROBERT CAVINESS IS ENTITLED TO PENSION BENEFITS

Although NEI conceded that they had no enrollment form on file for George Caviness' pension benefits, they nevertheless acknowledged that he was eligible for the benefits and recognized Robert Caviness as the named beneficiary.  (Exhibit 7)

A.     <u>George Caviness clearly intended to designate his brother as sole beneficiary of his pension fund.</u>

George Caviness made his intent clear by taking affirmative steps to designate his brother as the sole beneficiary of his pension fund and by telling his brother of his decision and designation.  As deliberate as his decision to name his beneficiary was George Caviness' conscious acknowledgement and exclusion of his eligible beneficiaries.  As required on the Change of Beneficiary Form, George Caviness listed D.C. as an eligible dependent, but he also excluded D.C. as his designated beneficiary.  (Exhibit 5)  George Caviness' intent couldn't be clearer.  Without revealing his brother's reasoning for the decision nor the purpose of the funds, Robert seeks to abide by his brother's wishes by maintaining his claim for the pension fund benefits to which he was named.

B.     NEI acknowledged Robert Caviness as the sole named beneficiary.

In a correspondence dated June 8, 2007 from NEI to Rhonda Caviness denying her appeal for payment of all life insurance and pension benefits, NEI reasoned that "the last Enrollment and Information Changes Form that the Funds have on file lists Mr. Caviness's brother, Robert William Caviness, as his sole beneficiary for any benefits due from the National Elevator Industry Pension and Health Benefit Plans."  (Exhibit 11, June 8, 2007 correspondence from NEI to Rhonda Caviness, ¶¶ 1, 3)

NEI acknowledged that George Caviness was vested for the purpose of Pre-Retirement Death-in-Service benefits and that he designated Robert Caviness as his beneficiary. (Complaint, ¶ 11) NEI has consistently recognized Robert Caviness as George Caviness' named beneficiary and recognizes no entitlement of the Caviness Defendants as named beneficiaries. (Exhibit 11)

C.     According to the Pension Benefit Plan, the Caviness Defendants' claims
       would have been disallowed.

The request by Rhonda Caviness that Dallas and D.C. Caviness receive the pension benefits is disallowed pursuant to the provisions of the NEI Pension Plan ("Plan") for a number of reasons.  First, Dallas would not be considered an eligible dependent of George Caviness. The Plan defines eligible dependents as "Spouses, children under age of 19, full-time students under 25, handicapped or disabled children[.]"  (Exhibit 5)  Dallas Caviness was twenty-one (21) years of age at the time his father died.  (Exhibit 3, ¶1)  Dallas Caviness was not a full-time student as of the date of the dissolution of the marriage and was treated as an emancipated. (Exhibit 4, ¶¶ 6, 7) (Exhibit 3, ¶ 1)  Therefore, he was not an eligible dependent according to the Plan.  Also disqualifying the Caviness Defendants' claim to receive the benefits is their claim

that the proceeds should pass to them through George Caviness' estate.  In their Brief in Support of Motion for Summary Judgment, the Caviness Defendants attempt to argue that George Caviness' Last Will and Testament, dated May 14, 1995, entitle Dallas and D.C. to receive the Pension benefits.  Rhonda Caviness reasoned that, because George bequeathed "all of his real and personal property" to her as his wife, she would be treated as having pre-deceased him following their 2004 divorce and the estate would therefore escheat to the children.  This argument, too, must fail.  Also disqualifying the Caviness Defendants' claim to receive the benefits is the claim that the proceeds should pass to them through George Caviness' estate.

Article VI of the NEI Plan of Pension Benefits provides for the distribution of pension funds of a Vested Employee to be made to the designated beneficiary.  (Exhibit 8, pp. 33-35)  The plan specifically prohibits naming the employee's estate as the beneficiary.  (Complaint, ¶ 12, "The Employee's designated beneficiary must be an individual; and may not be the Employee's estate, nor trust…")

The benefits passing through George Caviness' estate must fail as not compliant with the Plan and contrary to case law.

> D.    <u>The Pension Benefit Plan requires the Employee to name the beneficiary by filing the designation in writing with the Trustees on a form prescribed by the Trustees.</u>

As discussed previously herein, by filing his designation of his brother in writing on the prescribed form, George Caviness properly named Robert Caviness as his beneficiary thereby vesting Robert Caviness with entitlement to the proceeds of his pension benefits.  The Caviness Defendants fail to meet this requirement.  The omission of any of the Caviness Defendants' names as his beneficiaries essentially slams the door on any claim they have to the benefits.

III.   THE CAVINESS DEFENDANTS' FAILED TO DEMONSTRATE THEIR

ELIGIBILITY TO RECEIVE THE BENEFITS

According to the Plan, it shall be the responsibility of the individual who claims to be the designated beneficiary to demonstrate that a designation or change has been so received by the Trustees if Fund records do not reflect such designation or change.  Rhonda Caviness has not met this burden.  While claiming that her children are the rightful beneficiaries, Rhonda Caviness never alleged that the children were named as the beneficiaries of the pension fund benefits, the conduit by which the Plan would consider her appeal.  There is simply no provision for recognition of disputes pertaining to the benefits based upon collateral evidence, particularly when, as in this case, such evidence does not exist.

<u>**CONCLUSION**</u>

Recognizing that the NEI Pension Plan is separate and apart from the ReliaStar Life Insurance policy; that George Caviness was awarded sole title and possession of his pension plan; that at no time George Caviness waived his right to designate the beneficiary of the pension benefits; that the pension fund benefits properly passed to Robert Caviness as the rightful beneficiary, and that Rhonda Caviness failed to prove any rightful entitlement possessed by Dallas and/or D.C. Caviness to George Caviness' pension benefits, the Caviness Defendants' Motion for Summary Judgment is due to be denied.

Robert Caviness therefore respectfully prays this Honorable Court to Deny the Motion for Summary Judgment.

Respectfully submitted this the 13th day of August, 2008.


                                                    /s/ Terrie S. Biggs
                                                    **TERRIE S. BIGGS (BIG006)**
                                                    **THOMAS W. CLAUNCH (CLA086)**
                                                    Attorneys for Defendant,
                                                    Robert W. Caviness

**Terrie S. Biggs**
**CAPELL & HOWARD, P.C.**
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 241-8291
tsb@chlaw.com

**Thomas H. Claunch, III, Esq.**
**HARDING & CLAUNCH, LLC**
2800 Zelda Road, Suite 100-9
Montgomery, AL  36106
Telephone: (334) 356-6070
Facsimile: (334) 356-6040
tclaunch@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2008, I electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to the following:

George N. Davies
Nakamura, Quinn, Walls, Weaver & Davies
2204 Lakeshore Drive
Lakeshore Park Plaza, Suite 130
Birmingham, AL  35209

John W. Dodson
Ferguson Frost & Dodson, LLP
P.O. Box 430189
Birmingham, Alabama  35243-0819

*/s/Terrie S. Biggs*
**OF COUNSEL**

# EXHIBIT
# 1

EXHIBIT

# SUMMARY PLAN DESCRIPTION OF THE
# NATIONAL ELEVATOR INDUSTRY PENSION PLAN

**March 1, 1998**

## NATIONAL ELEVATOR INDUSTRY
## PENSION FUND

<u>Board of Trustees</u>

<u>Union</u>                                         <u>Employer</u>

Richard W. Scariot                          E. James Walker, Jr.
Chairman                                    Co-Chairman
International Union of Elevator Constructors National Elevator Industry, Inc.
5565 Sterrett Place                         185 Bridge Plaza North
Clark Building, Suite 310                    Room 310
Columbia, MD  21044                         Fort Lee, NJ  07024

Donald Winkle, Sr.                          Earl M. Romnes
I.U.E.C. Local 14                           Schindler Elevator Co.
3527 Harlem Road                            5200 W. 73rd Street
Suite 10A                                   Minneapolis, MN  55439
Buffalo, NY  14225

                                            Mark F. Welter
Richard C. Brantley                         Dover Elevator
I.U.E.C. Local 63                           9380 Zachariah Cove
Citizens Tower                              Memphis, TN  38133
2200 N. Classen Blvd.
Suite 300                                   Jeffrey A. Adler
Oklahoma City, OK  73106                    Otis Elevator Co.
                                            One Farm Springs
John F. Davenport                           Farmington, CT  06032
I.U.E.C. Local 5
12273 Townsend Road
Philadelphia, PA  19154


Fund Administrator

Robert L. Milano
National Elevator Industry Benefit Plans
19 Campus Blvd., Suite 200
Newtown Square, PA  19073-3228
1-800-523-4702

NEIP0002

Legal Counsel

O'Donoghue & O'Donoghue
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016

Putney, Twombly, Hall & Hirson
185 Bridge Plaza North, Rm 310
Ft. Lee, NJ 07024

Auditor

Daniel A. Winters & Company
Chadds Ford Professional Center
Building 200, Suite 205
Chadds Ford, PA 19317

Actuary

Buck Consultants, Inc.
Two Pennsylvania Plaza
New York, NY 10121-0047

NEIP0003

# TABLE OF CONTENTS

INTRODUCTION ............................................................................... 1
    Requirements for Participation ...................................................... 3
    Payment of Contributions ............................................................. 3
CREDITED SERVICE ...................................................................... 3
    Benefit Service ............................................................................. 4
    Vesting Service ............................................................................. 5
    Break-In-Service ........................................................................... 7
PENSIONS ....................................................................................... 9
    Eligibility for a Pension Benefit .................................................... 9
    The Amount of Your Pension ........................................................ 12
NORMAL AND OPTIONAL BENEFIT FORMS ............................. 21
    Normal Form of Payment If You Are Not Married ......................... 21
    Normal Form of Payment If You Are Married ............................... 21
    Optional Forms of Payment .......................................................... 22
PROTECTION FOR YOUR SURVIVING SPOUSE BEFORE YOU RETIRE ......... 25
    Pre-Retirement Spouse's Benefit .................................................. 25
    Spouse's Benefit - Terminated Vested Employees ......................... 26
    Lump Sum Cashout of Spouse's Benefit ....................................... 27
    Retired Employees' Death Benefits ............................................... 27
    Pre-Retirement Death Benefit - Return of Employee Contributions ..... 28
    Return of Employee Contributions ............................................... 28
    Waiver of Benefits ........................................................................ 28
    Designated Beneficiary ................................................................ 28
    Applying for Benefits ................................................................... 29
RIGHT TO APPEAL ......................................................................... 29
DISTRIBUTION REQUIREMENTS ................................................. 30
    Action of Trustees ....................................................................... 30
    When Benefits Begin .................................................................... 31
    Mandatory Benefit Commencement .............................................. 31
    Maximum Limitations Under the Internal Revenue Code ............... 31
    Eligible Rollover Distributions ..................................................... 31
WORKING AFTER RETIREMENT ................................................. 31
    Disqualifying Employment ........................................................... 31
    If You Take a Job in Disqualifying Employment ........................... 32
    Failure to Provide Required Notice ............................................... 32
    Recovery of Overpayments ........................................................... 32
    Appeal of Suspension .................................................................. 33
    Notice of Termination of Disqualifying Employment ..................... 33
    Additional Pension Credit for Work Covered by the Plan ............... 33
HEALTH COVERAGE BY THE NATIONAL ELEVATOR INDUSTRY  HEALTH
    BENEFIT PLAN AFTER RETIREMENT ................................... 34

NEIP0005

IMPORTANT INFORMATION ABOUT YOUR PLAN ............................................................ 34
    Identification Numbers of the Plan .......................................................................... 34
    Plan Administrator .................................................................................................. 34
    Plan Funding ........................................................................................................... 35
    Pension Benefit Guaranty Corporation .................................................................. 35
    Termination of the Plan .......................................................................................... 36
    Selling, Assigning or Pledging Benefits ................................................................ 36
    Benefit Increase for Retirees .................................................................................. 36
YOUR RIGHTS UNDER THE EMPLOYEE RETIREMENT INCOME  SECURITY
    ACT OF 1974 ......................................................................................................... 37
APPENDIX A
APPENDIX B
APPENDIX C
APPENDIX D
APPENDIX E
APPENDIX F
APPENDIX G
APPENDIX H
APPENDIX I

NEIP0006

NATIONAL ELEVATOR INDUSTRY
PENSION PLAN
SUMMARY PLAN DESCRIPTION

## INTRODUCTION

The following Summary Plan Description (SPD) is intended for your use as a convenient reference on the material features of the National Elevator Industry Plan of Pension Benefits, as it was restated effective March 1, 1998. It does not reflect earlier terms or provisions of the Plan that have been amended or deleted. It does not enlarge, modify or change the meaning of the text of the Plan or of the benefits available under the Plan. Official copies of the text of the Plan are available at the Benefits Office and IUEC Local Unions and may be examined at any reasonable time.

Interpretation of the terms of the Plan and the application thereof, information concerning an individual's eligibility and benefit entitlement, and any other matter relating to the Pension Plan should be obtained only through the Administrator or Legal Counsel of the Plan. The Trustees of the Plan are not obligated by, responsible for, or bound by opinions, information or representations supplied by other sources.

The Trustees reserve the right to amend or modify the Plan at anytime consistent with the Fund's Agreement and Declaration of Trust.

**IN CASE OF DOUBT OR DISCREPANCY BETWEEN THIS SUMMARY PLAN DESCRIPTION AND THE PLAN DOCUMENT, THE PLAN DOCUMENT WILL ALWAYS GOVERN.**

1

NEIP0007

THIS PAGE INTENTIONALLY LEFT BLANK

NEIP0008

## PARTICIPATION AND CONTRIBUTIONS

### Requirements for Participation

You become a participant in the Plan when:

A.   You work in Covered Employment.  Covered Employment is work for which employers are required to make contributions to the Fund in accordance with the Standard Agreement, Otis Agreement, or other written agreement; or

B.   If a probationary helper, you have completed a probationary period by working:

   1.   100 or more hours in each of six 30-day periods in any nine consecutive months beginning with your date of hire; or

   2.   1,000 or more hours in any 12 consecutive calendar month period.

   Actual participation of a probationary helper in the Plan begins on the first day of the month after you complete your probationary period.

The terms and conditions of participation of owner-employees performing bargaining unit work and bargaining unit alumni are set forth in a separate booklet entitled "Guidelines for Employers and IUEC Local Unions Participating in the National Elevator Industry Health Benefit Plan, Pension Plan and Educational Program."   A copy of this booklet has been forwarded to all contributing employers, and additional copies are available upon request.

### Payment of Contributions

Contributions to the Plan are made by employers who are contractually required to make these contributions on behalf of their covered employees.

Employee contributions ceased during the Plan Year ending June 30, 1982.  If you made individual contributions to the Plan, then these contributions have been credited to an interest bearing account in your name, provided you did not withdraw these contributions.  Your contributions plus the interest earned on the contributions are referred to as your "Accumulated Employee Contributions."

## CREDITED SERVICE

Generally, your working time will count towards your pension if you are employed in work covered by the Standard Agreement, Otis Agreement or other written agreement requiring contributions to the Fund.  Your working time in Covered Employment will be used by the Fund to determine *if* you are eligible for a benefit (Vesting Service) and *how much* that benefit will be (Benefit Service).

3

NEIP0009

**Benefit Service**

Benefit Service is the service credited to you for the purpose of determining the amount of your benefit. Your Benefit Service is equal to the sum of your Past Benefit Service and your Future Benefit Service.

A.    **Future Benefit Service - Credited Service for Work After Plan Contributions Began**

You will receive one hour of Future Benefit Service for each hour of Covered Employment on or after July 1, 1962. To determine your years of Future Benefit Service, take your hours of Covered Employment and divide by 1,700.

For example: If you work 2,000 hours a year for 6 years, you will have accumulated 12,000 hours of Future Benefit Service. 12,000 divided by 1,700 equals 7.058 years of Future Benefit Service. Therefore, you have earned in excess of 7 years credited service for 6 years of work.

B.    **Past Benefit Service - Credited Service for Work Before Plan Contributions Began**

You may also receive Past Benefit Service for work in the elevator industry before contributions to the Plan commenced on July 1, 1962. Between July 1, 1932 and June 30, 1953, you will receive three months of Past Benefit Service for each calendar quarter in which you worked in a job classification covered by a collective bargaining agreement between the Union or Local 1 and an employer.

Between July 1, 1953 and June 30, 1962, you will receive one month of Past Benefit Service for any month in which you worked as a probationary helper, covered employee, or ran temporary cars. Other employment in the elevator industry may be credited if adequate records are provided to the Trustees.

C.    **Benefit Credit for Service in the Armed Forces**

You may be eligible for Past or Future Benefit Service for periods during which your covered work in the elevator industry was interrupted by your service in the Armed Forces of the United States of America, but only to the extent required by law.

D.    **Annual Statement**

Once a year, you will receive a statement showing your Future Benefit Service for that year, your total Future Benefit Service to date and any Past Benefit Service.

The hours recorded on your payroll stubs should be the same as the hours your employer reports to the Benefits Office. Be sure to save all of your payroll stubs for the year and compare them to this statement. If there is a difference in the hours reported on your payroll stubs and the hours listed on the annual statement, please contact the Benefits Office immediately. Future Benefit Service is based on Plan Year hours from July 1 to June 30 of

NEIP0010

the following year.

Your benefit amount shown on this statement is **estimated** based on the records currently on file in the Benefits Office and assumes that you will retire at age 65 without any reduction for the 50% Husband and Wife Pension. **Your actual benefit amount may be lower than this estimated amount.**

## Vesting Service

Vesting Service is the service used to determine whether you are eligible for a pension benefit.

A.    **Employment prior to July 1, 1962**

For service prior to July 1, 1962, you will receive one year of Vesting Service for every Plan Year in which you received at least 5 months of Past Benefit Service.

B.    **Employment after July 1, 1962**

On and after July 1, 1962, you will earn one year of Vesting Service for each Plan Year in which you work at least 700 hours in Covered Employment. The Trustees recognize that you may not have completed full years of service at the beginning and end of a period of Covered Employment. During these partial years, you will receive one month of Vesting Service for each month in which you complete at least 58 hours of work in Covered Employment.

C.    **Transfers to or from Covered Employment**

If, on or after July 1, 1976, you are transferred by your employer from Covered Employment to a job category with the same employer not covered by the Standard Agreement, Otis agreement or other written agreement, you will still receive Vesting Service for each hour you work for your employer. Likewise, if on or after July 1, 1976 your employer transfers you from non-Covered Employment to Covered Employment, you will receive Vesting Service for all hours (including non-covered hours) you worked for that employer.

D.    **Probationary Hours**

On or after July 1, 1976, you may still be eligible for a year of Vesting Service even if you have completed less than 700 hours of work as an employee during your first year of Covered Employment. If your hours of work as a probationary helper and your hours as an employee total 700 or more during such Plan Year, you will be eligible for one year of Vesting Service.

NEIP0011

**E.    Total Disability**

On and after July 1, 1962, if you are absent from work because a physical or mental condition prevents you from engaging in any gainful employment, you may still receive Vesting Service. For this time to be credited, however, the Trustees must be furnished with medical evidence of the disability and you must have completed at least 700 hours of work in the 12-month period prior to the commencement of your Total Disability.

**F.    "Vested" Status**

Once you are vested under the Plan, you have a non-forfeitable right to a pension benefit even if you do not continue to work in Covered Employment until retirement. There are several ways to become vested:

1.    If you work in Covered Employment on or after July 1, 1989, you will become vested if you complete 5 years of Vesting Service since your most recent Break-in-Service, if any.

2.    Effective July 1, 1975, you will be vested if you completed 10 years of Vesting Service since your most recent Break-in-Service, if any.

3.    Effective July 1, 1973, you will be vested if you completed 5 years of Vesting Service since your most recent Break-in-Service, if any, and your age plus your years and months of Vesting Service since your most recent Break-in-Service, if any, equal 50 or more.

4.    You will be vested if you complete the age, service and other requirements for a Normal Retirement Pension or Early Retirement Pension.

**G.    Credit for Leave under the Family and Medical Leave Act of 1993**

The Family and Medical Leave Act (FMLA) of 1993 entitles eligible employees to take up to 12 weeks of unpaid job protected leave each year for the employee's own illness, or to care for a seriously ill child, spouse or parent. In addition, the FMLA provides leave for the birth or placement of a child with the employee in the case of adoption or foster care. Employees eligible for leave under the FMLA are those who have been employed at least 12 months by the employer and who have provided at least 1250 hours of service to the employer. An employee at a work site at which there are less than 50 employees is not eligible for FMLA leave unless the total number of employees within a 75 mile radius of that employee equals or is greater than 50.

Eligible employees are entitled to credit for Vesting Service under the Plan while on leave. You will receive that amount of Vesting Service necessary to insure that you do not sustain a Break-in-Service for the period during which you are on FMLA leave. If you have any questions about the FMLA, you should contact your employer or the nearest office of the Wage and Hour Division, listed in most telephone directories under the U.S. Government,

6

NEIP0012

Department of Labor, Employment Standards Administration.

**Break-In-Service**

A Break-in-Service refers to when an employee leaves Covered Employment. If you leave Covered Employment before you are vested, the Break-in-Service will temporarily or permanently cancel your Benefit Service and Vesting Service earned prior to the Break-in-Service. However, once you are vested under the Plan, you do not lose your Benefit Service or Vesting Service, regardless of the length of time you are away from Covered Employment.

**A.    Break in Future Service**

From July 1, 1962 to July 1, 1973, you incurred a Break in Future Service if you did not have at least 200 hours of work in Covered Employment in any 24 consecutive month period. After June 30, 1973, you will incur a Break in Future Service if you do not complete at least 200 hours of work in Covered Employment in a 36 consecutive month period. You also incur a Break in Future Service if you withdraw your Accumulated Employee Contributions.

However, you will not suffer a Break in Future Service if your absence from Covered Employment is due to:

1.    Your Total Disability.

2.    Military service in the Armed Forces of the United States, provided you satisfy all requirements under applicable law.

3.    Service with the International Union of Elevator Constructors.

4.    Service with the National Elevator Industry Educational Program.

5.    Employment with an employer signatory to a collective bargaining agreement with the Union or an IUEC Local Union commencing on or after July 1, 1968 in a category of employment not covered by the collective bargaining agreement.

6.    Employment with an employer signatory to a collective bargaining agreement commencing after July 1, 1962 and prior to July 1, 1968 in a category of employment not covered by a collective bargaining agreement between the Union or an IUEC Local Union and an employer. However, if such employment continued for more than 60 consecutive months, you will lose all of your Past Benefit Service (but not your Future Benefit Service).

7.    Your pregnancy, the birth of your child, the placement of a child with you in connection with an adoption, or the care for such child for a period beginning immediately after such birth or placement, provided such absence begins after June 30, 1986. You will be credited with a maximum of 501 hours for such absence

7

solely to prevent a Break-in-Service.

8.    A family or medical leave under the Family and Medical Leave Act of 1993.

**B.    Break in Past Service**

A Break in Past Service occurred if:

1.    From July 1, 1932 to June 30, 1953, you did not receive at least two months of Past Benefit Service during each calendar year.

2.    From July 1, 1953 to January 1, 1954, you were not reported on at least one employer monthly report form to the National Elevator Industry Health Benefit Plan (Health Benefit Plan) or you did not complete at least 100 hours of work running temporary cars.

3.    From January 1, 1954 to January 1, 1962, you were not reported on at least two employer monthly report forms to the Health Benefit Plan or you did not complete at least 200 hours of work running temporary cars during each calendar year.

4.    From January 1, 1962 to July 1, 1962, you were not reported on at least one employer monthly report form to the Health Benefit Plan or you did not complete at least 100 hours of work running temporary cars.

However, you did not incur a Break in Past Service if your absence from Covered Employment was due to Total Disability subsequent to January 1, 1957, military service in the Armed Forces of the United States (provided you satisfy all applicable requirements), or service with the Union or a Local Union.

**C.    Effect on Vested Employees**

On or after July 1, 1976, if a vested employee incurs a Break-in-Service, he may not withdraw his employee contributions.  He also will not lose his Vesting Service or Benefit Service.  If a vested employee incurs a Break-In-Service prior to July 1, 1976 and withdraws his employee contributions, he will lose his vested status, Vesting Service and Benefit Service.  If he returns to Covered Employment, he will be treated as a new employee for all Plan purposes.

**D.    Effect on Non-Vested Employees**

If prior to July 1, 1973 you were not vested and incurred a Break-in-Service, you will have lost all your Vesting Service and Benefit Service prior to the Break.  However, you may request a refund of your employee contributions made prior to the Break.  If you then return to Covered Employment, you will be treated the same as any new employee.

Breaks-in-Service after July 1, 1973 shall have the same effect.  However, if you return to

8

NEIP0014

Covered Employment and complete one year of Vesting Service, all Vesting Service and Benefit Service will be restored, provided you repay your withdrawn accumulated contributions, if any, plus interest.

## PENSIONS

### Eligibility for a Pension Benefit

The following are the eligibility requirements for the pensions provided by the Plan:

**A.     Normal Retirement Pension**

You are eligible for a Normal Retirement Pension if you cease Covered Employment on or after age 65.

The amount of the Normal Retirement Pension is your Benefit Service multiplied by your Applicable Benefit Rate, as discussed below.

**B.     Early Retirement Pension**

You are eligible for an Early Retirement Pension if you:

1.     Stop work in Covered Employment between the ages of 55 and 65, or cease such work prior to age 55 and go to work without any gap in a non-covered job with a signatory employer or the Union and terminate that work after age 55;

2.     Have completed at least 10 years of Vesting Service; and

3.     Have at least 12,000 hours of work reported by employers in any ten consecutive Plan Year period.

If you filed your pension application on or after July 1, 1978 and were absent from Covered Employment at age 55 due to a Total Disability, you will be deemed to have been in Covered Employment at age 55 if you performed at least 700 hours during the 12 months prior to the Total Disability.

If you filed your pension application on or after July 1, 1988, were laid off after age 53 1/2, did not leave the elevator industry, were available for Covered Employment and actively seek such work until age 55, you will be deemed to have been in Covered Employment at age 55 if you performed at least 700 hours during the 12 months prior to layoff. Also, if you were between age 50 and 55 in 1995 and were laid off after age 50, do not leave the elevator industry, remain available for Covered Employment, and actively seek such a position until age 55, you will be deemed to be in Covered Employment at age 55 if you performed at least 700 hours during the 12 months prior to layoff.
If you filed your pension application on or after January 1, 1994 and are unable to work in

9

the trade due to a Disability at age 55, you will be deemed to be in Covered Employment at that time if you became Disabled after age 40, remained Disabled due to the same cause until age 55, and completed at least 700 hours during the 12 months prior to the Disability, and were available for work in Covered Employment until you became Disabled. For purposes of this provision, Disability means the inability to perform the nominal and customary duties of your occupation or any similar or related occupation in the trade due to a bodily injury or disease. If this section applies to you, the Trustees may request that you submit to periodic examinations and provide proof of continued Disability.

You have your choice of having payments begin immediately upon retirement or when you reach age 65. If you choose to have your payments begin immediately, these payments will be reduced for each full calendar month between the date the Early Retirement Pension commences and the first day of the month following your 58th birthday.

## C.    Early Vested Pension and Normal Vested Pension

You may retire on an Early Vested Pension or a Normal Vested Pension if you leave Covered Employment before the age of 55 and have attained vested status.

A Normal Vested Pension may commence on or after your attainment of Normal Retirement Age. Normal Retirement Age is the later of:

1.    age 65 or

2.    your age on the 10th anniversary of participation in the Plan (5th anniversary if you worked in Covered Employment after July 1, 1989, but not earlier than when such work commenced).

The amount of the Normal Vested Pension is the same as the Normal Retirement Pension.

An Early Vested Pension may commence between the ages of 55 and 65. The amount of the Early Vested Pension is the Normal Retirement Pension reduced by one-half (½) of one (1) percent for each full calendar month between the date the Early Vested Pension commences and the first day of the month following your 65th birthday.

## D.    Disability Retirement Pension

In order to qualify for a Disability Retirement Pension, you must have a Total and Permanent Disability prior to age 65. Sole proof of such disability is a determination by the Social Security Administration that you are entitled to Social Security disability benefits. In addition, you must:

1.    Have earned at least 5 years of Vesting Service; and

2.    Have had at least 8,500 hours of work in Covered Employment reported to the Fund

NEIP0016

on your behalf; and

3.     Have completed at least 200 hours of work in Covered Employment in the 36-month period immediately before your Social Security Disability Date.

You will lose your Disability Retirement Pension if you lose your entitlement to your Social Security Benefit before age 65, engage in regular gainful employment (except for purposes of rehabilitation), fail to respond to inquiries by the Trustees concerning your disability, the Trustees have determined that you have recovered, or you refuse to undergo a medical exam requested by the Trustees.

If you are receiving a Disability Retirement Pension and recover prior to age 65, you must report your recovery to the Benefits Office in writing within 30 days of such recovery (or your receipt of the termination notice of your Social Security benefits). If you do not so notify the Benefits Office of your recovery, you will not be eligible for benefits for a period equal to the number of months between your recovery and termination of your Disability Retirement benefits.

If you retire and then return to Covered Employment, you may not qualify for a Disability Retirement Pension based on your hours and Vesting Service after your initial retirement.

If you recover and return to Covered Employment, you will continue to accumulate Benefit Service and Vesting Service towards a subsequent Normal, Early or Vested pension, and the amount you have received in Disability Benefits will not affect your future benefits from the Fund, except if you failed to timely notify the Benefits Office of your recovery, as discussed above.

A Disability Retirement Pension is not payable if you are receiving temporary disability benefits under the Health Benefit Plan.

If you are receiving an Early Retirement Pension, you may convert this pension into a Disability Retirement Pension if you meet the following requirements:  (1)  You file an application for Social Security Disability Benefits on or prior to your Early Retirement Effective Date that is approved by Social Security or receive a Social Security award stating that you were disabled prior to your date of Early Retirement; (2) your Social Security Entitlement Date is within 24 months of the date of your Early Retirement; and (3) you otherwise qualify for a Disability Retirement Pension.

11

The following chart should be used to determine what your ABR will be:

| Applicable Date | | | Rate Per Plan Year of Past Service Credit | Rate Per Plan Year of Future Service Credit (1,700 hours) |
|---|---|---|---|---|
| From 1/1/98 | forward | | $75.00 | $75.00 |
| From 1/1/97 | through | 12/31/97 | 72.00 | 72.00 |
| From 1/1/96 | through | 12/31/96 | 69.00 | 69.00 |
| From 1/1/95 | through | 12/31/95 | 68.00 | 68.00 |
| From 1/1/94 | through | 12/31/94 | 66.00 | 66.00 |
| From 1/1/93 | through | 12/31/93 | 64.00 | 64.00 |
| From 1/1/92 | through | 12/31/92 | 63.00 | 63.00 |
| From 1/1/91 | through | 12/31/91 | 60.00 | 60.00 |
| From 1/1/90 | through | 12/31/90 | 57.00 | 57.00 |
| From 1/1/89 | through | 12/31/89 | 53.00 | 53.00 |
| From 1/1/88 | through | 12/31/88 | 50.00 | 50.00 |
| From 1/1/87 | through | 12/31/87 | 44.00 | 44.00 |
| From 1/1/86 | through | 12/31/86 | 40.00 | 40.00 |
| From 1/1/85 | through | 12/31/85 | 32.00 | 32.00 |
| From 1/1/84 | through | 12/31/84 | 29.00 | 29.00 |
| From 1/1/83 | through | 12/31/83 | 26.00 | 26.00 |
| From 7/1/81 | through | 12/31/82 | 23.00 | 23.00 |
| From 7/1/80 | through | 6/30/81 | 18.00 | 18.00 |
| From 10/1/79 | through | 6/30/80 | 16.00 | 16.00 |
| From 7/1/78 | through | 9/30/79 | 15.00 | 15.00 |
| From 4/1/76 | through | 6/30/78 | 8.00 | 8.00 |
| From 7/1/73 | through | 3/31/76 | 7.00 | 7.00 |
| From 7/1/70 | through | 6/30/73 | 4.00 | 4.00 |

**B.    Applicable Benefit Rate for Employees who Transferred From Covered Employment to a Non-covered Position**

The following chart reflects the ABR for each year of Past Benefit Service and for each 1,700 hours of Future Benefit Service effective January 1, 1986 for certain former employees who transferred from Covered Employment to employment with an employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an employer. These rates are only applicable to those transferred employees who are continuously employed by an employer from the date of transfer to the date of retirement from this Plan either in Covered Employment or in a

13

NEIP0019

category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an employer. These rates are applicable unless a higher rate applies under the Plan.

| Date of Transfer | | | | Effective Benefit Accrual Rate Transfers |
|---|---|---|---|---|
| Prior to 10/1/79 | | | | $18.00 |
| From | 10/1/79 | through | 06/30/80 | $18.48 |
| From | 7/1/80 | through | 06/30/81 | $20.79 |
| From | 7/1/81 | through | 12/31/82 | $26.45 |
| From | 1/1/83 | through | 12/31/83 | $29.90 |
| From | 1/1/84 | through | 12/31/84 | $33.35 |
| From | 1/1/85 | through | 12/31/85 | $36.80 |

Effective January 1, 1996, the minimum ABR for such employees was $26. Effective January 1, 1997, the minimum ABR was increased to $30. Effective January 1, 1998, the minimum ABR was increased to $31.20.

## C.    Minimum Applicable Benefit Rate

As of January 1, 1996, a retiree's monthly pension shall be the greater of:

1. The monthly benefit the retiree (or surviving beneficiary) is receiving as of December 31, 1995, including adjustments previously elected for early retirement and benefit options, if applicable, and including previously adopted retiree benefit increases; or

2. the retiree's (or surviving beneficiary's) monthly benefit recalculated on the basis of an ABR of $26 and then applying the same adjustments previously elected for early retirement and benefit options, if applicable, but not applying previously adopted retiree increases.

Except for retired elevator inspectors, this does not apply to those in receipt of a Vested Retirement Pension.

Effective January 1, 1996, the minimum ABR shall be $26* for all those who retire in the future as early retirees, disability retirees and normal retirees, and for those who have been working as elevator inspectors within six months of the date of retirement. The minimum ABR shall not apply to those who receive a Vested Retirement Pension.

*  The $26 minimum ABR for current and future retirees was increased to $30 effective January 1, 1997. The $30 minimum ABR for current and future retirees was increased to $31.20 effective January 1, 1998.

14

NEIP0020

**D.    Examples**

1.    Normal Retirement Pension

To determine the amount of a Normal Retirement Pension, multiply your years of Past and Future Benefit Service by your ABR.

Example: John retires in May 1998 at the age of 65. His ABR is $75.00. He has 10 years of Past Benefit Service and 40,800 hours of Future Benefit Service. The amount of John's monthly pension will be:

Future Benefit Service: $\frac{40,800}{1,700}$ = 24 years x $75.00 = $1,800.00

Past Benefit Service:            10 years x $75.00 = $ 750.00

Total Monthly Benefit:                      $2,550.00

John will be entitled to a monthly pension of $2,550. This amount will be adjusted for any Husband and Wife Pension he elects if he is married.

2.    Deferred Early Retirement Pension

Deferred Early Retirement Pensions are calculated in the same manner as Normal Retirement Pensions. However, payments do not begin until you reach 65 even though you have actually retired between the ages of 55 and 65.

Example: Joe leaves Covered Employment in February of 1998 at the age of 55. He has 5 years of Past Benefit Service and 37,400 hours of Future Benefit Service. He chooses a Deferred Early Retirement Pension. The ABR for an employee who leaves covered service in February 1998 is $75.00.

Future Benefit Service: $\frac{37,400}{1,700}$ = 22 years x $75.00 = $1,650.00

Past Benefit Service:        5 years x $75.00 = $ 375.00

Total Monthly Benefit:                      $2,025.00

Joe will begin receiving $2,025.00 per month on his 65th birthday in 2008. This amount will be adjusted for any Husband and Wife Pension he elects if he is married at that time.

15

NEIP0021

3.    Immediate Early Retirement Pension

If you retire between the ages of 55 and 65 and you elect to have your pension payments begin before the age of 58, the amount of these immediate Early Retirement Pension payments will be reduced. The following chart shows the amount of this reduction for full years, for pensions effective July 1, 1997 and thereafter.

| Age When Payments Begin | Percent You Receive |
|---|---|
| 58 | 100% |
| 57 | 97% |
| 56 | 94% |
| 55 | 91% |

The reduction is adjusted for less than full years and is equal to one-fourth (¼) of one percent for each full calendar month between the first day of the month following your 55th and 58th birthdays.

Example: Frank leaves Covered Employ-ment in July 1998 at the age of 55. He has 5 years of Past Benefit Service and 41,650 hours of Future Benefit Service. In July 1998, Frank's ABR would be $75.00 for Past and Future Benefit Service. Since Frank is only 55 and has chosen to have payments begin immediately, he will receive 91% of his normal monthly pension.

Future Benefit Service: $\frac{41,650}{1,700}$= 24.5 years  x  $75.00 =$1,837.50

Past Benefit Service:            5 years  x  $75.00 =$ 375.00

Total Monthly Benefit:                          $2,212.50

Percentage Payable for Early Retirement Pension        x    .91

Monthly Early Retirement Pension:               $2,013.37

Frank will receive an Early Retirement Pension of $2,013.37 per month, adjusted for any Husband and Wife Pension he elects if he is married.

4.    Normal Vested Pension

If you leave Covered Employment before the age of 55 but are vested, you will receive a pension based on the basic formula. Your payments will not begin until you are 65, unless you elect an Early Vested Pension.

Example: Nick left Covered Employment in August 1994 at the age of 54. He is not eligible for an Early Retirement Pension because he left Covered Employment

16

before the age of 55. However, Nick is vested and is eligible for a pension. Nick has 34,000 hours of Future Benefit Service and 2 years of Past Benefit Service. The ABR when Nick left Covered Employment was $66.00 a year for Past and Future Benefit Service.

Future Benefit Service: $\frac{34,000}{1,700}$ = 20 years x $66.00 =$1,320.00

Past Benefit Service:                   2 years x $66.00 =$ 132.00

Total Monthly Benefit:                        $1,452.00

In 2005, at age 65, Nick can begin receiving pension payments of $1,452.00 a month, which will be adjusted for any Husband and Wife Pension he elects if he is married at that time.

5.      Early Vested Pension

If you leave Covered Employment before the age of 55 and are vested, you are eligible for a pension and you may elect to have your pension payments begin at any age between 55 and 65. These payments will be calculated by using the formula for determining the Normal Retirement Pension. However, because you will be receiving benefits for a longer period of time, your monthly payment will be reduced. The following chart shows the percentage of the Normal Retirement Benefit you will receive if you elect to receive payments before age 65.

| Age When Payments Begin | Percent You Receive |
|:---:|:---:|
| 65 | 100% |
| 64 | 94 |
| 63 | 88 |
| 62 | 82 |
| 61 | 76 |
| 60 | 70 |
| 59 | 64 |
| 58 | 58 |
| 57 | 52 |
| 56 | 46 |
| 55 | 40 |

The reduction is one-half (½) of one (1) percent for each full calendar month between the date the Early Vested Pension commences and the first of the month following your 65th birthday.

Example: Bob left Covered Employment in September of 1993 at age 54. Since he terminated Covered Employment prior to age 55, he is ineligible for an Early Retirement Pension. Bob, however, is vested. Bob has 32,300 hours of Future Benefit Service and 3 years of Past Benefit Service. He wishes for his payments to

17

NEIP0023

begin in September of 1996 when he is 57 years old. In September of 1993, when Bob left Covered Employment, his ABR was $64.00 a year for Past and Future Benefit Service. Since Bob has elected to receive payments beginning at age 57, he will receive 52% of his Normal Retirement Pension.

Future Benefit Service: $\frac{32,300}{1,700}$ = 19 years x $64.00 = $1,216.00

Past Benefit Service:          3 years x   $64.00 = $   192.00

Total Monthly Benefit:                          $1,408.00

Percentage Payable for Early Vested Pension:         x    .52

Monthly Early Vested Pension:                    $  732.16

Bob's monthly pension beginning at age 57 will be $732.16, and will be adjusted for any Husband and Wife Pension he elects if he is married at that time.

6.    Disability Retirement Pension

A Disability Retirement Pension is calculated like a Normal Retirement Pension. Payments may begin at any age as long as you meet the eligibility requirements.

Example: George becomes Totally and Permanently Disabled and receives a Social Security Award effective May 1998 when he is 45 years old. George worked 700 hours in the 12 months preceding his Disability retirement. At this point, George has 34,000 hours of Future Benefit Service and no years of Past Benefit Service. On the effective date of his Social Security Award, the ABR was $75.00 for Future Benefit Service. This applies to George as follows:

Future Benefit Service: $\frac{34,000}{1,700}$ = 20 years  x  $75.00 = $1,500.00

George's Disability Retirement Pension will be $1,500.00 per month, subject to an adjustment for any Husband and Wife Pension if he is married. A Disability Retirement Pension, prior to any adjustment for the Husband and Wife Pension, will never be less than $175.00 per month.

E.    **Multiple Benefit Rates**

Under certain circumstances your monthly pension may be calculated using more than one ABR. This will happen if:

NEIP0024

1.  you leave Covered Employment after you are vested or for one of the reasons specified under the Break in Future Service Section on page 6, and you later return to Covered Employment,

    or

2.  you have a Break-in-Service on or after July 1, 1973 and your service is restored upon your return to Covered Employment.

Under these circumstances, your monthly pension will be calculated in two parts. Your pension will equal

1.  Your Benefit Service at the time you first left Covered Employment or preserved your pension credits multiplied by your ABR at that time or the applicable rates in effect on July 1, 1970, whichever is greater,

    plus,

2.  Your Benefit Service after your return to Covered Employment multiplied by your subsequent ABR when you retire.

However, if you complete 5 years of Vesting Service after your return to Covered Employment, your subsequent ABR will be applied to your *total* Benefit Service.

For purposes of the multiple benefit rate rules, you will be deemed to have left Covered Employment if you fail to work at least 200 hours in any 36-month period.

However, until June 30, 1998, you will not be deemed to have left Covered Employment after being vested if you leave Covered Employment because there is no available covered work, you do not leave the elevator industry of participating Employers, you are registered on the referral list of your home IUEC local union, you regularly contact that local for work opportunities, you are available for work in Covered Employment, you do not refuse work when offered, and your total absence from Covered Employment (for all of your absences covered by this section) does not exceed six (6) years if your pension effective date is between July 1, 1997 and December 31, 1997, and five (5) years if your pension effective date is January 1, 1998 to June 30, 1998. You and your local union must submit sufficient proof that you satisfy the foregoing conditions for this rule to apply to you. This limited exception to the above 200 hour rule automatically expires on June 30, 1998.

Example: Andy left Covered Employment in April 1978 when he was vested with 29,750 hours of Future Benefit Service and 5 years of Past Benefit Service. The ABR at that time was $11.00 for Future Benefit Service and $8.00 for Past Benefit Service. Andy returned to Covered Employment in June 1984 and subsequently retired in May 1986. He accrued 3,400 hours of Future Benefit Service after his return and the ABR at the time he retired was $40.00. Andy's monthly benefit is:

19

1.    **Before leaving Covered Employment**

Future Benefit Service: $\frac{29,750}{1,700}$ = 17.5 years  x  $11.00 =$192.50

Past Benefit Service:          5 years  x  $ 8.00 =$  40.00

*plus*

2.    **After return to Covered Employment**

Future Benefit Service: $\frac{3,400}{1,700}$ =    2 years  x  $40.00 =$  80.00

Total Monthly Benefit:                    $ 312.50

Andy will receive a monthly benefit of $312.50, adjusted for any Husband and Wife Pension if he is married.  However, if Andy had completed 5 years of Vesting Service after he returned to Covered Employment in 1984, his *entire* monthly pension would have been calculated on the basis of his subsequent ABR.

**F.    Temporary Supplemental Pension Benefit**

If you worked in Covered Employment or a non-covered position with a signatory employer through your retirement date and are in receipt of an Early Retirement Pension as of July 1, 1996 or thereafter, you are eligible for a monthly Temporary Supplemental Pension Benefit. A participant who has worked as an elevator inspector within six months of his retirement date will also be eligible for this temporary benefit.  The amount of this Temporary Benefit is equal to $5 multiplied by your years of Benefit Service (based on Past and Future Service), but in no event greater than your Social Security benefits.  This Temporary Supplemental Pension Benefit will commence for new early retirees on or after July 1, 1996 and cease on the earliest of the following events:

1.    the first of the month following your 62nd birthday;

2.    your date of death; or

3.    when your Social Security benefits commence.

The Temporary Supplemental Pension Benefit is not payable to a Disability Pensioner, including one that has been converted from an Early Retirement pension.  The Temporary Supplemental Pension Benefit is also not payable to a spouse or beneficiary.

20

## NORMAL AND OPTIONAL BENEFIT FORMS

If you qualify for a pension, the Plan provides for normal and optional forms of payment.

### Normal Form of Payment If You Are Not Married

If you are not married on your Effective Date, you will receive equal monthly payments until your death in the Straight Life Benefit form, unless you file a timely rejection of that benefit form and choose to receive your pension in an optional form, discussed below.

Your pension in this form will be unreduced, except for early retirement if applicable.

To be timely, any rejection of the Straight Life Benefit must be filed within 90 days before your Effective Date. It must, however, be made after you have received an explanation from the Fund of the various payment options and how they affect the amount of your pension. You can revoke a waiver or file a new waiver anytime within the 90-day period after your receipt of the benefit explanation and prior to your Effective Date.

### Normal Form of Payment If You Are Married

If you are married on your Effective Date, your payment will automatically be in the form of a 50% Husband and Wife Pension unless you file a timely rejection of this form. However, for the 50% Husband and Wife Pension form to be payable, you must have been married on your date of death and have been married throughout the year ending with your Effective Date, or you and your spouse married within the year immediately preceding your Effective Date and were married for at least a year before your death. A former spouse may be entitled to benefits if you were divorced after being married for at least twelve months and your former spouse is required to be treated as a spouse by the terms of a Qualified Domestic Relations Order.

If a 50% Husband and Wife Pension would be payable except that you were not married for at least a year on your Effective Date, your pension payments shall be made in the amount adjusted for the 50% Husband and Wife Pension and if you and your spouse have not been married to each other for at least a year before your death, the difference between the amount that had been paid and the amount that would have been paid if the monthly amount had not been adjusted shall be paid to your spouse, if then alive, and otherwise to your designated beneficiary.

The Benefits Office will furnish you with an explanation of this benefit form and the other payment options available under the Plan no more than 90 days before your pension Effective Date. After you receive this information, you and your spouse may decide in what form you want your pension paid. To properly waive the normal form, your spouse must consent to your waiver in writing before a notary and acknowledge its effect. Your spouse must also consent to your selected optional benefit form. You may not later change your optional form without your spouse's consent.

You and your spouse may revoke your waiver or file a new waiver after your receipt of the explanation and before your Effective Date. Despite the above, a rejection of the normal form may not be necessary if you can prove that you are not married, that your spouse can't be located or that

21

NEIP0027

your spouse's consent can't be obtained because of extenuating circumstances, as provided by the IRS.

Under the 50% Husband and Wife Pension, your monthly pension will be reduced. The amount of the reduction will depend on the ages of you and your spouse. If your spouse survives you, your spouse will be entitled to one-half of your reduced monthly benefits for the rest of his or her life.

Example: Brian, a married employee, retires in July 1998 at age 65 and receives a Normal Retirement Pension. He has 4 years of Past Benefit Service and 43,350 hours of Future Benefit Service. His ABR is $75.00 for each year of Past and Future Benefit Service. Brian is married and is 6 years and 3 months older than his wife. Under the 50% Husband and Wife Pension, he will receive 89% of his monthly benefit. His monthly benefit would be:

| | | |
|---|---|---|
| Future Benefit Service: $\frac{43,350}{1,700}$ = 25.5 years x $75.00 = | | $1,912.50 |
| Past Benefit Service: | 4 years x $75.00 = | $ 300.00 |
| Total Monthly Benefit: | | $2,212.50 |
| Percentage Payable Under 50% Husband and Wife Pension | | x    .89 |
| Total Monthly Pension: | | $1,969.12 |

Brian will receive $1,969.12 per month. Upon Brian's death, his wife will receive one-half of his reduced benefit. In other words, she will receive $984.56 per month for her life.

If you elected a Husband and Wife Pension after July 1, 1980 and your spouse predeceases you or is divorced from you, your pension benefit shall be increased, effective the month following the month of your spouse's death or the divorce, to the amount which would have been payable to you if you and your spouse had elected the Straight Life Benefit.

If you and your spouse are divorced, your pension will not increase if your former spouse is required to be treated as your spouse under a Qualified Domestic Relations Order.

You and your spouse must also satisfy the above rules if you elect your pension to be paid in the 75% or 100% joint and survivor form, with or without the life certain option.

**Optional Forms of Payment**

If you are not married on your Effective Date and you formally reject the normal form of benefit for unmarried employees (the Straight Life Benefit), you may elect to have your payments made in one of the following forms:

A.    As a Five-Year Certain and Life Benefit under which a reduced monthly benefit will be paid to you for your lifetime and, if you die before receiving 60 monthly payments, your designated beneficiary will receive the same monthly benefit for the duration of the 60-month period; or

NEIP0028

B.    As a 10-Year Certain and Life Benefit under which a reduced monthly benefit will be paid to you for your lifetime and, if you die before receiving 120 monthly payments, your designated beneficiary will receive the same monthly benefit for the duration of the 120-month period.

Your monthly benefit under these optional forms will be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit after adjustment for early retirement, if applicable.

If you are married on your Effective Date, with proper spousal consent, you may elect to have your pension paid in one of the following optional forms rather than the automatic 50% Husband and Wife Pension:

A.    As a Straight Life Benefit, which is an unreduced benefit payable for your lifetime only. This election will require your spouse's written consent.

B.    As a 75% Husband and Wife Pension. A reduced benefit will be paid to you for your lifetime and, upon your death 75% of the reduced payments will be continued to your spouse.

C.    As a 100% Husband and Wife Pension. A reduced benefit will be paid to you for your lifetime and upon your death the same monthly payments will be continued to your spouse.

D.    As a 50% Husband and Wife Pension with a Five-Year Certain and Life Benefit Option. A reduced benefit will be paid to you for your lifetime and if you die before receiving 60 monthly payments, your spouse will receive the same monthly benefit for the duration of the 60-month period. Your spouse will then receive 50% of your reduced monthly benefit for her lifetime. If your spouse dies before the expiration of the 60-month period, your designated beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of your monthly benefit reduced only for the Five-Year Certain Benefit form and, if applicable, early retirement. If you die after receiving 60 months of payments, your spouse will receive 50% of your reduced monthly pension for her lifetime.

Your monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for early retirement).

E.    As a 50% Husband and Wife Pension with a 10-Year Certain and Life Benefit Option. A reduced benefit will be paid to you for your lifetime and if you die before receiving 120 monthly payments, your spouse will receive the same monthly benefit for the duration of the 120-month period. Your spouse will then receive 50% of your reduced monthly benefit for her lifetime. If your spouse dies before the expiration of the 120-month period, your designated beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of your monthly benefit reduced only for the Ten-Year Certain Benefit form and, if applicable, early retirement. If you die after receiving 120 months of payments, your spouse will receive 50% of your reduced monthly pension for her lifetime.

23

NEIP0029

Your monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for early retirement).

F.    As a 75% Husband and Wife Pension with a Five-Year Certain and Life Benefit Option. A reduced benefit will be paid to you for your lifetime and if you die before receiving 60 monthly payments, your spouse will receive the same monthly benefit for the duration of the 60-month period. Your spouse will then receive 75% of your reduced monthly benefit for her lifetime. If your spouse dies before the expiration of the 60-month period, your designated beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of your monthly benefit reduced only for the Five-Year Certain Benefit form and, if applicable, early retirement. If you die after receiving 60 months of payments, your spouse will receive 75% of your reduced monthly pension for her lifetime.

Your monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for early retirement).

G.    As a 75% Husband and Wife Pension with a 10-Year Certain and Life Benefit Option. A reduced benefit will be paid to you for your lifetime and if you die before receiving 120 monthly payments, your spouse will receive the same monthly benefit for the duration of the 120-month period. Your spouse will then receive 75% of your reduced monthly benefit for her lifetime. If your spouse dies before the expiration of the 120-month period, your designated beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of your monthly benefit reduced only for the Ten-Year Certain Benefit form and, if applicable, early retirement. If you die after receiving 120 months of payments, your spouse will receive 75% of your reduced monthly pension for her lifetime.

Your monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for early retirement).

H.    As a 100% Husband and Wife Pension with a Five-Year Certain and Life Benefit Option. A reduced benefit will be paid to you for your lifetime and if you die before receiving 60 monthly payments, your spouse will receive the same monthly benefit for the duration of the 60-month period. Your spouse will then receive 100% of your reduced monthly benefit for her lifetime. If your spouse dies before the expiration of the 60-month period, your designated beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of your monthly benefit reduced only for the Five-Year Certain Benefit form and, if applicable, early retirement. If you die after receiving 60 months of payments, your spouse will receive 100% of your reduced monthly pension for her lifetime.

Your monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for early retirement).

I.    As a 100% Husband and Wife Pension with a 10-Year Certain and Life Benefit Option. A reduced benefit will be paid to you for your lifetime and if you die before receiving 120 monthly payments, your spouse will receive the same monthly benefit for the duration of the 120-month period. Your spouse will then receive 100% of your reduced monthly

24

NEIP0030

benefit for her lifetime. If your spouse dies before the expiration of the 120-month period, your designated beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of your monthly benefit reduced only for the Ten-Year Certain Benefit form and, if applicable, early retirement. If you die after receiving 120 months of payments, your spouse will receive 100% of your reduced monthly pension for her lifetime.

Your monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for early retirement).

Under Options D through I, if your spouse dies before you, your pension will "pop up" to a percentage of the full monthly amount otherwise payable to you as a Straight Life Benefit after adjustment, if any, for early retirement. If you die after your spouse but before the term certain period has expired, your designated beneficiary will receive a monthly benefit for the balance of the period. Your beneficiary's benefit will be 100% of your monthly benefit, reduced only for the certain and life benefit form and early retirement, if applicable.

The amount of the reduction under Options B through I will depend upon the ages of you and your spouse and the percentage of your monthly pension to be continued to your spouse.

## PROTECTION FOR YOUR SURVIVING SPOUSE BEFORE YOU RETIRE

If you are vested, the Plan provides automatic protection for your spouse if you die before you retire or begin receiving benefits.

### Pre-Retirement Spouse's Benefit

If you are vested and die while in Covered Employment, your spouse will automatically receive a benefit. The benefit your spouse will receive is equal to one-half (1/2) of your monthly benefit calculated as if you retired on a Normal Retirement Pension in the Straight Life Benefit form on the first day of the month in which your death occurs. The same rule applies if you are vested and die while on layoff for not more than 24 months, or you are absent from Covered Employment but your absence will not result in a Break-in-Service as provided by the Plan.

Upon the death at any age of a married employee who has at least 7 years of Vesting Service and at least 17,000 hours of work reported on his behalf who dies within 90 days of the last date the employee completed at least one hour of work in Covered Employment, his spouse shall be entitled to receive a monthly pension benefit of one-half (1/2) of the employee's monthly benefit calculated as if he retired on a Normal Retirement Pension in the Straight Life Benefit form on the first day of the month in which his death occurs.

If your spouse files an application for her benefits within nine months after your death, all payments will be retroactive to the date of death; otherwise, payments will begin after your spouse's application is received by the Benefits Office.

25

NEIP0031

<u>**Spouse's Benefit - Terminated Vested Employees**</u>

A pre-retirement spouse benefit will be paid to your surviving spouse if you are vested and worked under the Plan after August 22, 1984, die before your pension begins, and die when you are neither performing Covered Employment, nor are on a layoff of up to 24 months or are absent from Covered Employment for a reason that would not result in a Break-in-Service (see page 6).

For this benefit to be effective, you and your spouse must have been married to each other for at least a one year period ending on your date of death, or if you are divorced a Qualified Domestic Relations Order requires your former spouse to be treated as a spouse for purposes of this benefit.

**A.    Spouse's Benefit After You Attain Age 55 But Before Your Payments Begin**

If you are vested and die after leaving Covered Employment on or after age 55 but before your payments begin, your spouse will be protected. Your spouse will receive a benefit equal to one-half the Early Retirement Pension you would have received if you had retired on the first day of the month in which you died, reduced for the 50% Husband and Wife Pension.

**B.    Spouse's Benefit Before You Attain Age 55 But Before Your Payments Begin**

If you are vested and die after leaving Covered Employment prior to age 55, your spouse may also be protected. If you left Covered Employment between July 1, 1976 and prior to August 23, 1984, you may elect to have a spouse's benefit be paid to your surviving spouse under this provision. If you leave Covered Employment on or after August 23, 1984, your spouse is automatically covered for this survivor's protection.

The lifetime benefit payments to your spouse begin on the first of the month after her application is filed with the Plan, but they cannot begin before the first of the month following your 55th birthday. The payment to your spouse is equal to one-half of your deferred Vested Pension, reduced for the early Vested pension and the 50% Husband and Wife Pension.

NEIP0032

Example: Jim, a married employee, terminates Covered Employment in October 1996 at age 48. He has 40,800 hours of Future Benefit Service and no Past Benefit Service. His ABR is $69.00. His monthly benefit at age 65 would be:

Future Benefit Service: $\frac{40,800}{1,700}$ = 24 years x $69.00 =    $1,656.00

Vested Pension at Age 65:                                $1,656.00

Jim dies two years later at age 50 and has a surviving spouse, age 46. His spouse would be eligible for a monthly benefit, payable when Jim would have been age 55. The benefit would be:

| | |
|---|---|
| Deferred Vested Benefit: | $1,656.00 |
| Percentage Payable for Early Vested Pension | x    .40 |
| | $ 662.40 |
| Percentage Payable for 50% Husband and Wife Pension | x    .908 |
| | $ 601.45 |
| Percentage Payable to Spouse | x    .50 |
| Spouse's Monthly Benefit: | $ 300.72 |

Jim's wife would receive a benefit of $300.72 per month beginning in October 2003.

## Lump Sum Cashout of Spouse's Benefit

If you die prior to retirement, your spouse is entitled to a benefit, and the present value of your spouse's benefit is $3,500.00 or less, the Trustees may make a lump sum payment of the benefit to which your surviving spouse is entitled instead of monthly payments.

## Retired Employees' Death Benefits

Upon the death of a retired employee who is either unmarried on the date of his death or who is married and has elected the Straight Life Benefit, the Employee's designated beneficiary will receive a lump sum payment consisting of the excess, if any, of the employee's Accumulated Employee Contributions to the date the pension commences over the total amount of the pension payments received by the employee and any other payments required to be made under the terms of a Qualified Domestic Relations Order.

Upon the death of a married retired employee who has not elected the Straight Life Benefit and following the death of the retired employee's spouse, the designated beneficiary will receive a lump sum consisting of the excess, if any, of the employee's Accumulated Employee Contributions to the date the pension commences over the total amount of the pension payments received by the employee and his spouse.

NEIP0033

A lump sum death benefit of $5,000.00 is also payable to your designated beneficiary if you are receiving a Normal, Early, Vested or Disability Pension. However, this benefit is not payable if you are receiving a Disability Retirement Pension and are entitled to life insurance benefits under the Health Benefit Plan.

## Pre-Retirement Death Benefit - Return of Employee Contributions

If you are active or vested and die before receiving a pension, and you are not married or your spouse is not entitled to a pre-retirement spouse benefit, your designated beneficiary will receive your Accumulated Employee Contributions in a lump sum.

If your surviving spouse is eligible for a pre-retirement surviving spouse benefit and upon her death the total of all pension payments made on your behalf (to you and/or your spouse) does not equal your Accumulated Employee Contributions, then the excess will be paid to your designated beneficiary.

## Return of Employee Contributions

Before the Plan Year commencing July 1, 1982, the Plan was financed by both employer and employee contributions. You may receive your Accumulated Employee Contributions, if any, in a lump sum at any age if you are not vested, and you have suffered a Break-in-Service or left Covered Employment for at least 12 months. Also, you must not have accrued any hours of Covered Employment for at least six months before you apply for a refund and must not have received any pension from the Fund. Your spouse, if any, must consent in writing to your withdrawal. The consent must be notarized and acknowledge the effect of the withdrawal.

If, at age 65, you are not eligible for any benefit, you will automatically receive your Accumulated Employee Contributions, if you have not already done so.

## Waiver of Benefits

You may be able to waive any portion of your monthly pension benefit in order to satisfy eligibility requirements for government-provided benefits. You have the right to revoke this waiver at any time, however, you are not entitled to any benefits previously waived. You may not waive any benefits payable to your surviving spouse or any benefits which are required to be made to you by law as a mandatory distribution.

## Designated Beneficiary

You may name a beneficiary or beneficiaries to receive benefits by completing and filing a beneficiary designation form with the Benefits Office. A designation or change of beneficiary will be effective upon its *receipt* by the Benefits Office prior to your death.

NEIP0034

Upon the death of an Employee who has no properly designated beneficiary, who has divorced his designated beneficiary, or whose designated beneficiary has predeceased him, amounts otherwise payable to a designated beneficiary shall be paid to the following in the order listed:

1.  The employee's spouse
2.  The employee's children
3.  The employee's parents
4.  The employee's personal representative

Amounts shall be paid to individuals in a category only if there are no persons in a higher category who survive you. Amounts will be divided equally among all persons in a category.

Notwithstanding anything herein to the contrary, if you are married and with your spouse have elected the Straight Life Benefit, you may change your designated beneficiary only with the consent of your spouse. Such consent must be in writing, must acknowledge the beneficiary or beneficiaries so designated, and must be witnessed by a notary.

## Applying for Benefits

To receive a benefit from the Pension Fund, you or your beneficiary must file an application form. Applications are available from the Benefits Office. You must complete and return your application to the Plan Administrator, at the Benefits Office, prior to your intended Effective Date. It is very important that you complete the application and provide any necessary documents - such as birth certificates, marriage certificates and a disability award (if you are applying for a disability pension). If you do not complete the form or if the documents are missing, it may delay the commencement of your pension payments.

## RIGHT TO APPEAL

If your application for benefits is denied in whole or in part, the Benefits Office will provide you with a written notice which sets forth the reasons for the denial, references to any pertinent Plan provisions, a description of any additional material or information which might help your claim, and an explanation of why that information is necessary.

If you receive such a notice and are dissatisfied with the response of the Benefits Office or if you disagree with a policy, determination or action of the Benefits Office, you may request the Board of Trustees to review your benefit denial or the policy, determination or action with which you disagree, by submitting a written appeal to the Trustees. Your written appeal must be submitted within 180 days of receiving the notice of denial of benefits or within 60 days after you learn of a policy, determination or action with which you disagree and which is not a benefits denial.

Your written appeal should state the reasons for your appeal. This does not mean that you are required to cite all applicable Plan provisions or to make "legal" arguments; however, you should state clearly why you believe you are entitled to the benefit you claim or why you disagree with a

NEIP0035

policy, determination or action. The Trustees can best consider your position if they clearly understand your claims, reasons and/or objections.

The Trustees or a designated Committee of the Trustees will review your appeal at their quarterly meeting immediately following the receipt of your appeal unless your appeal was received by the Benefits Office within 30 days of the date of the meeting. In this case, your appeal will be reviewed at the second quarterly meeting following receipt of the appeal. You may wish to contact the Benefits Office concerning the date of the next meeting so that you may submit your appeal in time to be reviewed at that meeting. If special circumstances require an extension of the time for review by the Trustees or Committee, you will be notified in writing.

You will receive written notice of the decision of the Trustees or Committee promptly after review by the Trustees or Committee. The notice will explain the reasons for the decision, will include specific references to Plan provisions on which the decision is based, and may indicate if additional information might help your claim.

You may renew your appeal if you have any additional information or arguments to present. A renewed appeal must be submitted in writing, and the rules and time limits stated above apply.

In connection with an appeal or renewed appeal, you may review pertinent documents in the Benefits Office after making appropriate arrangements, or you may request that documents be provided to you. The Benefits Office may charge $.25 per page to provide documents to you, and this amount must be paid in advance.

## DISTRIBUTION REQUIREMENTS

### Action of Trustees

The Trustees shall have discretionary authority to make interpretations of this Plan as are necessary to carry out the intent and purpose of the Plan and provide for its effective administration.

In all actions regarding determinations concerning benefit eligibility, the Trustees shall be the sole judge of:

        A.     the standard of proof required in any case;
        B.     the application and interpretation of the Plan;
        C.     the amount or entitlement to a pension; and
        D.     the crediting of Future or Past Benefit Service.

The decisions of the Trustees with respect to any of the foregoing shall be final and binding on all parties.

NEIP0036

### When Benefits Begin

Your pension will generally be payable on the first day of the first month after you have met all the requirements for entitlement to benefits. Remember, such requirements include filing a completed pension application in advance of the date you want your pension payments to be effective.

### Mandatory Benefit Commencement

You may not delay the commencement of your pension beyond the date established by federal law.

### Maximum Limitations Under the Internal Revenue Code

The Internal Revenue Code imposes a maximum limit on the amount of benefits you may receive from the Plan during any year. The Benefits Office will let you know if these limits apply to you.

### Eligible Rollover Distributions

If you receive an eligible rollover distribution from the Plan, you may elect to have all or any portion of the distribution directly rolled over to an eligible retirement plan you specify, or paid to you. If you choose a direct rollover, no income tax will be withheld. If you choose to have your benefit paid to you, the Fund must withhold 20% of the payment and send it to the IRS to be credited against your taxes. More information on the rollover rules and the tax consequences of Plan payments will be provided to you by the Plan Administrator before payment is made to you.

## WORKING AFTER RETIREMENT

You are expected to retire from the trade to receive a pension. Working at the trade after your pension starts may cause your pension to be suspended, as explained below.

### Disqualifying Employment

If you are receiving a pension from the Fund and you are under age 65, you cannot perform any work of the type covered by the trade or craft jurisdiction of the Union, including supervisory work, or employment or self-employment in any category of work in the elevator industry.

If you are receiving a pension from the Fund and you are past your 65th birthday, you may not work as an employee or be self-employed in the elevator industry and any other industry in which employees covered by the Plan were employed when the employee's pension began or, but for suspension, would have begun, in any state of the United States from which the Plan receives contributions on behalf of employees, in any occupation covered by the Plan, for 40 or more hours in a month. Work for under 40 hours per month (or in a 4 or 5 week payroll period used by your employer instead of a calendar month) is permitted and there will be no suspension of your benefits. This rule also applies to employees who do not retire, but continue to work past age 65.

NEIP0037

However, a retired employee who is employed solely as an elevator inspector and performs no work of the type which is Covered Employment under the Plan shall not be deemed to be employed in the elevator industry and will not have his pension suspended regardless of the number of hours he is employed as an elevator inspector.

If you are not sure whether certain employment would be considered Disqualifying Employment by the Benefits Office, you may request the Trustees to review the employment you are considering and to advise you whether that employment would result in a suspension of your pension. Such requests must be in writing and will be handled in accordance with the appeal procedures of the Pension Plan.

### If You Take a Job in Disqualifying Employment

If you are retired, under age 65, and take a job in Disqualifying Employment as described above, your pension will be suspended for each month you work in Disqualifying Employment.

If you are retired, over age 65, and you take a job in Disqualifying Employment, as described above, your pension will be suspended for each month in which you work 40 hours or more.

You are required to notify the Benefits Office in writing within 30 days after taking a job that is or may be Disqualifying Employment or employment as an elevator inspector, irrespective of the number of hours you work.

### Failure to Provide Required Notice

The Trustees know that most members are honest and follow the rules. However, retirees will be asked to periodically sign a statement affirming that they are not working in Disqualifying Employment. Of course, if a retiree returns to work covered by the Plan, the Benefits Office will receive reports from your employer. If there is information provided from any source that you are working in Disqualifying Employment, the Trustees may automatically suspend your pension based on two presumptions:

1. That you worked at least 40 hours per month, and

2. That you have been working at the job site for as long as the contractor has been working at that site.

Any errors made in this regard will be corrected as soon as you provide satisfactory information about your actual employment.

### Recovery of Overpayments

If your pension is suspended for months for which you have already received payment, the amount you owe the Fund will be deducted from your pension when it starts again until the debt is paid in full. After you attain Normal Retirement Age, no more than 25% of your pension check can be deducted, except for the first check following suspension, which may be deducted up to 100%.

32

NEIP0038

This first check following the suspension of your pension may include payments for several months. The deductions will also continue against your spouse's benefit after your death. Of course, the Trustees can also bring a lawsuit against you to collect amounts which you owe to the Fund.

## Appeal of Suspension

You may appeal the suspension of your pension in the same way that you appeal any other matter involving the Plan. A written request for review must be filed within 180 days of the notice of benefit suspension.

## Notice of Termination of Disqualifying Employment

If you stop working in Disqualifying Employment, you must notify the Benefits Office in writing, on a form provided by the Benefits Office, of the date you last worked in Disqualifying Employment. Your pension (less any amounts due the Fund) will resume the month after you cease Disqualifying Employment, but there may be a delay of up to 3 months before the first check arrives.

## Additional Pension Credit for Work Covered by the Plan

If you return to Covered Employment and earn at least one year of Vesting Service, you will be entitled to a recomputation of your pension, based upon any additional credited service you earn and your age when your pension resumes. The portion of your pension based on service credit earned prior to your initial retirement will be calculated using the ABR in effect at your initial retirement. The portion of your pension based upon service credit earned after your return to work will be calculated using your subsequent ABR. Your pension will be adjusted for the months that you received benefits and the months your pension was suspended for work if that work was disqualifying and would have been disqualifying if you had attained age 65. Any election you made when you first retired concerning your type of benefit (e.g., Normal, Early) will remain in effect. However, you may be entitled to elect a different form of benefit with respect to the credited service earned after your return to Covered Employment.

NEIP0039

## HEALTH COVERAGE BY THE NATIONAL ELEVATOR INDUSTRY
## HEALTH BENEFIT PLAN AFTER RETIREMENT

If you or your dependents are eligible for retiree health coverage under the terms of the NEI Health Benefit Plan, you or your dependents can "purchase" this coverage by authorizing in writing a monthly deduction from your pension benefit in the amount required for such health coverage. The cost and availability of this coverage is determined by the Board of Trustees of the Health Benefit Plan.

This option may be elected only at the time you file your application for a pension. The authorization is strictly voluntary. You may cancel this election by filing a written revocation with the Trustees.

This authorization is not an assignment of benefits to the Health Benefit Plan.

## IMPORTANT INFORMATION ABOUT YOUR PLAN

### Identification Numbers of the Plan

The EIN of the Plan sponsor is 23-2694291, and the plan number is 001.

### Plan Administrator

The Plan is sponsored by a joint Board of Trustees, which is made up of eight members - four Union representatives and four Employer representatives. You can contact the Board by writing to:

> Robert L. Milano
> Plan Administrator
> National Elevator Industry Pension Plan
> 19 Campus Boulevard, Suite 200
> Newtown Square, Pennsylvania 19073-3228

A complete list of the participating employers is available for review by any participant or beneficiary at the office of the Plan Administrator. You can get your own copy by writing to the Plan Administrator. There may be a charge for the copy.

The Board of Trustees is responsible for the overall administration of the Plan, but has delegated the day-to-day administrative functions to the "Plan Administrator." The Plan Administrator processes all benefit requests, maintains employee records and serves as the Plan's information center.

NEIP0040

You can contact the Plan Administrator by writing to:

> Robert L. Milano
> Plan Administrator
> National Elevator Industry Pension Plan
> 19 Campus Boulevard, Suite 200
> Newtown Square, Pennsylvania 19073-3228
>
> (800) 523-4702

The agent for service of legal process on the Plan is:

> Donald J. Capuano, Esquire
> O'Donoghue & O'Donoghue
> 4748 Wisconsin Avenue, N.W.
> Washington, D.C. 20016

Legal process may also be served on the Plan Administrator or a Plan Trustee at the Benefits Office.

The Plan Year for purposes of maintaining Plan records is July 1 to June 30.

## Plan Funding

The Plan is a defined benefit pension plan. It is maintained pursuant to collective bargaining agreements. A copy of such agreements may be obtained by participants and beneficiaries upon written request to the Plan Administrator. There may be a charge for the copy. The agreements are also available for examination at the Benefits Office.

All contributions to the Plan are made by employers in accordance with the collective bargaining agreements. The agreements require contributions on behalf of each covered employee on the basis of a fixed rate per hour of Covered Employment. The Benefits Office will provide you, upon written request, with information about whether a particular employer is contributing to the Fund on behalf of employees working under a collective bargaining agreement.

Benefits are provided from the Fund's assets, which are accumulated under the provisions of the Fund's Trust Agreement and held in a trust fund for the purpose of providing benefits to all eligible persons and defraying reasonable administrative expenses.

## Pension Benefit Guaranty Corporation

Benefits under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) if the Plan terminates. Generally, the PBGC guarantees most vested normal age retirement benefits, early retirement benefits, and certain disability and survivor's pensions. However, PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

35

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask your Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 2020 K Street, N.W., Washington, D.C. 20006. The PBGC Office of Communications may also be reached by calling (202) 254-4817.

## Termination of the Plan

The Union and NEII (the Plan's sponsors) expect to continue the Plan indefinitely. Since future conditions cannot be foreseen, however, they reserve the right to end the Plan.

In the event of Plan termination, you will not accrue any further benefits under the Plan. However, the benefits that you have already accrued will become vested, that is, nonforfeitable, to the extent your benefits can be funded by the Plan assets allocated to such benefits. If there are not enough assets to pay for all of the benefits described in the Plan after providing for the expenses of termination, the remaining assets will be allocated in accordance with Section 9.03 and/or 9.04 of the Plan and as required by law.

Once the allocation procedure is completed, the Trustees, as a general rule, will use the available assets to purchase annuity contracts to provide for your benefits. However, under certain circumstances, the Trustees may pay you the actuarial equivalent of your benefit in cash, if you consent to such payment.

## Selling, Assigning or Pledging Benefits

Benefits under this Plan may not be sold, assigned or pledged as security for a loan. Furthermore, benefits are not subject to attachment or execution for the payment of a debt under any judgment or decree of a court or otherwise, except as provided in the Internal Revenue Code and applicable regulations. However, any benefits payable to an alternate payee under a legally binding Qualified Domestic Relations Order will be honored by the Fund.

## Benefit Increase for Retirees

There is no guarantee that pensions will be increased after retirement, even if the benefit rate is increased for active employees. The Trustees may provide benefit increases to retirees if the financial experience and current income to the Plan permit such increases.

36

## YOUR RIGHTS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974

As a participant in the National Elevator Industry Pension Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act (ERISA). Specifically, ERISA provides that all plan participants shall be entitled to:

- examine, without charge, at the plan administrator's office and your worksite (if there are 50 or more participants) all plan documents, including collective bargaining agreements, and copies of all documents filed with the U.S. Department of Labor, such as annual reports.

- obtain copies of all plan documents and other plan information upon written request to the plan administrator. The plan administrator may make a reasonable charge for the copies.

- receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant a copy of this summary annual report.

- obtain a statement telling you whether you would have a right to receive a pension at normal retirement age (65), and, if so, what your benefit would be at normal retirement age if you stop working under the plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once a year. The plan must provide the statement free of charge.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of your plan. The people who operate your plan, called "fiduciaries," have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA. If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the persons you have sued to pay these costs and fees. If you lose, the court may order you to pay these court costs and legal fees, for example, if it finds your claim is frivolous.

37

NEIP0043

If you have any questions about the plan, you should contact the plan administrator. If you have any questions about this statement or your rights under ERISA, you should contact the nearest Area Office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory, or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, NW, Washington, DC 20210.

NEIP0044

# EXHIBIT
# 2



EXHIBIT

2

UNITED STATED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RELIASTAR LIFE INSURANCE
COMPANY,

                Plaintiff,

vs.

ROBERT W. CAVINESS, DALLAS
C. CAVINESS, and RHONDA CAVINESS
PIERCE (in her capacity as guardian for
D██████. C███████, a minor),

                Defendants.

CASE NO. 2:07-cv-1084-

## COMPLAINT FOR INTERPLEADER

Now comes Plaintiff, ReliaStar Life Insurance Company ("ReliaStar"), for its
Complaint for Interpleader and states and alleges as follows:

### PARTIES

1.     ReliaStar is a Minnesota company with its principal place of business in
Minneapolis, Minnesota. At all relevant times, ReliaStar was qualified to do business in
the State of Alabama.

2.     Robert W. Caviness is over the age of 19 and a resident citizen of the State
of Alabama.

3.     Dallas C. Caviness is over the age of 19 and a resident citizen of the State
Alabama.

4.      Rhonda Caviness Pierce (f/k/a Rhonda Caviness) is over the age of 19 and is the guardian and mother of ⬛, a minor, both of whom are residents of the State of Alabama.

## JURISDICTION

5.      This is an action for interpleader over competing claims to the proceeds of a group life insurance policy. The group life insurance policy at issue is part of a multi-employer plan governed by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq.* This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in this Judicial District and Division pursuant to 28 U.S.C. § 1397 because one or more Defendant(s) reside within this District.

## INTERPLEADER

7.      ReliaStar issued group life insurance policy 63306-2-GAT (the "Group Policy") to Policyholder, Trustees of the National Elevator Industry Health Benefit Plan ("NEIHBP"), as part of the NEIHBP's multi-employer benefit plan as that term is defined by the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq.*

8.      George W. Caviness, Jr. was an employee of a participating employer as those terms are defined by the Group Policy and was eligible for life insurance coverage under the Group Policy beginning on September 1, 1992.

9.      On December 13, 2004, George W. Caviness, Jr. designated his brother, Robert W. Caviness, as the beneficiary of his life insurance benefits under the Group Policy.

2

10.     On or about February 23, 2004, the Circuit Court of Shelby County, Alabama entered a Final Judgment of Divorce dissolving the marriage of George W. Caviness, Jr. and Rhonda R. Caviness, who is upon information and belief now known as Rhonda Caviness Pierce.

11.     As part of the Final Judgment of Divorce, the Court ratified, approved and confirmed the Agreement of the Parties executed on January 23, 2004, by George W. Caviness, Jr. and Rhonda R. Caviness.

12.     The Final Judgment of Divorce and Agreement of the Parties provided, in part, that George W. Caviness, Jr. "shall maintain and name [D    I C    ] and Dallas C. Caviness] the irrevocable beneficiary of a policy of life insurance on his life provided through his employer for so long as there is an obligation for child support or college expenses to be paid."

13.     George W. Caviness, Jr. passed away on January 25, 2007, due to sequaele secondary to acute and chronic ethanol abuse.

14.     Forty-Thousand Dollars ($40,000) is due and payable as life insurance benefits under the Group Policy as a result of the death of George W. Caviness, Jr.

15.     No change was made to the beneficiary designation for George W. Caviness, Jr.'s life insurance coverage under the Group Policy between December 13, 2004, and George W. Caviness Jr.'s death.  Consequently, the named beneficiary remained Robert W. Caviness.

16.     Robert W. Caviness has filed a claim for the life insurance benefits insuring the life of George W. Caviness, Jr. claiming entitlement by virtue of his status as the named beneficiary.

3

17.     Dallas C. Caviness has filed a claim for the life insurance benefits insuring the life of George W. Caviness, Jr. claiming entitlement by virtue of the Final Judgment of Divorce and Agreement of the Parties entered in the Circuit Court of Shelby County, Alabama.

18.     Rhonda Caviness Pierce, in her capacity as mother and guardian of D

, a minor, has filed a claim for the life insurance benefits insuring the life of George W. Caviness, Jr. on behalf of D          C          by virtue of the Final Judgment of Divorce and Agreement of the Parties entered in the Circuit Court of Shelby County, Alabama.

19.     Consequently, there are competing claims to the life insurance proceeds of the Group Policy.

20.     ReliaStar is unable to pay the Group Policy proceeds to either of the claimants as to do so would subject it to multiple liability.

21.     ReliaStar is a disinterested stakeholder with respect to the proceeds of the Group Policy and claims no beneficial interest therein, except for the attorney's fees and costs incurred in brining this interpleader action as the Court in its discretion may deem appropriate to award. ReliaStar respectfully seeks the Court's permission to deposit the proceeds due under the Group Policy into the Court's Registry, all of which is payable by virtue of the death of George W. Caviness, Jr.

**WHEREFORE**, Plaintiff ReliaStar Life Insurance Company respectfully requests the following relief:

1.     That the Court accept the proceeds of the Group Policy, plus interest into its Registry;

4

2.    That the Court require the named defendants to enter appearances and

      interplead their claims to the proceeds;

3.    That the Court permit this interpleader action to go forward and enter

      judgment that ReliaStar is discharged from liability and dismiss ReliaStar ,

      with prejudice, from the interpleader action;

4.    That the Court award ReliaStar its costs and attorney's fees to be paid

      from the interplead funds;

5.    That on final hearing, the Court award the proceeds to whomever the

      Court deems to be rightfully and legally entitled to the proceeds; and

6.    That the Court award ReliaStar such other and further relief as the Court

      deems just and equitable.

George W. Walker, III (WAL097)
COUNSEL FOR PLAINTIFF
RELIASTAR LIFE INSURANCE COMPANY

**OF COUNSEL:**

COPELAND, FRANCO, SCREWS & GILL, P.A.
Post Office Box 347
Montgomery, Alabama  36101-0347
Tel:  (334) 834-1180
Fax: (334) 834-3172
Email:  walker@copelandfranco.com

5

## SERVICE INSTRUCTIONS

**Serve Defendants via certified mail, restricted delivery, as follows:**

Robert W. Caviness
Rt. 1, Box 132J
Alexander City, AL  35010

Dallas C. Caviness
1554 Sequoia Trail
Helena, AL  35080

Rhonda Caviness Pierce, as Guardian
for D██████  C███████, a Minor
1554 Sequoia Trail
Helena, AL  35080

6

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001538
Cashier ID: brobinso
Transaction Date: 12/12/2007
Payer Name: COPELAND FRANCO SCREWS
------------------------------------
CIVIL FILING FEE
  For: COPELAND FRANCO SCREWS
  Case/Party: D-ALM-2-07-CV-001084-001
  Amount:        $350.00
------------------------------------
CHECK
  Check/Money Order Num: 57030
  Amt Tendered: $350.00
------------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00

RELIASTAR ETC V. CAVINESS ET AL

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001539
Cashier ID: brobinso
Transaction Date: 12/12/2007
Payer Name: ING RELIASTAR LIFE INSURANCE C
------------------------------------------
COMM REG MONEY MARKET
 For: RELIASTAR LIFE INSURANCE
 Case/Party: D-ALM-2-07-CV-001084-001
 Amount:        $41,381.54
------------------------------------------
CHECK
 Check/Money Order Num: 10090297
 Amt Tendered: $41,381.54
------------------------------------------
Total Due:       $41,381.54
Total Tendered: $41,381.54
Change Amt:       $0.00

RELIASTAR LIFE INS V. CAVINESS ET
AL

# EXHIBIT
# 3-A

MAR 0 6 2007

EXHIBIT

tabbies

3-A

IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA

IN RE:   THE MARRIAGE OF

RHONDA R. CAVINESS,                )
                                   )
                 PLAINTIFF,        )
                                   )       CIVIL ACTION NO.:
                                   )       DR 03 857 HBH
VS.                                )
                                   )
GEORGE W. CAVINESS, JR.,           )
                                   )
                 DEFENDANT.        )

## FINAL JUDGMENT OF DIVORCE

This cause, coming on to be heard, was submitted for final judgment upon the Plaintiff's Complaint, Answer and Waiver of the Defendant, and Testimony as noted by the Notary Public. Upon consideration thereof, it is ORDERED and ADJUDGED by the Court as follows:

FIRST:       That the bonds of matrimony heretofore existing between the parties are dissolved, and the said Plaintiff, Rhonda R. Caviness and said Defendant, George W. Caviness, Jr., are divorced each from the other.

SECOND:       That neither party shall marry again except to each other until sixty (60) days after the date of the Judgment of Divorce, and if an appeal is taken (which must be instituted within forty-two (42) days from this Judgment, or from the date that a post-trial motion is denied), then neither party shall again marry except to each other during the pendency of the appeal. Thereafter, each party may, and they are hereby, permitted to again contract marriage upon the payment of costs of this suit.

THIRD:       That the Agreement of the parties filed herein, a copy of which is attached hereto and made a part hereof as though set forth herein, should be and the same is hereby RATIFIED, APPROVED and CONFIRMED by the Court and same shall be fully binding on both Plaintiff and Defendant. The Plaintiff and Defendant are each hereby ORDERED and DIRECTED by the Court to faithfully perform their respective obligations as set forth therein.

FOURTH:       That the award of child support made herein was determined by application of the Child Support Guidelines established by Rule 32, A.R.J.A. Copies of the guideline forms have been filed herein and are made a part of the record in this cause.

FIFTH:       It is further ORDERED by the Court that in the event the obligor becomes delinquent in a dollar amount equal to one month of support payment as herein ordered and upon written affidavit of the obligee of such delinquency, or upon request of the obligor, or upon the Court's own motion, the Income Withholding Order for child support,

RS000019

*Caviness v. Caviness DR 03 857 HBH*
*Final Judgment of Divorce*
*Page 2*

which order is contained on separate paper and is specifically incorporated as a part of this decree as required by Title 30-3-61, 1975 Code of Alabama, shall be served upon the obligor's employer and shall become effective immediately upon service of same.

SIXTH:    That costs of Court in this cause are taxed as paid.

SEVENTH:    In accordance with the Alabama Parent-Child Relationship Protection Act, an Addendum No. 1 is attached to and made a part of the Court's Order of custody determination made in this case, and the parties to said determination shall abide by the terms and conditions thereof.

*** Final Item ***

DONE and ORDERED this the 23rd day of February, 2004.

CIRCUIT JUDGE

I, Mary Harris, Clerk and Register of the Circuit Court for Shelby County, Alabama, do hereby certify that the foregoing is a correct copy of an original decree rendered by the judge of the Circuit Court, in the above styled cause, which said decree is on file and enrolled in my office.

Witness by hand and seal this the 23rd day of February 2004

Mary N Harris
Clerk & Register of Circuit Court

RS000020

Addendum No. 1 to Final Judgment of Divorce

## RELOCATION OF CHILD (REN)

Alabama law requires each party in this action who has either custody of or the right of visitation with a child to notify other parties who have custody of or the right of visitation with the child of any change in his or her address or telephone number, or both, and of any change or proposed change of principal residence and telephone number or numbers of a child. This is a continuing duty and remains in effect as to each child subject to the custody or visitation provisions of this decree until such child reaches the age of majority or becomes emancipated and for so long as you are entitled to custody of or has visitation with a child covered by this order. If there is to be a change of principal residence by you or by a child subject to the custody or visitation provisions of this order, you must provide the following information to each other person who has custody or visitation rights under this decree as follows:

(1)     The intended new residence, including the specific street address, if known.

(2)     The mailing address, if not the same as the street address.

(3)     The telephone number or numbers at such residence, if known.

(4)     If applicable, the name, address, and telephone number of the school to be attended by the child, if known.

(5)     The date of the intended change of principal residence of a child.

(6)     A statement of the specific reasons for the proposed change of principal residence of a child, if applicable.

(7)     A proposal for a revised schedule of custody of or visitation with a child, if any.

(8)     Unless you are a member of the Armed Forces of the United States of America and are being transferred or relocated pursuant to a non-voluntary order of the government, a warning to the non-relocating person that an objection to the relocation must be made within 30 days of receipt of the notice or the relocation will be permitted.

You must give notice by certified mail of the proposed change of principal residence on or before the 45th day before a proposed change of principal residence. If you do not know and cannot reasonably become aware of such information in sufficient time to provide a 45-day notice, you must give such notice by certified mail not later than the 10th day after the date that you obtain such information.

Your failure to notify other parties entitled to notice of your intent to change the

RS000021

principal residence of a child may be taken into account in a modification of the custody of or visitation with the child.

If you, as a non-relocating party, do not commence an action seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of notice of the intent to change the principal residence of the child, the change of principal residence is authorized.

RS000022

# EXHIBIT
# 3

MAR 0 6 2007

EXHIBIT
3

IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA
DOMESTIC RELATIONS DIVISION

RHONDA R. CAVINESS,              )
                                 )
              PLAINTIFF,          )          CIVIL ACTION NO.:
                                 )          DR 2003 857 HBH
VS.                              )
                                 )
GEORGE W. CAVINESS, JR.,          )
                                 )
              DEFENDANT.          )

## AGREEMENT OF THE PARTIES

WHEREAS, Rhonda R. Caviness, hereinafter referred to as "Wife," has filed a

Bill of Complaint for Divorce against George W. Caviness, Jr., hereinafter referred to as

"Husband," in the Circuit Court of Shelby County, Alabama, and

WHEREAS, the parties have agreed with each other as to the settlement of their

affairs and have expressed the desire that this Agreement be made a part of any final

judgment of divorce which may be rendered in this cause,

IT IS, THEREFORE, agreed and understood by and between the parties as

follows:

1.    **Custody.**

       (a)    The Wife shall have the care, custody and control of the minor

children of the marriage, namely, Dallas Caviness, 18 years of age, d.o.b.

and   D.C.      , 12 years of age, d.o.b.

       (b)    It is the intention of the parties that the minor children have free

and open access to both parents; they shall foster that access by permitting and

RS000023

Initials

encouraging open communication and encouraging the minor children to spend time with both parents in accordance with the wishes of the minor children.

2.    <u>Child Support and Income Withholding Order.</u>

(a)    Husband shall pay to Wife Four Hundred Eighty Eight and 00/100 Dollars ($488.00) per month for the support and maintenance of the minor child, Devin Caviness, until such time as the minor child shall reach the age of nineteen (19), marry or become self-supporting, whichever shall first occur. It is the intent of the parties that as the child support obligation may change, they shall determine the correct amount to be paid under the guidelines without the necessity of a formal modification. However, in the event that the parties cannot agree, either party may petition the Court for a modification under the law existing at that time. No support is being paid at this time for Dallas Caviness as he is working and contributing to his own support.

(b)    That reference is hereby made in this Agreement to a separate Order entitled, Order of Continuing Withholding for Support, pursuant to <u>Code of Alabama</u>, 1975 section 30-3-60, et. seq., which shall be entered and NOT served upon Husband's employer. As an alternative, Husband shall make all payments directly to Wife.

3.    <u>College Education.</u>

Husband and Wife shall each pay and be responsible for one-half (½) of expenses related to the children's college education. This responsibility shall include expenses for an undergraduate degree based on the prevailing rates at the University of Alabama. Expenses to include: room, board, books, tuition, and fees, less any scholarships and the like. The parties' obligation for said expenses shall be conditioned

Initials

upon the following: The child's enrollment status be at a minimum a "part-time" student; the child progressing towards a degree; the child maintaining a "C" or better overall grade point average; and, a copy of the child's grades being sent to both parents as soon as same are received by the child or other parent. Enrollment must be continuous for the period of this obligation, except that the child may take a hiatus for a period of up to one quarter/semester per year.

4.    **Insurance.**

*Medical Insurance*

(a)    Husband shall provide and maintain major medical and hospitalization insurance for the benefit of the minor children for so long as he has an obligation to pay child support or college expenses as set out herein. Husband shall provide to Wife a proper identification card within thirty (30) days from the date of this agreement of the parties.

(b)    Husband and Wife shall each pay and be responsible for paying one-half ( ½ ) of all non-covered medical expenses incurred for the children including, but not limited to, hospital, doctor, dental, orthodontic, optical care, psychological, prescription drugs and the like.

(c)    Each party is to provide the other with bills, receipts, invoices, or other statements for major medical, dental and health costs incurred for and on behalf of the minor children within 30 days of receipt by said party. If one party is called upon to pay for said expenses at the time of service being rendered, the other party shall promptly reimburse the paying party.

Initials

RS000025

*Life Insurance*

(d)    Husband shall maintain and name the children the irrevocable beneficiary of a policy of life insurance on his life provided through his employer for so long as there is an obligation for child support or college expenses to be paid. Husband shall provide to the Wife proof, in writing, from the insurance company issuing said policy that said coverage is in full force and effect and that all premiums due have been paid.

5.    <u>Alimony</u>.

The issue of alimony payable from Husband to Wife is hereby reserved for future Order of the Court.

6.    <u>Real Property</u>.

Wife is awarded the full right, title and interest of the parties in and to the family home situated at 1554 Sequoia Trail, Helena, Alabama 35080 and Husband is divested of any right, title or interest therein. Husband shall convey his interest in said home to Wife by appropriate deed. Wife shall assume and pay the indebtedness against said home and all other charges, assessments, taxes and insurance connected with it.

7.    <u>Personal Property</u>.

*Furniture and Furnishings*

(a)    The parties have amicably divided all furniture, furnishings, fixtures, appliances, goods and wares located in the marital residence.

*Automobiles*

(b)    The Husband shall have all right, title and interest in the 2003 Ford Ranger automobile and 1985 Ski Nautique boat and Wife is divested of any and all right,

Initials

RS000026

title and interest therein. Husband shall be responsible for any outstanding indebtedness due and owing on said automobile and shall indemnify and hold Wife harmless therefrom.

(c)    Wife shall be vested with all right, title and interest in the 2000 Jeep Cherokee automobile and Husband is divested of any and all right, title and interest therein. Wife shall be responsible for any outstanding indebtedness due and owing on said automobile and shall indemnify and hold Husband harmless there from.

(d)    The 1971 Chevelle shall be transferred to the minor child, as soon as practicable for his use and benefit.

*Other Personal Property*

(e)    The parties agree that each has made full and fair disclosure of any assets, real and personal, vested in either of them, and each shall take sole title to and possession of all items of personal property currently in his or her name or belonging solely to him or her (and not specifically referred to in this agreement), including, without limitation, cash, checking and savings accounts, jewelry, securities, IRA's, KEOGH's and/or pension and profit-sharing plans, partnerships, business interests, insurance policies and the like, and each hereby renounces any interest that he or she may have in property vested in the other.

8.    <u>Debts</u>.

(a)    Wife has presently pending a Chapter 7 Bankruptcy Case pending and shall be responsible for any attorney fees or costs associated therewith.

(b)    Except—as otherwise provided herein, each party shall be responsible for all debts in his or her separate name.

Caviness v. Caviness DR 03 857 HBH<br>
Agreement of the Parties<br>
Page 5 of 7

Initials

RS000027

(c)    Each party warrants to the other that they have not incurred debts upon which the other party would be liable in any manner whatsoever which has not been disclosed.

(d)    Neither party shall hereafter directly nor indirectly incur further debts or credit obligations that would obligate the other party either individually or jointly.

(e)    Each party shall remove the name of the other party, or close the accounts, from any and all checking and savings accounts, credit cards, etc. within thirty (30) days from the entry of a final judgment herein.

9.    <u>Attorney's Fee and Court Costs.</u>

(a)    Each party shall be responsible for the payment of his or her attorney fees.

(b)    Court costs shall be taxed as paid.

10.    <u>Miscellaneous.</u>

(a)    That each party hereto acknowledges that each of them is making this Agreement of his or her own free will and volition and acknowledges that no coercion, force, pressure, or undue influence has been used against either party in the making of this Agreement, either by the other party hereto or by any other person or persons. The parties hereby further approve and acknowledge that they fully understand the terms, covenants and provisions of this Agreement and believe its terms to be fair, just and adequate and voluntarily accept such terms and conditions.

(b)    Each party hereto shall execute and deliver to the other party any documents that may be required to accomplish the intention of this instrument and shall

Caviness v. Caviness DR 03 857 HBH
Agreement of the Parties
Page 6 of 7

Initials

RS000028

do all other things necessary to this end. If either party shall fail to comply with the provisions of this paragraph, this agreement shall constitute an actual grant, assignment, and conveyance of property and rights in such manner, and with such force and effect as shall be necessary to effectuate the terms of this Agreement.

(c)    Each party hereto has made a full disclosure of his or her assets and liabilities, each has been fully informed of his or her legal rights and obligations hereunder, and each has signed this agreement voluntarily, intending to be bound by it.

(d)    The parties understand that this agreement constitutes the entire contract between the parties and supersedes any prior understanding or agreements between them upon the subjects covered in this document. There are no representations or warranties other than as set forth herein.

WITNESS MY HAND and SEAL this the 23$^d$ day of January, 2004.

_Sandra P. Deason_
Witness

_Rhonda R. Caviness_
Rhonda R. Caviness

WITNESS MY HAND and SEAL this the 23$^d$ day of January, 2004.

_Sandra P. Deason_
Witness

_George W. Caviness_
George W. Caviness, Jr.

Caviness v. Caviness DR 03 857 HBH
Agreement of the Parties
Page 7 of 7

Initials

RS000029

# EXHIBIT
# 4

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE NATIONAL** | ) | |
| **ELEVATOR INDUSTRY PENSION** | ) | |
| **FUND,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | |
| | ) | **CASE NO.: 2:08-CV-162-MEF** |
| **v.** | ) | |
| | ) | |
| **DALLAS CAVINESS, D.C. c/o** | ) | |
| **RHONDA CAVINESS, et al.** | ) | |
| | ) | |
|    **Defendants.** | | |

**<u>AFFIDAVIT OF ROBERT CAVINESS</u>**

**STATE OF ALABAMA**        )

**MONTGOMERY COUNTY**     )

Personally appeared before me, the undersigned Notary Public in and for said State and County, Robert Caviness, who is known to me and being first duly sworn, deposes and says as follows:

1.    My name is Robert Caviness.  I am over 19 years of age and a resident citizen of Alexander City, Alabama.  I have knowledge of the facts contained herein.

2.    My brother, George Caviness, Jr., died on January 25, 2007.

3.    Prior to his death, my brother told me that he had named me as sole beneficiary on his life insurance and pension benefit policies.

4.    At the time my brother secured the insurance policy and pension benefit policy, he was not employed with National Elevator.

5.    My brother became disabled and ceased working in the fall of 2006.



EXHIBIT
4

6.    To my knowledge, George's oldest son, Dallas, was emancipated as of the date of divorce.  My brother never paid child support for Dallas and was not required to do so according to the settlement agreement or order of divorce.

7.    To my knowledge, Dallas never attended college.  My brother did not owe any money for Dallas' college tuition or expenses.

*Robert Caviness*

**ROBERT CAVINESS**

SWORN TO and subscribed before me on this, the 23rd day of July, 2008.

(SEAL)

NOTARY PUBLIC
Commission Expires:

Notary Public
State of Alabama at Large
My commission expires:
July 29, 2009

# EXHIBIT
# 5

## ENROLLMENT AND INFORMATION CHANGES
## NATIONAL ELEVATOR INDUSTRY BENEFIT PLANS
### (Not to be used for National Elevator Industry 401(k) Plan)

(Please type or print in ink-Complete entire form)

**PLEASE READ REVERSE SIDE**

```
EXHIBIT
    5
```

[ ] Helper- New to Trade
[ ] Retired      [ ] Active Employee
[ ] Address Change-This does not require Notarization
[ ] Dependent Add or Change-Provide required documentation-(SEE REVERSE SIDE)
[X] Beneficiary Add or Change

Employee Name _George W. Cariness Jr._     Soc.Sec.No. _____

Address _4647 Cades Cove Dr._

City _Gardendale_     State _AL_     Zip Code _35071_

Birth Date _____  Hire Date _____  Union Local No. _24_  Home Telephone No. _(205) 223-3822_

Failure to list eligible dependents and to supply required documentation may result in a denied Health Plan claim. False information may result in loss of eligibility and/or prosecution. (Spouses, children under age 19, full-time students under age 25, handicapped or disabled children are eligible dependents.)

### Eligible Dependents

| Last Name | First | Initial | Soc. Sec. No. | M/F | Date of Birth Month/ Day/Year | Relationship |
|-----------|-------|---------|---------------|-----|------------------------------|--------------|
| Cariness | George | W. | | M | | Self |
| Cariness | Derik | L. | | M | | Son |
| | | | | | | |

### Beneficiary Information

Name _Robert William Cariness_     Soc. Sec. No. _____

Address _15 High Ridge Court_     Date of Birth _____

City _Wetumpka_     State _AL_     Zip _36093_

Relation to Employee _Brother_  Share _100%_  Home Phone No. _(334) 546-0006_

### Beneficiary Information

Name _____     Soc. Sec. No. _____

Address _____     Date of Birth _____

City _____     State _____     Zip _____

Relation to Employee _____  Share _____%  Home Phone No. (____)

### (FOR ADDITIONAL AND/OR CONTINGENT BENEFICIARIES USE SEPARATE SHEET)

I hereby designate the above to be beneficiary of any benefits due from the National Elevator Industry Pension and Health Benefit Plans. This designation revokes any prior designation inconsistent herewith. I reserve the right to change the beneficiary at my discretion and understand that any change is not effective unless this form is properly completed and received by the Benefits Office. If more than one beneficiary is named, payment shall be made in equal shares unless otherwise stated.

_George W. Cariness Jr._     _December 13, 2004_
Signature of Employee     Date

Sworn to or affirmed and subscribed before me, a Notary Public, this _13_ day of _December_ 2004

_[signature]_
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Feb 1, 2006
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Complete and Return Immediately to the National Elevator Industry Benefits Office at:
19 Campus Blvd. Suite 200
Newtown Square PA 19073-3288

RS000005

# EXHIBIT
# 6

THE FRONT OF THIS DOCUMENT IS PINK - THE BACK OF THIS DOCUMENT IS BLUE AND HAS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

# ALABAMA
## Center for Health Statistics

### ALABAMA
#### CERTIFICATE OF DEATH

**EXHIBIT** 6

101    07-03120

| 1. DECEASED—NAME First Middle Last | 2. DATE OF DEATH | 3. COUNTY OF DEATH |
|---|---|---|
| George Walter CAVINESS Jr. | January 25, 2007 | Jefferson |

4. CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE: Gardendale 35071
5. INSIDE CITY LIMITS: Yes
6. PLACE OF DEATH—HOSPITAL OR OTHER INSTITUTION: 4647 Cades Cove Drive

7. IF HOSPITAL (Specify Inpatient, ER or Outpatient, DOA)
9. OF HISPANIC ORIGIN: No
10. RACE: White
9. SEX: Male

| 11. AGE | 12. UNDER 1 YEAR | UNDER 1 DAY | 13. DATE OF BIRTH | 14. DECEASED'S SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| 45 | | | January 17, | |

15. EDUCATION: Elementary or High School (0-12) 12 / College (1-4 or 5+)
16. MARITAL STATUS: Divorced
17. SURVIVING SPOUSE: No

19. STATE OF BIRTH: Alabama
20. RESIDENCE—STATE: Alabama
21. COUNTY: Jefferson
CITY, TOWN, OR LOCATION AND ZIP CODE: Gardendale 35071

23. INSIDE CITY LIMITS: Yes
24. STREET AND NUMBER: 4647 Cades Cove Drive
25. INFORMANT—Name and Address: Dallas Caviness 1554 Sequoia Trail Helena Alabama 35080

26. USUAL OCCUPATION: Technician
27. KIND OF BUSINESS OR INDUSTRY: Elevator Service

28. FATHER—NAME: George Walter Caviness, SR.
29. MAIDEN NAME OF MOTHER: Barbara McCarty

30. DISPOSITION OF BODY: Cremation
31. DATE OF DISPOSITION: Jan 26, 2007
32. CEMETERY OR CREMATORY—Name: John's Ridouts
33. LOCATION—City or Town—State: Birmingham Alabama

34. FUNERAL HOME and Address: Gardendale Chapel 2029 Decator Hwy. G'dale Al. 35071
35. FUNERAL DIRECTOR—Signature: Shirley Chappell
36. DATE SIGNED BY FUNERAL DIRECTOR: Jan.30, 2007

37. X Medical Examiner Coroner
Signature: Robert M. Brissie md
38. DATE SIGNED: February 8, 2007

39. TIME AND DATE OF DEATH: January 25, 2007
40. DATE AND TIME PRONOUNCED DEAD: January 25, 2007-@ 1020
41. NAME AND TITLE OF PERSON WHO COMPLETED CAUSE OF DEATH: Robert M. Brissie M.D. Chief Coroner/Medical Examiner

42. ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH: 1515 South Sixth Avenue, Birmingham, Alabama 35233
43. CORONER LICENSE NUMBER: 9504

44. REGISTRAR—Signature: Sherry L Myers
For State or County use only
46. DATE FILED: February 8, 2007

## MEDICAL CERTIFICATION

45. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. LIST ONLY ONE CAUSE ON EACH LINE.

a. IMMEDIATE CAUSE: Sequelae secondary to acute and chronic ethanol abuse.
DUE TO (OR AS A CONSEQUENCE OF):

b. DUE TO (OR AS A CONSEQUENCE OF):

c. DUE TO (OR AS A CONSEQUENCE OF):

47. PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

48. MANNER OF DEATH: Natural.
50. AUTOPSY: Yes
51. If yes, were findings considered in determining cause of death: Yes

This is a legal record and must be filed within five (5) days after death.

FEB 1 2 2007

---

I, Dorothy S. Harshbarger, State Registrar of Health Statistics, certify this is a true and exact copy of the original certificate filed in the Center for Health Statistics, State of Alabama, Department of Public Health, Montgomery, Alabama, and have caused the official seal of the Center for Health Statistics to be affixed. 2007-329-362-9

June 14, 2007    RS000004    Dorothy S. Harshbarger, State Registrar

# EXHIBIT
# 7



# NATIONAL ELEVATOR INDUSTRY

## BENEFIT PLANS

19 CAMPUS BLVD., SUITE 200, NEWTOWN SQUARE, PA 19073-3288

Robert Caviness
15 High Ridge Ct.
Westumpka, AL 36093-1615

02/26/07
Death Benefits
Decedent: George W. Caviness, Jr.
ID# 801058777
Date of Death 01/25/07

Re:    Pension Plan

By reason of the stated Plan Member's death you may be entitled to the following benefits:

_____    Death Benefit from the Pension Fund in the amount of $5,000.00.

___x___   **Life Insurance Benefit of $40,000.00 from the Health Fund, subject to approval by ReliaStar Life Insurance Co.**

_____    Accidental Death Benefit of $40,000.00 from the Health Fund, subject to approval by ReliaStar Life Insurance Co.

_____    The option to continue the Medical, Dental and Vision coverage under COBRA.

___x___   **A monthly pension benefit of 50% of your Brother's entitlement effective 02/017/07 for 10 years.**

_____    In order to process your pension Death Benefit or your monthly Pension, please return the pension payment for the month of     . This is required for tax and audit purposes. The amount due is     .

Please complete, sign and return the enclosed forms together with a certified death certificate. Call us if you need any information. It is our privilege to be of service.

Very truly yours,

Maureen C. Green
Accounting Associate

cc: Business Representative, Local #24



EXHIBIT

7

.0/02

# EXHIBIT
# 8



THE

# NATIONAL ELEVATOR INDUSTRY

## PLAN OF

## PENSION BENEFITS

(Restated Effective March 1, 1998
except as otherwise noted herein)

NEIP0072

# INDEX

| Article | Subject | | Page |
|---|---|---|---|
| I | DEFINITIONS | | 1 |
| II | PARTICIPATION | | 10 |
| | Sec. 2.01 | Participation | 10 |
| | Sec. 2.02 | Termination of Active Employee Status | 11 |
| | Sec. 2.03 | Reinstatement of Active Employee Status | 11 |
| | Sec. 2.04 | Employees Eligible for Continued Plan Participation After Employment Covered by the Standard Agreement Ceases | 11 |
| | Sec. 2.05 | Rules for Participation of Non-Collectively Bargained Employees - Definitions | 12 |
| | Sec. 2.06 | Rules for Participation of Non-Collectively Bargained Employees | 14 |
| | Sec. 2.07 | Effective Date of this Plan | 15 |
| III | BENEFIT SERVICE AND VESTING SERVICE | | 15 |
| | Sec. 3.01 | Benefit Service | 15 |
| | Sec. 3.02 | Future Benefit Service | 15 |
| | Sec. 3.03 | Past Benefit Service | 16 |
| | Sec. 3.04 | Vesting Service | 17 |
| | Sec. 3.05 | Breaks-in-Service | 18 |
| | Sec. 3.06 | Break in Future Service | 18 |
| | Sec. 3.07 | Break in Past Service | 19 |
| | Sec. 3.08 | Vested Status | 19 |
| | Sec. 3.09 | Vested Employee: Effect of a Break-in-Service | 20 |
| | Sec. 3.10 | Non-Vested Employee: Effect of a Break-in-Service | 20 |
| | Sec. 3.11 | Family and Medical Leave Act | 21 |
| IV | PENSION ELIGIBILITY AND AMOUNTS | | 21 |
| | Sec. 4.01 | General | 21 |
| | Sec. 4.02 | Normal Retirement Pension | 21 |
| | Sec. 4.03 | Early Retirement Pension | 21 |
| | Sec. 4.04 | Vested Pension | 23 |
| | Sec. 4.05 | Disability Retirement Pension | 23 |
| | Sec. 4.06 | Multiple Benefit Rates: Split Rates | 25 |
| | Sec. 4.07 | Temporary Supplemental Pension Benefit | 26 |
| V | NORMAL AND OPTIONAL FORMS OF BENEFIT | | 26 |
| | Sec. 5.01 | 50% Husband and Wife Pension at Retirement: General | 26 |
| | Sec. 5.02 | 50% Husband and Wife Pension at Retirement: Normal Form of Benefit for Married Employees | 27 |
| | Sec. 5.03 | Married Employees: Optional Forms of Benefit Payments | 28 |
| | Sec. 5.04 | Conditions for 50%, 75% and 100% Husband and Wife Pensions alone or with the Five or Ten-Year Certain and | |

i

NEIP0073

|  | | Life Benefit Option. | 30 |
|  | Sec. 5.05 | Inactive Vested Employee | 31 |
|  | Sec. 5.06 | Relation to Qualified Domestic Relations Order | 31 |
|  | Sec. 5.07 | Straight Life Benefit: Normal Form of Benefit for Unmarried Employees | 32 |
|  | Sec. 5.08 | Unmarried Employees: Optional Forms of Benefit Payments | 32 |
| VI | DEATH BENEFITS AND RETURN OF EMPLOYEE CONTRIBUTIONS | | 33 |
|  | Sec. 6.01 | Pre-Retirement Spouse's Benefits | 33 |
|  | Sec. 6.02 | Pre-Retirement Spouse's Benefit: Terminated Vested Employees | 33 |
|  | Sec. 6.03 | Pre-Retirement Death Benefits: Return of Employee Contributions | 34 |
|  | Sec. 6.04 | Retired Employee Death Benefits | 34 |
|  | Sec. 6.05 | Designated Beneficiary | 35 |
|  | Sec. 6.06 | Return of Employee Contributions | 35 |
|  | Sec. 6.07 | Cashout of Benefits | 36 |
|  | Sec. 6.08 | Waiver of Benefits | 36 |
| VII | APPLICATIONS, BENEFIT PAYMENTS AND RETIREMENT | | 37 |
|  | Sec. 7.01 | Application | 37 |
|  | Sec. 7.02 | Information and Proof | 37 |
|  | Sec. 7.03 | Action of Trustees | 37 |
|  | Sec. 7.04 | Right of Appeal | 37 |
|  | Sec. 7.05 | Benefit Payments Generally | 38 |
|  | Sec. 7.06 | Retirement | 39 |
|  | Sec. 7.07 | Suspension of Benefits | 39 |
|  | Sec. 7.08 | Benefit Payments Following Suspension | 42 |
|  | Sec. 7.09 | Incompetence or Incapacity of a Retired Employee or Beneficiary | 43 |
|  | Sec. 7.10 | Non-Assignment of Benefits | 43 |
|  | Sec. 7.11 | No Right to Assets | 43 |
|  | Sec. 7.12 | Maximum Limitations | 43 |
|  | Sec. 7.13 | Mandatory Distribution for Older Employees | 45 |
| VIII | FINANCING OF BENEFITS | | 45 |
|  | Sec. 8.01 | Contributions | 45 |
|  | Sec. 8.02 | Non-Reversion | 45 |
| IX | AMENDMENT, MERGER AND TERMINATION | | 46 |
|  | Sec. 9.01 | Amendment | 46 |
|  | Sec. 9.02 | Merger | 46 |
|  | Sec. 9.03 | Termination | 46 |
|  | Sec. 9.04 | Benefits After Termination | 47 |
| X | EMPLOYER WITHDRAWAL LIABILITY | | 49 |
|  | Sec. 10.01 | General | 49 |
|  | Sec. 10.02 | Complete Withdrawal Defined | 49 |
|  | Sec. 10.03 | Amount of Liability for Complete Withdrawal | 49 |
|  | Sec. 10.04 | Satisfaction of Withdrawal Liability | 52 |
|  | Sec. 10.05 | Notice and Collection of Withdrawal Liability | 52 |
|  | Sec. 10.06 | Partial Withdrawal Defined | 53 |
|  | Sec. 10.07 | Partial Withdrawal - Amount | 54 |

ii

Sec. 10.08     Liability Adjustments and Abatements ........54
Sec. 10.09     Mass Withdrawal............................................55
Sec. 10.10     Notice to Employers.......................................55
Sec. 10.11     Geographical Coverage of Standard
               Agreement ...................................................55

XI     MISCELLANEOUS...........................................................55
Sec. 11.01     General .........................................................55
Sec. 11.02     Plan Consistent with Trust .........................55
Sec. 11.03     Retiree Medical Benefits ............................55
Sec. 11.04     Titles for Reference Only ...........................56
Sec. 11.05     Gender and Number ....................................56
Sec. 11.06     IRS Model Amendment................................56

XII     TOP-HEAVY PROVISIONS..............................................56
Sec. 12.01     Application of Top Heavy Provisions .........56
Sec. 12.02     Definitions....................................................57
Sec. 12.03     Top Heavy Minimum Benefits....................58

APPENDIX A  Early Retirement and 50%
             Husband and Wife Benefit Factors
APPENDIX B  75% Husband and Wife Benefit Factors
APPENDIX C  100% Husband and Wife Benefit Factors
APPENDIX D  Buy Back Resolutions
APPENDIX E  Refund of Contributions Resolution
APPENDIX F  Summary of Retiree Increases
APPENDIX G  Five Year Certain and Life Option Factors
APPENDIX H  Ten Year Certain and Life Option Factors
APPENDIX I   Additonal Reduction in Benefit for Married
             Retirees Electing a Certain and Life Option

NEIP0075

# THE NATIONAL ELEVATOR INDUSTRY
# PLAN OF PENSION BENEFITS

(Restated Effective March 1, 1998
except as otherwise noted herein)

## ARTICLE I

## DEFINITIONS

The following words and phrases as used herein shall have the following meanings unless a different meaning is plainly required by the context:

### Section 1.01     Trust Agreement

"TRUST AGREEMENT" means the Agreement and Declaration of Trust establishing the National Elevator Industry Pension Fund, effective July 1, 1962, and any modification, amendment or restatement thereof.

### Section 1.02     Pension Fund

"PENSION FUND" or "FUND" means the National Elevator Industry Pension Fund established by the Trust Agreement, and means generally the money and other items of value which comprise the corpus, income, and additions to the Fund.

### Section 1.03     Trustees

"TRUSTEES" means the individual Trustees constituting the Board of Trustees who are designated and appointed in accordance with the Trust Agreement. The Board of Trustees is the Named Fiduciary of the Plan.

### Section 1.04     Pension Plan or Plan

"PENSION PLAN" or "PLAN" means this document as adopted by the Trustees and as hereafter amended by the Trustees, effective March 1, 1998 except as otherwise noted.

### Section 1.05     NEII

"NEII" means the National Elevator Industry, Inc., a membership corporation organized under the laws of the State of New York.

### Section 1.06     Employer

"EMPLOYER" shall mean:

(a)     a member of the National Elevator Industry, Inc., whose name is attached to and made a part of the Standard Agreement dated January 25, 1962, or successor Standard Agreements and a member who, subsequent to January 25, 1962, authorized the National Elevator Industry, Inc., to negotiate and execute the Standard Agreement on its behalf and an Associated Pension Plan member;

(b)     an Employer engaged in the business of furnishing, erecting, repairing, servicing or maintaining for others, passenger or freight elevators, moving stairways or dumbwaiters, who is now or may

1

NEIP0076

hereafter become a party to the Standard Agreement or any other Collective Bargaining Agreement with the Union or its affiliated Local Unions;

(c)   an Employer employing Elevator Constructor Mechanics and Helpers, represented by the Union, to run temporary cars, who is contractually obligated by a signed stipulation to make contributions and does in fact make one or more payments to the National Elevator Industry Pension Plan;

(d)   a Local Union of the International Union of Elevator Constructors which is signatory to a Participation Agreement with the Trustees which provides for contributions to the National Elevator Industry Pension Plan on behalf of employees of the Local Union covered by the Participation Agreement;

(e)   the National Elevator Industry Educational Plan which is signatory to a Participation Agreement with the Trustees which provides for contributions to the National Elevator Industry Pension Plan on behalf of employees of the National Elevator Industry Educational Plan covered by the Participation Agreement; and

(f)   the Elevator Industry Work Preservation Fund. {Adopted 12/9/97; Effective July 9, 1997}

Provided, however, that the foregoing references to the National Elevator Industry Education Plan and the Local Unions as "Employers" shall not be deemed to convey to them any right or privilege granted by the Pension Plan Agreement and Declaration of Trust to Employers who are members of NEII. {Adopted 2/7/95; Effective 7/1/94}

## Section 1.07    UNION

"UNION" means the International Union of Elevator Constructors and its affiliated Local Unions in the United States of America.

## Section 1.08    Standard Agreement

"STANDARD AGREEMENT" means the 1962-1966 Collective Bargaining Agreement, or successor Collective Bargaining Agreements in force and effect between the Union and NEII, together with any modifications, supplements, or amendments thereto and any other Collective Bargaining Agreements between the Union, or its affiliated Local Unions, and an employer who is engaged in the business of furnishing, erecting, repairing, servicing or maintaining for others, passenger or freight elevators, moving stairways or dumbwaiters. {Adopted 2/7/95; effective 7/1/94}

## Section 1.09    Employee

"EMPLOYEE" means those in the following five categories for whose benefit contributions are required to the National Elevator Industry Pension Plan:

(a)   Elevator Constructor Mechanics and Helpers in the employ of Employers; provided however, the following persons shall not be considered Elevator Constructor Mechanics and Helpers and shall be excluded from participation in the Plan:

    (1)   any unincorporated owner; or a stockholder who directly or indirectly holds more than ten (10) percent of the stock of any entity who is an Employer unless such stockholder is nevertheless a Collectively Bargained Employee as defined in Section 2.05(a); in which case contributions, at the rate of a minimum of 160 hours each month, must be made by his Employer on behalf of such Employee and any other Employees directly related by blood or marriage to such Employee employed by the same Employer and performing bargaining work. This subsection (1) shall be retroactively effective with no term limit; and

NEIP0077

(2)    any person who is an officer of or other corporate official of an Employer, unless such person is nevertheless a Collectively Bargained Employee as defined in Section 2.05(a); in which case contributions must be made at a rate of a minimum of 160 hours each month must be made by his Employer on behalf of such Employee and any other Employees directly related by blood or marriage to such Employee, employed by the same Employer and performing bargaining unit work*; and

(3)    any person compensated in a lump sum, piecework or other basis which is not in accordance with the wage scales and working conditions established by the Standard Agreement.

(b)    paid employees of Local Unions of the International Union of Elevator Constructors which the Local Unions elect to cover subject to the requirements established by the Trustees; and

(c)    paid employees of the National Elevator Industry Educational Plan (NEIEP) which NEIEP elects to cover subject to the requirements established by the Trustees; and

(d)    paid employees of the Elevator Industry Work Preservation Fund which the Preservation Fund elects to cover subject to the requirements established by the Trustees; and

(e)    a person who meets the requirements of Section 2.04 even though such person is not currently employed in a category of work covered by the Standard Agreement. {Adopted 2/7/95; effective 7/1/94 unless otherwise noted}

*This subsection (2) shall be retroactively effective with no term limit. {Adopted 12/9/97; effective 1/1/97 unless otherwise noted}

## Section 1.10   Covered Employment

"COVERED EMPLOYMENT" means the performance of work with respect to which Employers are required to make contributions to the National Elevator Industry Pension Plan in accordance with the Standard Agreement, the Otis Agreement, or other written agreement.

## Section 1.11   Probationary Helper

"PROBATIONARY HELPER" means a person employed by an Employer during an initial period of probationary employment pursuant to Article X of the Standard Agreement. Contributions to the National Elevator Industry Pension Plan are not required by or on behalf of Probationary Helpers except as provided in Section 2.01(a).

## Section 1.12   Active Employee

"ACTIVE EMPLOYEE" means an Employee or former Employee who has not incurred a Break-in-Service or, if he has incurred a Break-in-Service, has completed an Hour of Work in Covered Employment subsequent to his most recent Break-in-Service.

## Section 1.13   Vested Employee

"VESTED EMPLOYEE" means an Employee who is other than an Active Employee or Retired Employee and who retains a right to a pension in accordance with Section 3.08 of this Plan or under the provisions of prior plans.

3

NEIP0078

### Section 1.14    Retired Employee

"RETIRED EMPLOYEE" means a person to whom a pension under this Plan is being paid or to whom a pension would be paid but for the time required for administrative processing. An Employee shall become a Retired Employee as of the Effective Date of his pension. The Effective Date of a pension is determined in accordance with Section 7.05(b).

### Section 1.15    Beneficiary

"BENEFICIARY" means a person designated by an Employee, in accordance with the terms of the Plan, or by the terms of this Plan who is or may become entitled to a benefit from this Plan.

### Section 1.16    Plan Year

"PLAN YEAR" means the period from July 1 of any calendar year through June 30 of the following calendar year. For purposes of ERISA Regulations, the Plan Year shall serve as the vesting computation period, the benefit accrual computation period, and after the initial period of employment or of re-employment following a break in service, the Plan Year commencing within the 12-month period beginning on the date of employment or re-employment shall serve as the computation period for eligibility to participate.

### Section 1.17    Benefit Service

"BENEFIT SERVICE" means the service credited to an Employee in accordance with Section 3.01 for the purpose of determining the amount of an Employee's pension benefit. Benefit Service may include both Past Benefit Service and Future Benefit Service.

### Section 1.18    Past Benefit Service

"PAST BENEFIT SERVICE" means the service credited to an Employee under Section 3.03 of the Plan for periods of employment before contributions to the Plan commenced on July 1, 1962.

### Section 1.19    Future Benefit Service

"FUTURE BENEFIT SERVICE" means service credited to an Employee under Section 3.02 of the Plan for Hours of Work after contributions commenced on July 1, 1962.

### Section 1.20    Vesting Service

"VESTING SERVICE" means the service credited to an Employee under Section 3.04 of the Plan for the purpose of determining whether an Employee is eligible to receive a pension benefit.

### Section 1.21    Hour of Work

"HOUR OF WORK" means (a) each hour for which an Employee is paid or entitled to payment for the performance of duties for an Employer, and (b) each hour for which back pay, regardless of mitigation of damages, is either awarded or agreed to by the Employer, excluding any hour credited under (a). Hours of Work shall be computed and credited in accordance with Department of Labor Regulations Section 2530.200b-3(d).

NEIP0079

**Section 1.22     Hour of Service**

"HOUR OF SERVICE" means (a) each hour for which an Employee is paid or entitled to payment for the performance or non-performance of duties for an Employer, and (b) each hour for which back pay, regardless of mitigation of damages, is either awarded or agreed to by the Employer, excluding any hour credited under (a). Hours of Service shall be computed and credited in accordance with Department of Labor Regulations Section 2530.200b. Hours of Service shall be credited only for the purpose of determining an Employee's eligibility to participate in the Plan in accordance with Section 2.01.

**Section 1.23     Accumulated Employee Contributions**

"ACCUMULATED EMPLOYEE CONTRIBUTIONS" means the total Employee contributions of an Employee plus interest compounded annually at the rate established from time to time by the Trustees to the date of death, distribution or retirement as applicable. The interest rates are established as follows:

| | |
|---|---|
| Prior to June 30, 1967 | 3¼% |
| July 1, 1967 to June 30, 1970 | 3½% |
| July 1, 1970 to June 30, 1975 | 4% |
| July 1, 1975 to June 30, 1981 | 5% |
| July 1, 1981 to June 30, 1988 | 6% |

July 1, 1988 forward at an annual rate equal to 120% of the mid-term applicable federal rate in effect for the first month of the Plan Year.

**Section 1.24     Applicable Benefit Rate**

"APPLICABLE BENEFIT RATE" means the rate or rates used in the calculation of the amount of any retirement benefit which shall be:

(a)     those rates in effect on an Employee's last day of Covered Employment provided the Employee has completed at least 700 Hours of Work during the 12 months preceding such last day of Covered Employment; otherwise, the rates in effect on the last day of the first preceding Plan Year in which such Employee has completed at least 700 Hours of Work; or

(b)     in the case of an Employee who is absent due to Total Disability as that term is defined in Section 1.26, those rates in effect on the date such an Employee's retirement benefit commences, provided such Employee had completed at least 700 Hours of Work during the 12 months preceding commencement of his Total Disability; or

(c)     in the case of an Employee who is deemed not to have suffered a Break-in-Service under Section 3.06(d) during a period of service as an elected or appointed officer or employee of the International Union of Elevator Constructors those rates in effect on the date the Employee's benefit commences; or

(d)     in the case of a disability pensioner, those rates in effect on the effective date of the Employee's Social Security Award.

NEIP0080

The Applicable Benefit rates for (a) - (d) of this Section and their effective dates are as follows:

| Applicable Date for Purposes of Computation | Per Plan Year of Past Service Credit | For Hours of Future Service Credit in Plan Year | Hours |
|---|---|---|---|
| From 7/1/70 through 6/30/73 | $ 4.00/yr | $ 8.00/yr | 1700 |
| From 7/1/73 through 3/31/76 | $ 7.00/yr | $10.00/yr | 1700 |
| From 4/1/76 through 6/30/78 | $ 8.00/yr | $11.00/yr | 1700 |
| From 7/1/78 through 9/30/79 | $15.00/yr | $15.00/yr | 1700 |
| From 10/1/79 through 6/30/80 | $16.00/yr | $16.00/yr | 1700 |
| From 7/1/80 through 6/30/81 | $18.00/yr | $18.00/yr | 1700 |
| From 7/1/81 through 12/31/82 | $23.00/yr | $23.00/yr | 1700 |
| From 1/1/83 through 12/31/83 | $26.00/yr | $26.00/yr | 1700 |
| From 1/1/84 through 12/31/84 | $29.00/yr | $29.00/yr | 1700 |
| From 1/1/85 through 12/31/85 | $32.00/yr | $32.00/yr | 1700 |
| From 1/1/86 through 12/31/86 | $40.00/yr | $40.00/yr | 1700 |
| From 1/1/87 through 12/31/87 | $44.00/yr | $44.00/yr | 1700 |
| From 1/1/88 through 12/31/88 | $50.00/yr | $50.00/yr | 1700 |
| From 1/1/89 through 12/31/89 | $53.00/yr | $53.00/yr | 1700 |
| From 1/1/90 through 12/31/90 | $57.00/yr | $57.00/yr | 1700 |
| From 1/1/91 through 12/31/91 | $60.00/yr | $60.00/yr | 1700 |
| From 1/1/92 through 12/31/92 | $63.00/yr | $63.00/yr | 1700 |
| From 1/1/93 through 12/31/93 | $64.00/yr | $64.00/yr | 1700 |
| From 1/1/94 through 12/31/94 | $66.00/yr | $66.00/yr | 1700 |
| From 1/1/95 through 12/31/95 | $68.00/yr | $68.00/yr | 1700 |
| From 1/1/96 through 12/31/96 | $69.00/yr | $69.00/yr | 1700 |
| From 1/1/97 through 12/31/97 | $72.00/yr | $72.00/yr | 1700 |
| From 1/1/98 forward | $75.00/yr | $75.00/yr | 1700 |

(e)  (1)  The following chart reflects the Applicable Benefit Rates for each year of Past Service Credit and for each 1,700 Hours of Future Service Credit effective January 1, 1986 for certain former Employees who have transferred from Covered Employment to employment with an Employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer. These rates are only applicable to those transferred Employees who are continuously employed by an Employer from the date of transfer to the date of retirement from this Plan either in Covered Employment or in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer. These rates are effective January 1, 1986 and are applicable unless a higher rate applies in accordance with other provisions of the Plan.

| Date of Transfer | Effective Benefit Accrual Rate Transfers |
|---|---|
| Prior to 10/1/79 | $18.00 * |
| From 10/1/79 through 6/30/80 | $18.48 ** |
| From 7/1/80 through 6/30/81 | $20.79 ** |
| From 7/1/81 through 12/31/82 | $26.45 * |
| From 1/1/83 through 12/31/83 | $29.90 * |
| From 1/1/84 through 12/31/84 | $33.35 * |
| From 1/1/85 through 12/31/85 | $36.80 * |

{*Adopted 11/6/85, effective 1/1/86}
{**Adopted 11/18-19/86, effective 1/1/86}

6

NEIP0081

(2)   The Applicable Benefit Rate for each year of Past Service Credit and for each 1,700 Hours of Future Service Credit effective January 1, 1996 for certain former Employees who have transferred from Covered Employment to employment with an Employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer is $26.00. This rate is only applicable to those transferred Employees who are continuously employed by an Employer from the date of transfer to the date of retirement from this Plan either in Covered Employment or in a category of work not covered by a collective bargaining agreement between the Union or one of its Locals and an Employer. This rate is effective January 1, 1996 and is applicable unless a higher rate applies in accordance with other provisions of the Plan.

(3)   The Applicable Benefit Rate for each year of Past Service Credit and for each 1,700 Hours of Future Service Credit effective January 1, 1997 for certain former Employees who have transferred from Covered Employment to employment with an Employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer is $30.00. This rate is only applicable to those transferred Employees who are continuously employed by an Employer from the date of transfer to the date of retirement from this Plan either in Covered Employment or in a category of work not covered by a collective bargaining agreement between the Union or one of its Locals and an Employer. This rate is effective January 1, 1997 and is applicable unless a higher rate applies in accordance with other provisions of the Plan.

(4)   The Applicable Benefit Rate for each year of Past Service Credit and for each 1,700 Hours of Future Service Credit effective January 1, 1998 for certain former Employees who have transferred from Covered Employment to employment with an Employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer is $31.20. This rate is only applicable to those transferred Employees who are continuously employed by an Employer from the date of transfer to the date of retirement from this Plan either in Covered Employment or in a category of work not covered by a collective bargaining agreement between the Union or one of its Locals and an Employer. This rate is effective January 1, 1998 and is applicable unless a higher rate applies in accordance with other provisions of the Plan. {Amended 12/10/97, effective 1/1/98}

(f)   (1)   (i)   Effective January 1, 1996, for those who retired under the Retirement provisions of the Plan and for retired elevator inspectors, as defined under the Plan (See Sec. 7.07(a)(1)), the retiree's monthly benefit effective January 1, 1996 shall be the greater of 1) the monthly benefit the retiree (or surviving beneficiary) is receiving as of December 31, 1995, including adjustments previously elected for early retirement and benefit options, if applicable, and including previously adopted retiree benefit increases, or 2) the retiree's (or surviving beneficiary's) monthly benefit recalculated on the basis of an Applicable Benefit Rate of $26.00 and then applying the same adjustments previously elected for early retirement and benefit options, if applicable, but not applying previously adopted retiree increases. With the exception of retired elevator inspectors, as defined under the Plan, excluded from the term retiree are all those in receipt of a Vested Pension under Section 4.04 of the Plan.

(ii)   Effective January 1, 1997, for those who retired under the Retirement provisions of the Plan and for retired elevator inspectors, as defined under the Plan (See Sec. 7.07(a)(1)), the retiree's monthly benefit effective January 1, 1997 shall be the greater of 1) the monthly benefit the retiree (or surviving beneficiary) is receiving as of December 31, 1996, including adjustments previously elected for early retirement and benefit options, if applicable, and including previously adopted retiree benefit increases, or 2) the retiree's (or surviving beneficiary's) monthly benefit recalculated on the basis of an Applicable Benefit Rate of $30.00 and then applying the same adjustments previously elected for early retirement and benefit options, if applicable, but not

NEIP0082

applying previously adopted retiree increases. With the exception of retired elevator inspectors, as defined under the Plan, excluded from the term retiree are all those in receipt of a Vested Pension under Section 4.04 of the Plan.

(iii) Effective January 1, 1998, for those who retired under the Retirement provisions of the Plan and for retired elevator inspectors, as defined under the Plan (See Sec. 7.07(a)(1)), the retiree's monthly benefit effective January 1, 1998 shall be the greater of 1) the monthly benefit the retiree (or surviving beneficiary) is receiving as of December 31, 1997, including adjustments previously elected for early retirement and benefit options, if applicable, and including previously adopted retiree benefit increases, or 2) the retiree's (or surviving beneficiary's) monthly benefit recalculated on the basis of an Applicable Benefit Rate of $31.20 and then applying the same adjustments previously elected for early retirement and benefit options, if applicable, but not applying previously adopted retiree increases. With the exception of retired elevator inspectors, as defined under the Plan, excluded from the term retiree are all those in receipt of a Vested Pension under Section 4.04 of the Plan.

(2) (i) Effective January 1, 1996, the minimum Applicable Benefit Rate shall be $26.00 for all those who retire in the future as early retirees, disability retirees and normal retirees, provided that such retirees meet the Plan's eligibility requirements for retirement under Section 4.02, 4.03, or 4.05 of the Plan, and for those who have been working as Elevator Inspectors within six months of the date of retirement. The minimum Applicable Benefit Rate shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan. {Adopted 12/10/96; effective 1/1/97}

(ii) Effective January 1, 1997, the minimum Applicable Benefit Rate shall be $30.00 for all those who retire in the future as early retirees, disability retirees and normal retirees, provided that such retirees meet the Plan's eligibility requirements for retirement under Section 4.02, 4.03, or 4.05 of the Plan, and for those who have been working as Elevator Inspectors within six months of the date of retirement. The minimum Applicable Benefit Rate shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan.

(iii) Effective January 1, 1998, the minimum Applicable Benefit Rate shall be $31.20 for all those who retire in the future as early retirees, disability retirees and normal retirees, provided that such retirees meet the Plan's eligibility requirements for retirement under Section 4.02, 4.03, or 4.05 of the Plan, and for those who have been working as Elevator Inspectors within six months of the date of retirement. The minimum Applicable Benefit Rate shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan.

Only participants otherwise eligible for retirement benefits shall be eligible for benefits under this Section 1.24(f). {Adopted 12/10/97; effective 1/1/98}

(g) (1) Effective January 1, 1997, for those who retired under the Retirement provisions of the Plan with an Effective Date of pension from July 1, 1981 through January 1, 1988, there shall be a 6% increase in the retiree's (or surviving beneficiary's) monthly benefit, exclusive of any temporary supplemental pension benefit to which the retiree may be entitled. For a surviving beneficiary of a retiree, entitlement to the increase is based upon the retiree's Effective Date of benefit. For a surviving spouse receiving a Pre-Retirement Spouse's benefit, entitlement to the increase is based upon the Effective Date of the Pre-Retirement Spouse's benefit. The monthly increase shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan.

(2) Effective January 1, 1997, for those who retired under the Retirement provisions of the Plan with an Effective Date of pension after January 1, 1988 and before February 1, 1992, there

8

shall be a 4% increase in the retiree's (or surviving beneficiary's) monthly benefit, exclusive of any temporary supplemental pension benefit to which the retiree may be entitled. For a surviving beneficiary of a retiree, entitlement to the increase is based upon the retiree's Effective Date of benefit. For a surviving spouse receiving a Pre-Retirement Spouse's benefit, entitlement to the increase is based upon the Effective Date of the Pre-Retirement Spouse's benefit. The monthly increase shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan.

(3)    Effective January 1, 1998, for those who retired under the Retirement provisions of the Plan with an Effective Date of pension after July 1, 1981 through January 1, 1988, there shall be a 4% increase in the retiree's (or surviving beneficiary's) monthly benefit, exclusive of any temporary supplemental pension benefit to which the retiree may be entitled. For a surviving beneficiary of a retiree, entitlement to the increase is based upon the retiree's Effective Date of benefit. For a surviving spouse receiving a Pre-Retirement Spouse's benefit, entitlement to the increase is based upon the Effective Date of the Pre-Retirement Spouse's benefit. The monthly increase shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan.

(4)    Effective January 1, 1998, for those who retired under the Retirement provisions of the Plan with an Effective Date of pension from February 1, 1988 through January 1, 1991, there shall be a 2% increase in the retiree's (or surviving beneficiary's) monthly benefit, exclusive of any temporary supplemental pension benefit to which the retiree may be entitled. For a surviving beneficiary of a retiree, entitlement to the increase is based upon the retiree's Effective Date of benefit. For a surviving spouse receiving a Pre-Retirement Spouse's benefit, entitlement to the increase is based upon the Effective Date of the Pre-Retirement Spouse's benefit. The monthly increase shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan.

(5)    Effective January 1, 1998, for those who retired under the Retirement provisions of the Plan with an Effective Date of pension from February 1, 1991 through January 1, 1998, there shall be a 1% increase in the retiree's (or surviving beneficiary's) monthly benefit, exclusive of any temporary supplemental pension benefit to which the retiree may be entitled. For a surviving beneficiary of a retiree, entitlement to the increase is based upon the retiree's Effective Date of benefit. For a surviving spouse receiving a Pre-Retirement Spouse's benefit, entitlement to the increase is based upon the Effective Date of the Pre-Retirement Spouse's benefit. The monthly increase shall not apply to those who receive a Vested Pension under Section 4.04 of the Plan. {Adopted 12/10/97, effective 1/1/98}

An Employee may have more than one Applicable Benefit Rate, as provided in Section 4.06.

## Section 1.25    Normal Retirement Age

"NORMAL RETIREMENT AGE" means the later of:

(a)    age 65; or

(b)    the age of the Employee on the 10th anniversary of his Participation (5th anniversary if he has an Hour of Work on or after July 1, 1989, but not earlier than the date of such Hour was earned).

## Section 1.26    Total Disability

"TOTAL DISABILITY" means a physical or mental condition, for which medical evidence satisfactory to the Trustees has been furnished, which prevents an Employee from engaging in any regular employment in the trade or in any other gainful employment, except such employment as is found to be for purposes of rehabilitation under the supervision of a rehabilitation center, and not incompatible with the finding that the

9



Employee is unable to engage in any gainful employment; provided that no Employee shall be deemed to be absent due to Total Disability if his incapacity consists of chronic alcoholism or addiction to narcotics, or if such incapacity was the result of being engaged in a felonious or criminal enterprise, or was the result of an intentionally self-inflicted injury.

### Section 1.27    Total and Permanent Disability

"TOTAL AND PERMANENT DISABILITY" means total disability which is presumably permanent. The Trustees shall accept as sole proof of Total and Permanent Disability a determination by the Social Security Administration that the Employee is entitled to a Social Security Disability benefit under Title II of the Social Security Act (Federal Old Age, Survivors and Disability Insurance Benefits) or under Title XVI of the Social Security Act (Supplemental Security Income for Aged, Blind and Disabled). The Trustees shall at any time or from time to time require evidence of continued entitlement to Social Security Disability Benefits.

### Section 1.28    Health Benefit Plan

"HEALTH BENEFIT PLAN" means the National Elevator Industry Health Benefit Plan established by the 1951-1956 Standard Agreement and successor Standard Agreements.

### Section 1.29    Spouse

"SPOUSE" means that person to whom an Employee is considered married under applicable law, or, if and to the extent required by the terms of a Qualified Domestic Relations Order (within the meaning of Section 206(d) of ERISA and 414(p) of the IRS Code), an Employee's former spouse.

### Section 1.30    Other Terms

Other terms are defined as follows:

| | |
|---|---|
| Vested Status | Section 3.08 |
| 50% Husband and Wife Benefit | Sections 5.01 and 5.02 |
| Straight Life Benefit | Section 5.03(a) |
| Designated Beneficiary | Section 6.05 |
| Effective Date of Pension | Section 7.05(b) |



## ARTICLE II

## PARTICIPATION

### Section 2.01    Participation

(a)    A Probationary Helper shall become an Active Employee and shall participate in the Plan on the first day of the month next following the completion of 100 Hours of Work in each of six 30-day periods within an aggregate period of not more than nine months. However, in no event shall a Probationary Helper commence participation in the Plan later than the first day of the month next following the completion of at least 1,000 Hours of Service in any 12 consecutive calendar month period.

(b)    An Employee other than a Probationary Helper shall first become an Active Employee when he has completed an Hour of Work in Covered Employment.

10

NEIP0085

**Section 2.02    Termination of Active Employee Status**

A person shall cease to be an Active Employee as of the last day of the calendar month in which he incurs a Break-in-Service or when such a person becomes a Retired Employee or a Vested Employee.

**Section 2.03    Reinstatement of Active Employee Status**

A person who has lost his status as an Active Employee in accordance with Section 2.02 shall again become an Active Employee upon the completion of an Hour of Work in Covered Employment subsequent to the Employee's most recent Break-in-Service.

**Section 2.04    Employees Eligible for Continued Plan Participation After Employment Covered by the Standard Agreement Ceases {Adopted 2/7/95, effective 7/1/94}**

(a)    Pursuant to Section 1.09(d), an Employee described in this Section who ceases to earn Benefit Service under this Plan as a Collectively Bargained Employee as defined in Section 2.05(a) on or after June 30, 1994 and directly commences employment with an Employer on or after July 1, 1994 as a Non-Collectively Bargained Employee may participate in this Plan if the following requirements are satisfied:

   (1)    the Employee has completed at least five (5) years of Vesting Service; and

   (2)    a minimum of 8,500 Hours of Work has been reported on the Employee's behalf on Employer Monthly Report Forms; and

   (3)    the Employee is employed by an Employer in a classification other than in a category of work covered by the Standard Agreement; and

   (4)    the Employee is not participating in any other retirement, pension, annuity or deferred compensation plan which is qualified under Section 401(a) of the Internal Revenue Code, or in a simplified employee pension plan under Section 408(k) of the Internal Revenue Code, provided by the Employer for Employees who are not in a category of work covered by the Standard Agreement other than such a plan in which the Employer's Employees in a category of work covered by the Standard Agreement participate or are eligible to participate; and

   (5)    the Employee's Employer enters into a Participation Agreement with the Trustees pursuant to which the Employer agrees to continue to make contributions to the Plan with respect to such person in accordance with the rules established by the Trustees.

(b)    The Participation Agreement required by Section 2.04(a) must be entered into within 180 days of the time an Employee ceases to earn Benefit Service under the Plan as a Collectively Bargained Employee, as defined in Section 2.05(a) because of a change in the Employee's job classification or within 180 days of a determination by the Trustees that an Employee is not a Collectively Bargained Employee. The Participation Agreement need not cover all Employees of the Employer who are eligible to participate in the Plan under these rules. However, the Employer must determine who is to be covered on a reasonable basis that is consistent with the requirements of applicable law.

(c)    If an individual is employed by any Employer at any time prior to July 1, 1994 in a category of work not covered by the Standard Agreement, he will not be eligible to participate in the Pension Plan under Section 2.04 and 2.05 unless after June 30, 1994 he works as a Collectively Bargained Employee under the Standard Agreement for a period of at least twelve (12) calendar months and is credited with at least 1,700 Hours of Credited Service for Bargaining Unit work after June 30, 1994.

11

(d)  A stockholder described in Section 1.09(a)(1) who participates in the Plan as a Collectively Bargained Employee whose duties change so that he ceases to be a Collectively Bargained Employee may continue his participation in the Plan subject to the requirements of Sections 2.04, 2.05 and 2.06.

(e)  The requirements of this Section 2.04 will not apply to the participation of Employees of Local Unions and NEIEP.

**Section 2.05    Rules for Participation of Non-Collectively Bargained Employees - Definitions**
{Adopted 2/7/95, Effective 7/1/94}

The following definitions apply to the participation of non-collectively bargained employees in this Plan:

(a)  *Collectively Bargained Employee*

(1)  A Collectively Bargained Employee for any Plan Year is an Employee who is included in a unit of employees covered by the Standard Agreement, as defined in Section 1.08, between an Employer and the Union provided there is evidence that retirement benefits were the subject of good faith bargaining between the Employer and the Union or any of its affiliated Local Unions. An Employee who is not covered by a Collective Bargaining Agreement or who cannot otherwise be considered a Collectively Bargained Employee under this Section and Section 2.04 may not participate in this Plan except as provided in Section 1.09(b) and (c).

(2)  A Non-Collectively Bargained Employee will be treated as a Collectively Bargained Employee as follows:

(i)  If the Employee performs services for an Employer during a Plan Year both as a Collectively Bargained Employee and as a Non-Collectively Bargained Employee, he will be considered a Collectively Bargained Employee for that Plan Year provided at least half of the Employee's Hours of Work during the Plan Year are performed as a Collectively Bargained Employee.

(ii)  An Employee who was a Collectively Bargained Employee for a Plan Year may be treated as a Collectively Bargained Employee for the duration of the Collective Bargaining Agreement applicable for that Plan Year, or if later, until the end of the following Plan Year.

(iii)  If the Employee is performing services for an Employer, for this Plan, or for the Union (or an affiliated Local Union), he will be considered a Collectively Bargained Employee for a Plan Year provided no more than five percent (5%) of the Employees covered under this Plan for the Plan Year are Non-Collectively Bargained Employees determined without regard to this Subsection 2.05(a)(2)(iii). For purposes of this five percent (5%) limitation, employees described in Subsections 2.05(a)(2)(i) and (ii) are treated as Collectively Bargained Employees.

(3)  A Non-Collectively Bargained Employee will not be considered a Collectively Bargained Employee under Section 2.05(a)(2) unless:

(i)  the Employee is or was a member of a unit of employees covered by a Collective Bargaining Agreement and that agreement or a successor agreement, taking into account the provisions of the Plan, the Trust Agreement and any Participation Agreement with the Employer, provides for the employee to benefit under the Plan in the current Plan Year; and

(ii)  the Employee meets the requirements of Sections 1.09 and 2.04, if applicable; and

(iii)  he is not working for an unincorporated Employer of which he is an owner.

12

NEIP0087

(4) Those treated as Collectively Bargained Employees under Subsection 2.05(a)(2)(ii) and (iii) receive benefit accruals in a manner that is generally no more favorable than similarly situated Employees who are currently in a unit of employees covered by the Collective Bargaining Agreement.

(b) *Non-Collectively Bargained Employee*

A Non-Collectively Bargained Employee for any Plan Year is any Employee of an Employer who is not a Collectively Bargained Employee for that Plan Year, provided, however, that certain Non-Collectively Bargained Employees may be treated as Collectively Bargained Employees in accordance with Subsections 2.05(a)(2), (3) and (4) above.

(c) *Employer*

For purposes of determining the group of highly compensated employees and for purposes of this Article but not for purposes of determining Covered Employment, the term "Employer" includes all corporations, trades or businesses under common control with the Employer within the meaning of Section 414(b) or (c) of the Code; all members of an affiliated service group with the Employer within the meaning of Section 414(m) of the Code and all other businesses aggregated with the Employer under Section 414(o) of the Code. The term "Employer" includes a participating union or fund whose officers or employees participate in the Plan.

(d) *Highly Compensated Employee*

A Highly Compensated Employee is a highly compensated active employee or a highly compensated former employee of an Employer. Whether an individual is a Highly Compensated Employee is determined separately with respect to each Employer, based solely on that individual's compensation from that Employer and relationship to that Employer. A Highly Compensated Employee may be determined based on the Employer's workforce on a single day during the Plan Year and under the simplified rules for determining Highly Compensated Employees in accordance with IRS Revenue Procedure 93-42.

A highly compensated active employee is an employee of the Employer who performs services for the Employer during the Plan Year and who during the Plan Year:

(1) was a 5-percent owner; or

(2) received compensation from the Employer in excess of the amount under Section 414(q)(1)(B) of the Code, as adjusted; or

(3) received compensation from the Employer in excess of the amount under Section 414(q)(1)(C) of the Code, as adjusted, and who was a member of the top-paid group for that Plan Year within the meaning of Section 414(q)(4) of the Code; or

(4) was an officer of the Employer and received compensation from the Employer in an amount greater than 50% of the dollar limitation in effect for that Plan Year under Section 415(b)(1)(A) of the Code.

A highly compensated former employee for a Plan Year is any former employee who, with respect to the Employer, had a separation year prior to the Plan Year and was a highly compensated active employee for either the employee's separation year or any Plan Year ending on or after the employee's 55th birthday.

An employee who performs no services for an Employer during the Plan Year is treated as a former employee for that Plan Year. Such employee's separation year is the year in which the employee last performed services for the Employer.

NEIP0088

(e)   *Compensation*

For purposes of determining the group of Highly Compensated Employees under this Section, "Compensation" is compensation within the meaning of Section 415(c)(3) of the Code including elective or salary reduction contributions to a cafeteria plan, cash or deferred arrangement or tax-sheltered annuity and shall also mean the gross wages paid to an Employee by the Employer as reported on Form W-2 .but shall not include reimbursement for expenses or other expense allowances, fringe benefits, moving expenses, deferred compensation and welfare benefits or any gross wages in excess of $150,000 per annum, adjusted pursuant to Section 401(a)(17) of the Code. In determining the $150,000 in compensation for Employees who are five percent (5%) owners and/or highly compensated Employees of the Employer, the highly compensated Employee, the spouse of the Employee and lineal descendants below the age of 19 will be treated as a single employee and the $150,000 limit will be allocated in proportion to the compensation of each family member. In the case of a self-employed individual, "compensation" means the participant's earned income (within the meaning of Section 401(c)(2) of the Code but determined without regard to any exclusion under section 911). Only compensation received by an Employee during the applicable Plan Year is taken into account.

**Section 2.06     Rules for Participation of Non-Collectively Bargained Employees** {Adopted 2/7/95, Effective 7/1/94}

(a)   Pursuant to Section 1.09(d), effective July 1, 1994, those Non-Collectively Bargained Employees described in Section 2.04 may participate in the Plan only on the terms and conditions set forth in Sections 2.05 and 2.06 and pursuant to the terms of a Collective Bargaining Agreement, the Trust Agreement and any Participation Agreement with the Employer of such Non-Collectively Bargained Employees.   Effective July 1, 1994, those Non-Collectively Bargained Employees described in Section 1.09(b) and (c) may participate in the Plan only on the terms and conditions set forth in Sections 1.06(d) and (e), 2.05 and 2.06 and pursuant to the terms of a Collective Bargaining Agreement, the Trust Agreement and any Participation Agreement with the Employer of such Non-Collectively Bargained Employees. Each such Non-Collectively Bargained Employee must provide services to the Employer as an employee and must receive compensation for those services.   Contributions will be required from the Employer at the time and in the manner and amount established by the Trustees.   Contributions will be required from those employees closely related by blood or marriage to such Non-Collectively Bargained Employees and employed by the same Employer, for a minimum of 160 hours each month. {Adopted 12/10/96; effective 1/1/97}

(b)   Non-Collectively Bargained Employees who are eligible to participate in the Plan are those Employees described in Sections 1.09 (b), (c) and (d) and 2.04.  No other Non-Collectively Bargained Employees shall be permitted to participate.  Provided, however that participation of such Non-Collectively Bargained Employees for each Plan Year is subject to and conditioned upon the Employer's compliance with the requirements of the Plan and the requirements of Sections 401(a)(4) and 410(b) of the Internal Revenue Code for that Plan Year.  A Non-Collectively Employee will not accrue a benefit under the Plan during a Plan Year unless the Employer of the Employee meets the requirements of Sections 401(a)(4) and 410(b) of the Internal Revenue Code for that Plan Year and the Employer provides the Plan with information deemed necessary by the Trustees to monitor compliance with the requirements of the Plan and the Internal Revenue Code.

Notwithstanding Section 4.06 of the Plan, if a Non-Collectively Bargained Employee previously had service as a Collectively Bargained Employee, working in Covered Employment, the Applicable Benefit Rate for the prior service shall not be increased as a result of the later service as a Non-Collectively Bargained Employee for whom contributions were received by the Fund.

(c)   The Employer must provide the Fund with any information or certifications requested to demonstrate compliance with the requirements of the Plan and Sections 401(a)(4) and 410(b) of the Internal Revenue Code.  The Trustees may rely on such information and certifications provided by

14

NEIP0089

the Employer. The Employer will be required to pay any additional sums required by the Trustees for additional benefits or participants necessary for compliance with Sections 401(a)(4) and 410(b) of the Internal Revenue Code and may be required to pay the costs of additional administrative expenses incurred in determining compliance. In determining and certifying compliance with the coverage and non-discrimination requirements of the Plan and the Internal Revenue Code, an Employer may use "substantiation quality data" as defined in IRS Revenue Procedure 93-42. In addition, an Employer may determine and certify compliance on the basis of the Employer's workforce on a single day during the Plan Year (snapshot day) in accordance with IRS Revenue Procedure 93-42.

If the Employer fails to provide any information or certification requested by the Trustees, fails to comply with the requirements of the Plan or the requirements of Sections 401(a)(4) and 410(b) of the Internal Revenue Code or fails to provide additional sums required by the Trustees, the participation of its Non-Collectively Bargained Employees will terminate as of the end of the Plan Year immediately preceding the Plan Year for which it failed to comply, for which information or certifications to determine compliance was requested but not provided or for which payment was required but not made.

(d)  In addition to the provision of subsection (b) the participation of an Employer's Non-Collectively Bargained Employees in the Plan will end upon termination of the Employer's Participation Agreement with the Trustees covering such Employees or upon termination of the Employer's Standard Agreement.

## Section 2.07     Effective Date of this Plan

This Plan shall apply to Employees who have completed an Hour of Work in Covered Employment on or after January 1, 1998. Employees who last worked in Covered Employment prior to January 1, 1998 shall be governed by the terms of the Plan in effect when the Employee last worked in Covered Employment.

## ARTICLE III

## BENEFIT SERVICE AND VESTING SERVICE

## Section 3.01     Benefit Service

An Employee's Benefit Service shall be equal to the sum of his Past Benefit Service and his Future Benefit Service as determined in Sections 3.02 and 3.03. An Employee shall not be credited with Benefit Service for periods prior to a permanent Break-in-Service as provided in Section 3.10 except for those Employees who qualify under the terms of the Buy Back Resolutions attached as Appendix D.

## Section 3.02     Future Benefit Service

(a)  An Employee will receive Future Benefit Service for each Hour of Work after July 1, 1962 and prior to the last day of the month in which the Employee attains age 70 for which contributions were made to the Plan on his behalf.   An Employee who completes an Hour of Work on or after July 9, 1987 shall receive Future Benefit Service for each Hour of Work after July 1, 1962 for which contributions were made to the Plan on his behalf.  An Employee's Years and Months of Future Benefit Service shall be determined by dividing such Hours of Work by a factor of 1,700.

(b)  An Employee who retires or terminates Covered Employment on or after January 1, 1978 shall receive Future Benefit Service for the period subsequent to June 30, 1962 that such Employee is absent due to service in the Armed Forces of the United States as provided by law, provided that the Employee satisfies all requirements under the Vietnam Era Veterans Reemployment Assistance Act and other applicable law.

15

NEIP0090

**Section 3.03    Past Benefit Service**

An Employee will receive Past Benefit Service for periods of employment prior to July 1, 1962 as described in this Section. An Employee shall not receive Past Benefit Service for periods prior to a Break-in-Service as provided in Section 3.10.

(a)    For the period July 1, 1932 to June 30, 1953, an Employee shall receive three (3) Months of Benefit Service for each calendar quarter during which it is established that:

    (1)    the Employee was employed in a job classification covered by a collective bargaining agreement then in effect between the Union or Local No. 1 of the Union and a business which subsequently became an Employer, as defined in Section 1.06, or

    (2)    if such employment was prior to the time the first collective bargaining was signed by the Employer and the Union or Local No. 1 of the Union, the Employee's job classification was included in the first collective bargaining agreement. The Trustees shall have the sole discretion to determine whether an Employee's employment comes within a classification included in the first collective bargaining agreement.

        (i)    If an Employee worked for a business which went out of business, Past Benefit Service for periods of employment with the Employer which went out of business may be granted if the Trustees, in their sole discretion, are satisfied on the basis of evidence submitted to them, that such employment was covered by a collective bargaining agreement with the Union or Local No. 1 of the Union.

        (ii)    It is recognized that it may be difficult to establish with certainty for the period of July 1, 1932 to June 30, 1953 the Past Benefit Service of an Employee in the type of employment referred to above. In making the necessary determinations as to Past Benefit Service, the Trustees may, in their absolute discretion, consider and rely upon any relevant and material evidence including, without limitation, any or all of the following:

            (A)    Records and/or statements of Employers;

            (B)    Records of the Social Security Administration;

            (C)    Records of the Union and Local 1 of the Union, including records of periods of Union membership in good standing.

(b)    For the period July 1, 1953 to June 30, 1962, an Employee shall receive:  (1) one (1) month of Benefit Service for each calendar month in which an Employee was employed as a Probationary Helper; (2) one (1) month of Benefit Service for each calendar month in which the Employee's name appeared on one or more Employers' Monthly Report Form to the Health Benefit Plan, provided Hours of Work were reported and paid on by his Employer for such month; (3) one (1) month of Benefit Service for each calendar month in which the Employee was employed by an Employer running temporary cars. An Employee's employment in the absence of an Employer's Monthly Report Form or employment in the industry as a Probationary Helper or Temporary Car Operator and wages earned may be established by records of the Social Security Administration and other evidence, including but not limited to payroll records, Local Union or Employer records and W-2 Forms. Benefit Service may be given based upon the following table:

NEIP0091

| No. of Months Credit | Confirmed Earnings From All Sources | | |
|---|---|---|---|
| | 1953 to 1954 | 1955 to 1958 | 1959 to 1962 |
| 1 | $    1 to 599 | $    1 to 699 | $    1 to 799 |
| 2 | 600 to 899 | 700 to 1,049 | 800 to 1,199 |
| 3 | 900 to 1,199 | 1,050 to 1,399 | 1,200 to 1,599 |
| 4 | 1,200 to 1,499 | 1,400 to 1,749 | 1,600 to 1,999 |
| 5 | 1,500 to 1,799 | 1,750 to 2,099 | 2,000 to 2,399 |
| 6 | 1,800 to 2,099 | 2,100 to 2,449 | 2,400 to 2,799 |
| 7 | 2,100 to 2,399 | 2,450 to 2,799 | 2,800 to 3,199 |
| 8 | 2,400 to 2,699 | 2,800 to 3,149 | 3,200 to 3,599 |
| 9 | 2,700 to 2,999 | 3,150 to 3,499 | 3,600 to 3,999 |
| 10 | 3,000 to 3,299 | 3,500 to 3,849 | 4,000 to 4,399 |
| 11 | 3,300 to 3,599 | 3,850 to 4,199 | 4,400 to 4,799 |
| 12 | 3,600 and above | 4,200 and above | 4,800 and above |

(c)   An Employee who retires or terminates Covered Employment on or after January 1, 1978, shall receive Past Benefit Service for the period during which such Employee was absent from Covered Employment due to service in the Armed Forces of the United States prior to January 1, 1962 as provided by law; provided that the Employee returned to Covered Employment within the period during which he had reemployment rights under any applicable law.

## Section 3.04     Vesting Service

(a)   For service prior to July 1, 1962, the Employee shall be credited with one (1) Year of Vesting Service for each Plan Year in which the Employee received at least 5 months of Past Benefit Service.

(b)   On and after July 1, 1962, an Employee shall be credited with one (1) Year of Vesting Service for each Plan Year during which the Employee completed at least 700 Hours of Work in Covered Employment. An Employee shall be credited with Vesting Service for partial Plan Years at the beginning and end of a period of Covered Employment and shall receive one (1) Month of Vesting Service for each month in a partial Plan Year in which he completed at least 58 Hours of Work.

(c)   On and after July 1, 1962, an Employee will be credited with Years and Months of Vesting Service during periods when he was absent due to Total Disability as defined in Section 1.26, provided the Employee had completed at least 700 Hours of Work during the 12-month period preceding the commencement of his Total Disability.

(d)   On or after July 1, 1976, if an Employee is transferred from Covered Employment to other employment with the same Employer, he shall be credited with Vesting Service for his service with such Employer after the date of transfer. In the case of an Employee whose Covered Employment commenced on or after July 1, 1976, and who immediately prior to the commencement of his Covered Employment was in the employ of the same Employer, he shall be credited with Vesting Service for his service with such Employer other than as an Employee as herein defined. In either case, each hour of service in such employment shall be deemed to have been an Hour of Work.

(e)   On or after July 1, 1976, if an Employee completed less than 700 Hours of Work as an Employee in the Plan Year at the beginning of his period of Covered Employment but the Hours of Work in that Plan Year as a Probationary Helper when added to the Hours of Work as an Employee in the Plan Year total 700 or more, he shall receive one (1) Year of Vesting Service.

17

NEIP0092

**Section 3.05    Breaks-in-Service**

If an Employee has a Break-in-Service before he has attained Vested Status as defined in Section 3.08, it has the effect of canceling his status as an Active Employee and his previously credited Benefit Service and Vesting Service. Some Breaks-in-Service are temporary and are subject to repair as described in Section 3.10(b). Other Breaks-in-Service are permanent as described in Section 3.10(a). The effect of a Break-in-Service on an Employee depends upon when the Break-in-Service occurred, whether the Employee subsequently returned to Covered Employment, and whether the Employee has withdrawn his Accumulated Employee Contributions.

**Section 3.06    Break in Future Service**

An Employee shall incur a Break in Future Service if he withdraws his Accumulated Employee Contributions or fails to complete at least 200 Hours of Work in Covered Employment in any period of

24 consecutive months prior to July 1, 1973, or
36 consecutive months after to June 30, 1973,

except that an Employee shall not suffer a Break-in-Service where:

(a)    his absence from Covered Employment is due to Total Disability as defined in Section 1.26 which commenced prior to the time he would have suffered a Break-in-Service. Such an Employee will not suffer a Break-in-Service during the period of his Total Disability. Whether an Employee is absent due to Total Disability is to be determined to the sole satisfaction of the Trustees, and the Employee must submit such evidence or submit to an examination, as the Trustees in their discretion shall determine.

(b)    his absence from Covered Employment is due to military service in the Armed Forces of the United States, provided the Employee satisfies all requirements under the Vietnam Era Veterans Reemployment Assistance Act and all other applicable law.

(c)    his absence from Covered Employment is due to service with the National Elevator Industry Educational Plan.

(d)    his absence from Covered Employment is due to service as an elected or appointed officer or employee of the International Union of Elevator Constructors.

(e)    his absence from Covered Employment is due to his employment commencing subsequent to June 30, 1968 as a regular employee of an Employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer.

(f)    his absence from Covered Employment is due to his employment commencing subsequent to July 1, 1962, but prior to July 1, 1968, as a regular employee of an Employer in a category of work not covered by a collective bargaining agreement between the Union or one of its Local Unions and an Employer; provided, however, if he continued in such employment for more than 60 consecutive months, he will lose all Past Benefit Service which he may have accrued prior to July 1, 1962, but he will retain all Future Service for which contributions were made on his behalf.

(g)    Solely for the purpose of determining whether a Break-in-Service has occurred, the absence of an Employee from Covered Employment by reason of (a) her pregnancy, (b) birth of a child of the Employee, (c) placement of a child with the Employee in connection with his or her adoption of the child, or (d) care for such child for a period beginning immediately after such birth or placement shall be credited as Hours of Work to the extent that Hours of Work would have been credited but for such absence (or, where that cannot be determined, eight Hours of Work per day of absence) to a maximum of 501 hours for each such pregnancy, childbirth, or placement. The

18



NEIP0093

hours so credited shall be applied to the Plan Year in which such absence begins, if doing so will prevent the Employee from incurring a Break-in-Service in that Plan Year, otherwise they shall be applied to the next Plan Year. The Trustees may require, as a condition for granting such credit, that the Employee establish in a timely fashion and to the satisfaction of the Trustees that the Employee is entitled to such credit. This subparagraph shall apply only to absences that begin after June 30, 1986.

**Section 3.07    Break in Past Service**

(a)    An Employee shall incur a Break in Past Service:

    (1)    During the period from July 1, 1932 to June 30, 1953, if, during each calendar year, an Employee did not receive at least two (2) months of Past Service; or

    (2)    During the period from July 1, 1953 to January 1, 1954, if Hours of Work were not reported on the Employee's behalf on at least one (1) Employer Monthly Report Form to the Health Benefit Plan or if he was not employed for at least 100 Hours of Work in the Elevator Industry running temporary cars; or

    (3)    During the period from January 1, 1954 to January 1, 1962, if, during each calendar year, Hours of Work were not reported on an Employee's behalf on at least two (2) Employer Monthly Report Forms to the Health Benefit Plan or he was not employed for at least 200 Hours of Work in the Elevator Industry running temporary cars; or

    (4)    During the period from January 1, 1962 to July 1, 1962, if Hours of Work were not reported on the Employee's behalf on at least one (1) Employer Monthly Report Form to the Health Benefit Plan or if he was not employed for at least 100 Hours of Work in the Elevator Industry running temporary cars.

(b)    An Employee shall not incur a Break-in-Service in any period (a) above in which his absence from employment was on account of any of the following:

    (1)    military service in the Armed Forces of the United States, provided the Employee satisfies all requirements under all applicable law;

    (2)    a period of Total Disability subsequent to January 1, 1957, as defined in Section 1.26;

    (3)    service as an elected or appointed officer or employee of the International Union of Elevator Constructors or a Local Union.

**Section 3.08    Vested Status**

(a)    An Employee who completes an Hour of Work on or after July 1, 1989 shall become vested (attain a non-forfeitable right to a benefit) if he has completed five (5) Years of Vesting Service subsequent to his most recent Break-in-Service, if any; and

(b)    Effective July 1, 1975, an Employee shall become vested if he has completed ten (10) Years of Vesting Service since his most recent Break-in-Service, if any; and

(c)    Effective July 1, 1973, an Employee shall become vested if he has completed at least five (5) Years of Vesting Service since his most recent Break-in-Service, if any, and the sum of the following totals 50 or more:

    (1)    The Employee's age (in years and months), plus

    (2)    The Employee's year and months of Vesting Service since his most recent Break-in-Service, if any; and

NEIP0094

(d)    An Employee shall become vested when he has completed the age, service and other requirements for retirement in Sections 4.02(a) or 4.03(a).

### Section 3.09    Vested Employee: Effect of a Break-in-Service

(a)    If a Vested Employee incurs a Break-in-Service prior to July 1, 1976, he will not lose his Vesting Service and Benefit Service provided he leaves his Accumulated Employee Contributions on deposit in the Pension Fund. A Vested Employee who incurs a Break-in-Service and withdrawals his Accumulated Employee Contributions prior to July 1, 1976 will lose his Vesting Service, his Benefit Service, and his status as a Vested Employee. If such Employee returns to Covered Employment after withdrawing his Accumulated Employee Contributions, he will be treated as a new Employee for all Plan purposes, and his Vesting Service and Benefit Service will be computed from the date of his return to Covered Employment.

(b)    If a Vested Employee incurs a Break-in-Service on or after July 1, 1976, he may not withdraw his Accumulated Employee Contributions and will not lose his Vesting Service or Benefit Service. The Vested Employee shall become an Active Employee immediately upon return to Covered Employment. Such Vesting Service and Benefit Service shall be used in determining the benefits to which he is entitled.

### Section 3.10    Non-Vested Employee: Effect of a Break-in-Service

(a)    *Effect of a Break in Past or Future Service Prior to July 1, 1973*

If an Employee incurs a Break-in-Service prior to July 1, 1973, and before he has become Vested in accordance with Section 3.08, he shall lost all Vesting Service and Benefit Service prior to the Break-in-Service. He shall be entitled to the returned of his Accumulated Employee Contributions made to the Plan prior to such Break-in-Service, in accordance with Section 6.06. If such Employee returns to Covered Employment, he will be treated for all Plan purposes as a new Employee and his Vesting Service and Benefit Service will be computed only from the date of his return to Covered Employment.

(b)    *Effect of a Break-in-Service on or after July 1, 1973*

If an Employee incurs a Break-in-Service on or after July 1, 1973, and before he has become Vested in accordance with Section 3.08, he shall lose all Vesting Service and Benefit Service prior to the Break-in-Service. He shall be entitled to the return of his Accumulated Employee Contributions made to the Plan prior to such Break-in-Service in accordance with Section 6.06. If such an Employee who incurs a Break-in-Service on or after July 1, 1973 thereafter returns to Covered Employment, he will be treated for all Plan purposes as a new Employee and his Vesting Service and Benefit Service will be computed only from the date of his return to Covered Employment. However, once he has completed one (1) Year of Vesting Service following his return to Covered Employment, the Vesting Service and Benefit Service he lost because of his Break-in-Service shall be restored if (1) he did not apply for and receive a return of his Accumulated Employee Contributions in accordance with Section 6.06, or (2) he repays the amount of his withdrawn Accumulated Employee Contributions together with interest which would have been credited thereon to the date of repayment.

If an Employee who, on or after July 1, 1973, withdraws his Accumulated Employee Contributions and returns to Covered Employment without having incurred a Break-in-Service, his previous Vesting Service shall be restored to him. The Benefit Service as of the date of withdrawal of Accumulated Employee Contributions shall also be restored if he repays the amount of his withdrawn Accumulated Employee Contributions together with interest which would have been credited thereon to the date of repayment.

NEIP0095

### Section 3.11     Leave Under the Family and Medical Leave Act {Adopted 2/8/94}

An Employee who takes a leave of absence under the terms of the Family and Medical Leave Act shall receive credit for such leave to the extent provided under the Act.

## ARTICLE IV

## PENSION ELIGIBILITY AND AMOUNTS

### Section 4.01     General

This Article sets forth the eligibility conditions and benefit amounts for the pensions provided by this Plan. The accumulation and retention of Vesting Service and Benefit Service are subject to the provisions of Article III. The benefit amounts described in this Article are subject to reduction because of the Husband and Wife Pensions described in Article V. The entitlement of an eligible Employee to receive pension benefits is subject to his retirement and application for benefits as provided in Article VII.

### Section 4.02     Normal Retirement Pension

(a)  *Eligibility*

An Employee may retire on a Normal Retirement Pension if he terminates his employment in Covered Employment on or after he has attained age 65.

(b)  *Amount*

The monthly amount of the Normal Retirement Pension shall be as follows:

(1)  The Employee's full and partial Years of Past Benefit Service as determined under Section 3.03 multiplied by the Employee's Applicable Benefit Rate (or Rates), plus

(2)  The Employee's full and partial Years of Future Benefit Service as determined under Section 3.02 multiplied by the Employee's Applicable Benefit Rate (or Rates).

### Section 4.03     Early Retirement Pension

(a)  *Eligibility*

An Employee shall be entitled to retire on an Early Retirement Pension if he meets the following requirements:

(1)  He terminates his employment in Covered Employment after he has attained age fifty-five (55) or terminates Covered Employment prior to age fifty-five (55) and goes to work without any gap in employment in a non-covered position with an Employer or for the International Union of Elevator Constructors and terminates that employment after age fifty-five (55); and

(2)  He has completed at least ten (10) Years of Vesting Service; and

(3)  A minimum of 12,000 Hours of Work has been reported on the Employee's behalf on Employer Monthly Report Forms within any period of ten (10) consecutive Plan Years.

With respect to applications filed on and after July 1, 1978, an Employee who is absent because of Total Disability within the meaning of Section 1.26, at the time he attains age fifty-five (55) shall be considered to be in Covered Employment if he had completed at least 700 Hours of Work during the 12 months preceding the commencement of his Total Disability.

21

NEIP0096

With respect to applications filed on and after July 1, 1988, an Employee who is laid off from Covered Employment after he has attained the age of fifty-three years and six months (53 years and 6 months), who does not leave the Elevator Industry of participating Employers, who remains available for work in Covered Employment and who actively seeks such work in Covered Employment until he has attained age fifty-five (55) shall be considered solely for the purposes of this Section to be in Covered Employment at the time he attains age fifty-five (55) if he had completed at least 700 Hours of Work during the 12 months preceding his lay off. {Adopted 5/2/89, effective 7/1/88; amended 1/1/95}

In addition, if an Employee is between age fifty (50) and fifty-five (55) in 1995 and is or was laid off from Covered Employment after he reaches the age of fifty (50), does not leave the Elevator Industry of participating Employers, remains available for work in Covered Employment and actively seeks such work in Covered Employment until he has attained age fifty-five (55), he shall be considered solely for purposes of this Section to be in Covered Employment at the time he attains age fifty-five (55) if he had completed at least 700 Hours of Work during the 12 months preceding his lay off. {Adopted 9/20/95; effective 1/1/95}

With respect to applications filed on and after January 1, 1994, an Employee who is unable to engage in any regular employment in the trade due to a Disability, as defined herein, at the time he attains age fifty-five (55) shall be considered to be in Covered Employment at that time if he meets the following requirements:

(1) He became Disabled, as defined herein, after attaining age forty (40);

(2) He remained continuously Disabled, as defined herein, due to the same cause until he attained age fifty-five (55);

(3) He had completed at least 700 Hours of Work in Covered Employment during the 12 months preceding the commencement of his Disability, as defined herein, and continued to be available for work in Covered Employment, as determined by the Trustees, until he became Disabled.

An Employee shall be deemed Disabled for purposes of this subsection only if the Trustees, in their sole and absolute discretion, shall determine on the basis of medical evidence that such Employee is unable, as a result of bodily injury or disease, to engage in or perform the normal and customary duties of his occupation or any similar or related occupation in the trade for remuneration or profit. An Employee applying for an Early Retirement Pension based on a Disability may be required under this subsection to submit to an examination by a physician or physicians selected by the Trustees and may be required to submit to reexamination periodically as the Trustees may direct and provide evidence of continued disability based on the Disability when applying for an Early Retirement Pension. {Adopted 2/8/94; effective 1/1/95}

(b) *Amount*

(1) *Immediate Early Retirement Pension*

The monthly amount of the Immediate Early Retirement Pension shall be the amount of the Normal Retirement Pension based on the Employee's Benefit Service to his Early Retirement Date if the Effective Date of the Early Retirement Pension is on or after the Employee's 58th birthday, and reduced by one-fourth (¼) of one (1) percent for each full calendar month between the Effective Date of the Early Retirement Pension and the first day of the month following the Employee's 58th birthday if the Effective Date of the Early Retirement Pension is before the Employee's 58th birthday. (See Table 1, Appendix A) {Adopted 11/6/85; effective 1/1/86; revised effective 7/1/97}

(2) *Deferred Early Retirement Pension*

The monthly amount of the Deferred Early Retirement Pension shall be the amount of the Normal Retirement Pension based on the Employee's Benefit Service to his Early Retirement Date, if the Effective Date of the Early Retirement Pension is on or after the first day of the month following the Employee's 65th birthday. {Adopted 9/17/97; effective 7/1/97}

22

NEIP0097

(c)    *Conversion to Disability Retirement Pension*

An Employee in receipt of an Immediate Early Retirement Pension (1) who files an application for a Social Security Disability Benefit on or prior to his Early Retirement Effective Date that is approved by the Social Security Administration or receives a determination from the Social Security Administration that he was disabled prior to his date of Early Retirement; (2) whose Social Security Entitlement Date is within twenty-four (24) months of his date of Early Retirement; and (3) who qualifies for a Disability Retirement Pension under Section 4.05, may elect to discontinue his Early Retirement Pension and to receive a Disability Retirement Pension in lieu thereof with payment commencing the first of the month following the month in which such election is received by the Trustees.

In the event of conversion, when the Date of Entitlement to Social Security benefits is prior to the date Disability Retirement benefits commence, the benefit payment for the first month payment is made as a Disability Retirement Pension shall be equal to the monthly benefit amount stated in Section 4.05(b)(1), plus an additional amount equal to the monthly benefit amount times the number of months between the date Disability Retirement benefits commence and the Date of Entitlement less any amounts already received as Early Retirement Benefits. {amended/effective 12/4/95}

## Section 4.04    Vested Pension

(a)    *Eligibility*

An Employee shall be entitled to a Normal Vested Pension commencing on or after the attainment of Normal Retirement Age or shall be entitled to an Early Vested Pension commencing on or after age 55 if he has attained Vested Status as defined in Section 3.08 of the Plan.

(b)    *Amount*

(1)    *Normal Vested Pension*

The monthly amount of the Normal Vested Pension shall be the amount of the Normal Retirement Pension based on the Employee's Benefit Service, commencing on the first day of the month following the Employee's 65th birthday, subject to Section 7.05.

(2)    *Early Vested Pension*

The monthly amount of the Early Vested Pension shall be the amount of the Normal Retirement Pension based on the Employee's Benefit Service reduced by one-half (½) of one (1) percent for each full calendar month between the date the Early Vested Pension commences and the first day of the month following the Employee's 65th birthday. (See Table 2, Appendix A)

Both Vested Pensions shall be determined on the basis of the Plan as in effect when the Employee leaves Covered Employment.

## Section 4.05    Disability Retirement Pension

(a)    *Eligibility*

An Employee may retire on a Disability Retirement Pension if he has a Total and Permanent Disability as defined in Section 1.27 prior to age 65 if he meets the following requirements:

(1)    He has completed at least five (5) Years of Vesting Service; and

(2)    A minimum of 8,500 Hours of Work has been reported on the Employee's behalf on Employer Monthly Report Forms; and

23

NEIP0098

    (3)    The Employee completed at least 200 Hours of Work in Covered Employment in the thirty-six (36) month period immediately before the Employee's Social Security Disability Date. {Amended 12/4/95, effective for pensions effective 1/1/95 or later}

An Employee who retires and returns to Covered Employment may not qualify for a Disability Pension based on his Hours and Vesting Services earned after the Employee's initial retirement. {Adopted 9/22/93, effective 1/1/94}

    (b)   *Amount*

    (1)    The monthly amount of the Disability Retirement Pension shall be the amount of the Normal Retirement Pension based on the Employee's Benefit Service to the date he ceased employment in Covered Employment. However, if the monthly amount of the Disability Retirement Pension based upon the Employee's Benefit Service is less than $175.00, a minimum monthly Disability Retirement Pension of $175.00 shall be payable prior to any adjustment for the 50% Husband and Wife Benefit.

    (2)    When the Date of Entitlement to Social Security Benefits is prior to the Effective Date of the Disability Pension, the benefit payment for the first month of the pension shall be equal to the monthly benefit amount stated above in Section 4.05(b)(1) plus an additional amount equal to the monthly benefit amount times the number of months between the Effective Date and the Date of Entitlement.

    (c)   *Disability Pension Payments*

The Effective Date of the Disability Retirement Pension shall be the first of the month following the receipt of the Employee's application, and except as provided in this subsection shall be payable as of the first day of each month thereafter so long as the Disability Pensioner's Total and Permanent Disability continues, except that upon attainment of age 65 the benefits of a Disability Pensioner shall continue regardless of whether his Total and Permanent Disability continues.

    (1)    No benefit shall be payable in respect of a period in which such Employee is in receipt of temporary disability benefits under the Health Benefit Plan.

    (2)    No benefit shall be paid before the Employee files with the Trustees a written application for his pension including the Social Security Disability Award.

    (3)    If an Employee dies after he has filed an application for a Disability Pension but prior to his Social Security Entitlement Date, his Qualified Spouse, as defined in Article V, if any, shall receive a monthly benefit for her lifetime in the amount she would have received had the Employee died after his Social Security Entitlement Date, payable as of the first day of the calendar month in which occurs the Employee's Social Security Entitlement Date. {Amended 12/10/96, effective 9/1/96}

    (d)   *Effect of Recovery of a Disability Pensioner*

Disability Retirement Pensions shall be terminated as follows:

    (1)    If a Retired Employee on a Disability Retirement Pension loses entitlement to a Social Security Disability benefit, or recovers from a disability prior to age 65, such recovery or loss of benefits shall be reported in writing to the Trustees within 30 days of the date he receives notice from the Social Security Administration or the date of such recovery. If such written notice is not given, the Employee will not be eligible for benefits for a period equal to the number of months which elapsed between his receipt of notice of the termination of his Social Security Disability benefit, or recovery from the disability, and the termination of Disability Pension payments from the Plan. The Trustees shall provide for notice to be given regularly to Retired Employees on Disability Retirement Pensions regarding the reporting provisions of this paragraph.

24

NEIP0099

(2)   If the Retired Employee engages in any regular gainful occupation or employment for remuneration or profit except such employment as is found to be for purposes of rehabilitation; or

(3)   If the Retired Employee fails to respond fully and in writing to any inquiry which the Trustees may make concerning the Retired Employee's continuing eligibility for Disability Retirement Benefits; or

(4)   If the Trustees determine on the basis of a medical examination that the Retired Employee has sufficiently recovered to return to any gainful employment; or

(5)   If the Retired Employee refuses to undergo a medical examination ordered by the Trustees.

(e)   *Reemployment of a Recovered Disability Pensioner*

A Retired Employee on a Disability Retirement Pension who recovers and returns to Covered Employment will resume the accrual of Benefit Service and Vesting Service. Upon his subsequent application for a Normal, Early or Vested Retirement Pension, his Pension will be determined based upon his subsequent application and will not be affected by his prior receipt of a Disability Retirement Pension, subject to the provisions of Section 4.05(d).

**Section 4.06      Multiple Benefit Rates:  Split Rates**

(a)   Under the circumstances described herein, the amount of any pension shall be based upon more than one Applicable Benefit Rate:

If an Employee leaves Covered Employment after being Vested or preserving his pension credits in accordance with Section 3.06(b), (c), (e) or (f) and thereafter returns to Covered Employment, or if an Employee suffers a Break-in-Service on or after July 1, 1973 and returns to Covered Employment and his service is restored in accordance with Section 3.10(b), the portion of his pension attributable to Covered Employment prior to his leaving Covered Employment or preserving his pension credits will be computed on the basis of either the Employee's Applicable Benefit Rate or the applicable rules, regulations and rates in effect on July 1, 1970, whichever is more favorable to the Employee. The portion of his pension attributable to Covered Employment after he returns to Covered Employment will be computed on the basis of his subsequent Applicable Benefit Rate; provided, however, if such an Employee completes five (5) Years of Vesting Service after his return to Covered Employment, the amount of his pension for the total period of his Benefit Service will be computed on the basis of his subsequent Applicable Benefit Rate.

(b)   For purposes of this Section 4.06, an Employee shall be considered to have left Covered Employment if he fails to work for 200 Hours in any 36-month period.

(c)   An Employee will not deemed to have left Covered Employment after being Vested under Section 4.06(a), solely for purposes of determining his Applicable Benefit Rate, if the reason for his leaving and not performing Covered Employment was the lack of available covered work, he does not leave the elevator industry of participating Employers, he is registered on the referral list of the IUEC Local Union in his home area, he regularly contacts that Local Union for work opportunities, he is available for work in Covered Employment, he does not refuse work when offered, and his total absence from Covered Employment (for all his absences covered by this Subparagraph (c) does not exceed six years if his Effective Date for pension is between July 1, 1997 and December 31, 1997 and five years if his Effective Date for pension is January 1, 1998 to June 30, 1998. However, the Employee and his Local Union must submit proof satisfactory to the Trustees of his compliance with the foregoing conditions in order for this Section 4.06(c) to apply to him. If an Employee satisfies the requirements of the Section 4.06(c), he will be entitled to have his pension calculated with the highest single Applicable Benefit Rate under Section 1.24 for which he is eligible. This Section 4.06(c) is effective only until June 30, 1998 and automatically expires on June 30, 1998. {Amended/effective 2/3/98}

25

**Section 4.07     Temporary Supplemental Pension Benefit**

For Early Retirements (under Section 4.03 of the Plan) that are in effect as of July 1, 1996, a temporary supplemental pension benefit will be payable beginning with the first early retirement pension check on or after July 1, 1996 and ending on the earliest of: (1) the first of the month following the retiree's 62nd birthday; or (2) on the date of death; or (3) when his Social Security benefit commence. Only Plan participants working in Covered Employment or a non-covered position with an Employer through their date of retirement will be eligible for the temporary supplemental pension benefit. In addition, however, a Participant who has worked as an elevator inspector within six months of the date of retirement will also be eligible for this temporary supplemental pension benefit. The monthly amount of the temporary supplemental pension benefit will be equal to $5.00 x years of Credited Service (based on Past and Future Service), but in no event greater than the Employee's Social Security benefits.

No adjustment factors (reductions) are to be made to the temporary supplemental pension benefit for early retirement or joint and survivor benefits. As noted above, the benefit will cease at age 62 and, if the retired participant dies before age 62, this temporary benefit will cease at the time of death. However, in no event will the benefit be paid after the Participant's Social Security benefits commence. No portion of said benefit will be continued for a spouse or beneficiary. This benefit will not apply to any pensioner in receipt of a Disability Pension, including one that has been converted from an Early Retirement Pension. The temporary supplemental pension benefit described above is not to be construed to be as part of the Participant's accrued benefit.

Only participants otherwise eligible for retirement benefits shall be eligible for benefits under this Section 4.07.

A retiree will only be entitled to receive one temporary supplemental pension benefit or the equivalent thereof each month, if at all and subject to the foregoing conditions. (Revisions adopted 5/8/96; effective 7/1/96)

**ARTICLE V**

**NORMAL AND OPTIONAL
FORMS OF BENEFIT**

**Section 5.01     50% Husband and Wife Pension at Retirement: General**

(a)    If the Effective Date of a pension payable to a married Employee is after December 31, 1984, the benefit is to be paid as a 50% Husband and Wife Pension unless:

(1)    the Employee and Spouse elect otherwise in accordance with Section 5.02(d); or

(2)    the Spouse is not a Qualified Spouse as defined below.

(b)    To be eligible to receive the survivor's pension in accordance with a 50%, 75%, or 100% Husband and Wife Pension, the Spouse must be a Qualified Spouse. A Spouse is a Qualified Spouse if the Employee and Spouse were married on the date of the Employee's death and had been married throughout the year ending with the Employee's Effective Date. A Spouse is also a Qualified Spouse if the Employee and Spouse became married within the year immediately preceding the Employee's Effective Date and they were married for at least a year before his death. A former spouse is a Qualified Spouse if the couple was divorced after being married for at least twelve months and the former spouse is required to be treated as a Spouse by the terms of a Qualified Domestic Relations Order.

26

(c)    Special provisions for Employees with no Hours of Work after August 22, 1984 are set forth below in Section 5.05.

**Section 5.02    50% Husband and Wife Pension at Retirement: Normal Form of Benefit for Married Employees**

(a)    The pension of an Employee who is married to a Qualified Spouse on the Effective Date of his Pension shall automatically be paid in the form of a 50% Husband and Wife Pension, unless the Employee has filed in writing a timely rejection of that form of benefit. This includes a Disability Pension that is payable.

(b)    A 50% Husband and Wife Pension means that the Employee will receive a reduced monthly amount for his life and, if the Employee dies before his Qualified Spouse, the latter will receive a monthly benefit for her lifetime of 50% of the Employee's reduced monthly benefit. The Employee's monthly amount shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement) as set forth in Tables 3 and 4 of Appendix A.

(c)    The Trustees will furnish each Employee and Spouse who are eligible for the 50% Husband and Wife Pension a written explanation of the 50% Husband and Wife Pension including a comparison with the Straight Life Benefit and the 75% and 100% Husband and Wife Pensions.

(d)    The 50% Husband and Wife Pension may be waived in favor of an optional form of benefit only as follows:

    (1)    The Employee must file the written waiver in such form as the Trustees may prescribe. The Employee's Spouse must acknowledge the effect of the waiver and must consent to it in writing. The Spouse must also consent to a specified optional benefit form. The Spouse's consent must be witnessed by a Notary Public. The Employee may not subsequently change the optional benefit form without the consent of the Spouse, or

    (2)    The Employee must establish to the satisfaction of the Trustees that a rejection is not required because:

        (i)    the Employee is not married;

        (ii)    The Spouse whose consent would be required cannot be located; or

        (iii)    consent of the Spouse cannot be obtained because of extenuating circumstances, as provided in IRS regulations.

    (3)    To be timely, a waiver of the 50% Husband and Wife Pension and any required consent must be filed within the 90-day period ending on the Effective Date of the Employee's benefit as provided in Section 7.01. To be valid, such a waiver must be made after the Employee and Spouse have been provided with information which includes a general explanation of the 50% Husband and Wife Pension, the circumstances in which it will be provided unless the Employee and Spouse elect otherwise, the availability of such an election, the estimate effect of the 50% Husband and Wife Pension and the eligibility conditions and other material features of the optional forms of benefits provided under the Plan including the relative values of the optional forms. The Employee and Spouse may revoke a previous waiver or file a new waiver at any time during the 90-day period and after the receipt of the information referred to in this subsection.

    (4)    A Spouse's consent to a waiver of the 50% Husband and Wife Pension shall be effective only with respect to that Spouse.

NEIP0102

**Section 5.03    Married Employees: Optional Forms of Benefit Payments**

The following optional forms of benefit payments are available to married Employees who, with their Spouses, reject the 50% Husband and Wife Pension as set forth in Section 5.02(d):

(a)    *Straight Life Benefit*

The Straight Life Benefit is a monthly benefit for the life of the Employee only in the unreduced amount to which he is entitled under this Plan. The Straight Life Benefit is the normal form of benefit for unmarried Employees.

(b)    *75% Husband and Wife Pension*

The 75% Husband and Wife Pension is a reduced monthly benefit for the life of the Employee and, if the Employee dies before his Qualified Spouse, the latter will receive a monthly benefit for her lifetime of 75% of the Employee's reduced monthly benefit. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement) as set forth in Appendix B.

(c)    *100% Husband and Wife Pension*

The 100% Husband and Wife Pension is a reduced monthly benefit for the life of the Employee and, if the Employee dies before his Qualified Spouse, the latter will receive a monthly benefit for her lifetime of 100% of the Employee's reduced monthly benefit. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement) as set forth in Appendix C.

(d)    *50% Husband and Wife Pension/Five-Year Certain and Life Benefit Option*

The 50% Husband and Wife Pension/Five-Year Certain and Life Benefit option pays a reduced monthly benefit for the life of the Employee, and if the Employee dies before receiving 60 monthly payments, the Employee's Qualified Spouse will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's reduced monthly benefit. The Qualified Spouse will then receive 50% of the Employee's reduced monthly benefit for her lifetime. If the Qualified Spouse dies before the expiration of the 60-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's monthly benefit reduced only for the Five-Year Certain Benefit form, and if applicable, Early Retirement. If the Employee dies after receiving 60 months of payments, his Qualified Spouse will receive 50% of his reduced monthly pension for her lifetime. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendices A and I.

If the Qualified Spouse predeceases the Employee, the Employee's pension will "pop up" to a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendix I. If the Employee dies after the Qualified Spouse but before the expiration of the 60-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's monthly benefit reduced only for the Five-Year Certain Benefit form and, if applicable, Early Retirement. {Adopted 5/4/94; effective 7/1/94}

(e)    *50% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option*

The 50% Husband and Wife Pension/Ten-Year Certain and Life Benefit option pays a reduced monthly benefit for the life of the Employee, and if the Employee dies before receiving 120 monthly payments, the Employee's Qualified Spouse will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's reduced monthly benefit. The Qualified Spouse will then receive 50% of the Employee's reduced monthly benefit for her lifetime. If the Qualified Spouse dies before the expiration of the 120-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's monthly benefit reduced only for the Ten-Year Certain Benefit form, and if applicable, Early Retirement. If the Employee dies after receiving 120 months of payments, his Qualified Spouse will receive 50% of his reduced monthly pension for her lifetime.

28

The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendices A and I.

If the Qualified Spouse predeceases the Employee, the Employee's pension will "pop up" to a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendix I. If the Employee dies after the Qualified Spouse but before the expiration of the 120-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's monthly benefit reduced only for the Ten-Year Certain Benefit form and, if applicable, Early Retirement. {Adopted 5/4/94; effective 7/1/94}

(f)    *75% Husband and Wife Pension/Five-Year Certain and Life Benefit Option*

The 75% Husband and Wife Pension/Five-Year Certain and Life Benefit option pays a reduced monthly benefit for the life of the Employee, and if the Employee dies before receiving 60 monthly payments, the Employee's Qualified Spouse will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's reduced monthly benefit. The Qualified Spouse will then receive 75% of the Employee's reduced monthly benefit for her lifetime. If the Qualified Spouse dies before the expiration of the 60-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's monthly benefit reduced only for the Five-Year Certain Benefit form, and if applicable, Early Retirement. If the Employee dies after receiving 60 months of payments, his Qualified Spouse will receive 75% of his reduced monthly pension for her lifetime. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendices B and I.

If the Qualified Spouse predeceases the Employee, the Employee's pension will "pop up" to a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendix I. If the Employee dies after the Qualified Spouse but before the expiration of the 60-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's monthly benefit reduced only for the Five-Year Certain Benefit form and, if applicable, Early Retirement. {Adopted 5/4/94; effective 7/1/94}

(g)    *75% Husband and Wife Pension/Ten-Year Certain and Life Option*

The 75% Husband and Wife Pension/Five-Year Certain and Life Benefit option pays a reduced monthly benefit for the life of the Employee, and if the Employee dies before receiving 120 monthly payments, the Employee's Qualified Spouse will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's reduced monthly benefit. The Qualified Spouse will then receive 75% of the Employee's reduced monthly benefit for her lifetime. If the Qualified Spouse dies before the expiration of the 120-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's monthly benefit reduced only for the Ten-Year Certain Benefit form, and if applicable, Early Retirement. If the Employee dies after receiving 120 months of payments, his Qualified Spouse will receive 75% of his reduced monthly pension for her lifetime. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendices B and I.

If the Qualified Spouse predeceases the Employee, the Employee's pension will "pop up" to a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendix I. If the Employee dies after the Qualified Spouse but before the expiration of the 120-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's monthly benefit reduced only for the Ten-Year Certain Benefit form and, if applicable, Early Retirement. {Adopted 5/4/94; effective 7/1/94}

NEIP0104

(h)    *100% Husband and Wife Pension/Five-Year Certain and Life Benefit Option*

The 100% Husband and Wife Pension/Five-Year Certain and Life Benefit option pays a reduced monthly benefit for the life of the Employee, and if the Employee dies before receiving 60 monthly payments, the Employee's Qualified Spouse will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's reduced monthly benefit. The Qualified Spouse will then receive 100% of the Employee's reduced monthly benefit for her lifetime. If the Qualified Spouse dies before the expiration of the 60-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's monthly benefit reduced only for the Five-Year Certain Benefit form, and if applicable, Early Retirement. If the Employee dies after receiving 60 months of payments, his Qualified Spouse will receive 100% of his reduced monthly pension for her lifetime. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendices C and I.

If the Qualified Spouse predeceases the Employee, the Employee's pension will "pop up" to a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendix I. If the Employee dies after the Qualified Spouse but before the expiration of the 60-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's monthly benefit reduced only for the Five-Year Certain Benefit form and, if applicable, Early Retirement. {Adopted 5/4/94; effective 7/1/94}

(i)    *100% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option*

The 100% Husband and Wife Pension/Ten-Year Certain and Life Benefit option pays a reduced monthly benefit for the life of the Employee, and if the Employee dies before receiving 120 monthly payments, the Employee's Qualified Spouse will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's reduced monthly benefit. The Qualified Spouse will then receive 100% of the Employee's reduced monthly benefit for her lifetime. If the Qualified Spouse dies before the expiration of the 120-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's monthly benefit reduced only for the Ten-Year Certain Benefit form, and if applicable, Early Retirement. If the Employee dies after receiving 120 months of payments, his Qualified Spouse will receive 100% of his reduced monthly pension for her lifetime. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendices C and I.

If the Qualified Spouse predeceases the Employee, the Employee's pension will "pop up" to a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement), as set forth in Appendix I. If the Employee dies after the Qualified Spouse but before the expiration of the 120-month period, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's monthly benefit reduced only for the Ten-Year Certain Benefit form and, if applicable, Early Retirement. {Adopted 5/4/94; effective 7/1/94}

**Section 5.04    Conditions for 50%, 75% and 100% Husband and Wife Pensions alone or with the Five or Ten-Year Certain and Life Benefit Option (except as otherwise noted).**

(a)    If a Husband and Wife Pension would be payable except for the fact that the Spouse is not a Qualified Spouse on the Employee's Effective Date because the Employee and Spouse have not been married for at least a year at that time, pension payments to the Employee shall be made in the amount adjusted for the Husband and Wife Pension and if the Employee and Spouse have not been married to each other for at least a year before the death of the Employee, the difference between the amounts that had been paid and the amounts that would have been paid if the monthly amount had not been adjusted shall be paid to the Spouse, if then alive, and otherwise to the Employee's Designated Beneficiary.

NEIP0105

(b)    If an Employee's Spouse dies before the Employee's Effective Date, the Husband and Wife Benefit will be null and void and the Employee will receive his pension in the form of a Straight Life Benefit. If an Employee gets married to a Spouse or loses a Spouse between the date on which all documents were received by the Fund Office and the Employee's Effective Date, the Effective Date may be postponed for up to 90 days so that the effect of the gain or loss of a Spouse can be taken into account.

(c)    If the Spouse of a Retired Employee who has elected (or failed to reject) a Husband and Wife Pension after July 1, 1980 dies before the Retired Employee or is divorced from the Retired Employee, the Retired Employee's pension benefit shall be increased, effective the month following the month of the Spouse's death or divorce, to the amount which would have been payable to the Retired Employee if he and his Spouse had elected the Straight Life Benefit in Section 5.03(a).

In the event that a Retired Employee and his Spouse are divorced, the Retired Employee's benefit shall not be increased as provided in this Section unless the former Spouse is not required to be treated as a Spouse for purposes of this Plan pursuant to a Qualified Domestic Relations Order as defined in the Employee Retirement Income Security Act of 1974, as amended. {Adopted 2/8/94}

(d)    (1)    Section 5.04(a) and Section 5.04(b) are applicable to the 50% Husband and Wife Pension/Five-Year Certain and Life Benefit Option, the 50% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option, the 75% Husband and Wife Pension/Five-Year Certain and Life Benefit Option, the 75% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option, the 100% Husband and Wife Pension/Five-Year Certain and Life Benefit Option, and the 100% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option. {Adopted 5/4/94; effective 7/1/94}

(2)    In the event of a divorce between the Employee and Qualified Spouse, the Employee's pension will not increase under Section 5.04(c) if he is receiving his pension in the 50% Husband and Wife Pension/Five-Year Certain and Life Benefit Option, the 50% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option, the 75% Husband and Wife Pension/Five-Year Certain and Life Benefit Option, the 75% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option, the 100% Husband and Wife Pension/Five-Year Certain and Life Benefit Option, and the 100% Husband and Wife Pension/Ten-Year Certain and Life Benefit Option. {Adopted 5/4/94; effective 7/1/94}

## Section 5.05    Inactive Vested Employee

An Employee who (1) had at least one Hour of Work under the Plan after September 1, 1974, (2) is vested, (3) had not retired under the Plan before August 23, 1984, and (4) is not otherwise entitled to, or eligible to elect, protection for a surviving Spouse through a "qualified joint and survivor annuity" within the meaning of Section 205 of ERISA, either before or after enactment of the Retirement Equity Act, shall be automatically entitled to receive his benefit as a Husband and Wife Pension in accordance with the provisions of this Plan in effect before the effective date of this Article V.

## Section 5.06    Relation to Qualified Domestic Relations Order

Any rights of a former Spouse or other alternate payee under a Qualified Domestic Relations Order, with respect to an Employee's pension, shall take precedence over those of any later Spouse of the Employee under this Article.

31

NEIP0106

**Section 5.07    Straight Life Benefit: Normal Form of Benefit for Unmarried Employees**

(a)    The normal form of benefit payment for Employees who retire on a Normal, Early, Vested or Disability Pension and are not married on their Effective Date is a monthly amount payable for the remainder of the Employee's life terminating with the payment for the month in which the Retired Employee's death occurs. An unmarried Employee who becomes entitled to receive a pension benefit shall automatically receive it in the normal form of a Straight Life Benefit, unless the Employee has filed a timely rejection of that form of payment in accordance with Section 5.07(c), in which case such Employee may choose an optional form of payment as provided in Section 5.08, subject to the limitations of that Section. {Adopted 5/4/94; Effective 7/1/94}

(b)    For purposes of this Plan, an unmarried Employee shall be one who does not have a Spouse as defined in Section 1.29.

(c)    To be timely, a rejection of the applicable normal form for an unmarried Employee must be filed within the 90-day period ending on the Effective Date of the Employee's benefit as provided in Section 7.05(b). To be valid, such a rejection must be made after the Employee has been provided with information which includes a general explanation of the applicable normal form, the circumstances in which it will be provided unless the Employee elects otherwise, the availability of such an election, the estimated effect of the applicable normal form, and the eligibility conditions and other material features of the optional forms of benefits provided under the Plan including the relative values of the optional forms. The Employee may revoke a previous waiver or file a new waiver at any time during the 90-day period and after the receipt of the information referred to in this subsection. {Adopted 5/4/94; Effective 7/1/94}

**Section 5.08    Unmarried Employees: Optional Forms of Benefit Payments** {Adopted 5/4/94; Effective 7/1/94}

An unmarried Employee who formally rejects the applicable normal form as set forth in Section 5.07 shall be entitled to receive the following optional forms of benefit:

(a)    *Five-Year Certain and Life Benefit*

The Five-Year Certain and Life Benefit is a reduced monthly benefit for the life of an Employee who has waived the normal form of benefit applicable to him. If the Employee dies before receiving 60 monthly payments, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 60-month period equal to 100% of the Employee's reduced monthly benefit. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement) as set forth in Appendix G.

(b)    *Ten-Year Certain and Life Benefit*

The Ten-Year Certain and Life Benefit is a reduced monthly benefit for the life of an Employee who has waived the normal form of benefit applicable to him. If the Employee dies before receiving 120 monthly payments, the Employee's Designated Beneficiary will receive a monthly benefit for the remainder of the 120-month period equal to 100% of the Employee's reduced monthly benefit. The Employee's monthly benefit shall be a percentage of the full monthly amount otherwise payable as a Straight Life Benefit (after adjustment, if any, for Early Retirement) as set forth in Appendix H.

32

NEIP0107

**ARTICLE VI**

**DEATH BENEFITS AND RETURN**
**OF EMPLOYEE CONTRIBUTIONS**

**Section 6.01    Pre-Retirement Spouse's Benefits**

(a)    Upon the death at any age of a married Employee with Vested Status who is employed in Covered Employment or whose absence from Covered Employment is due to one of the reasons enumerated in Section 3.06(a), (b), (c), (d), (e), or (f), or if he is on layoff for not more than 24 months, his Spouse shall be entitled to receive a monthly pension benefit of one-half (½ ) of the Employee's monthly benefit calculated as if he had retired on a Normal Retirement Pension in the Straight Life Benefit form on the first day of the month in which his death occurs.

(b)    Upon the death at any age of a married Employee who has at least 7 years of Vesting Service and at least 17,000 hours of work reported on his behalf who dies within 90 days of the last date the Employee completed at least one Hour of Work in Covered Employment, his Spouse shall be entitled to receive a monthly pension benefit of one-half (½) of the Employee's monthly benefit calculated as if he retired on a Normal Retirement Pension in the Straight Life Benefit form on the first day of the month in which his death occurs.

(c)    If the Spouse makes application for this benefit within nine (9) months of the date of the Employee's death, the benefit shall be payable as of the first day of the month following the date of death. If application is made more than nine (9) months from the date of the Employee's death, the benefit shall be payable as of the first day of the month following receipt of the Spouse's application by the Trustees.  The benefit shall be payable to the Spouse until his or her death.

**Section  6.02    Pre-Retirement Spouse's Benefit: Terminated**
**Vested Employees**

(a)    A Pre-Retirement Spouse Benefit shall be paid under this Section to the surviving Qualified Spouse of a Vested Employee who completed an Hour of Work under the Plan after August 22, 1984, who dies before his pension payments start and at a time when he is neither employed in Covered Employment, nor absent from Covered Employment for one of the reasons enumerated in Section 3.06(a), (b), (c), (d), (e), or (f), or for a layoff of up to 24 months, subject to Subsection 6.02(e).

(b)    A Spouse is a Qualified Spouse for the purpose of this Section if the Employee and Spouse were married on the date of the Employee's death, had been married to each other throughout the year ending with the date of his death, or if the couple were divorced and the former Spouse is required to be treated as a Spouse or Surviving Spouse under a Qualified Domestic Relations Order as defined in the Employee Retirement Income Security Act, as amended.

(c)    If the Employee described in Section 6.02(a) left Covered Employment on or after age 55, the surviving Qualified Spouse shall be entitled to an automatic lifetime Spouse's benefit determined in accordance with the provisions of Section 5.02 as if the Employee had retired on the first day of the month in which his death occurs.

(d)    If the Employee described in Section 6.02(a) left Covered Employment prior to age 55, the surviving Qualified Spouse shall be entitled to an automatic lifetime Spouse's benefit determined in accordance with the provisions of Section 5.02 as if the Employee had elected to have his Vested Pension begin upon his attainment of age 55 (or his date of death, if later) and then had died immediately thereafter subject to this subsection 6.02 (d).

(1)    Notwithstanding the provisions of Section 6.02(a) above, an Employee who completed an Hour of Work in Covered Employment on or after July 1, 1976 and prior to August 23, 1984, and who is entitled to a Vested Pension pursuant to the provisions of Section 4.04 but who is

NEIP0108

not yet in receipt thereof, may elect, prior to the commencement date of his Vested Pension, to have the provisions of this Section 6.02(d) apply to him.

(e) If a Vested Employee who completed an Hour of Work under the Plan after August 22, 1984 dies after he has executed and mailed an application for a pension but before his pension payments start and at a time when he is neither employed in Covered Employment, nor absent from Covered Employment for one of the reasons enumerated in Section 3.06(a), (b), (c), (d), (e), or (f), or for a layoff of up to 24 months, and has elected to receive his pension in the form of a Husband and Wife Pension with his Qualified Spouse as beneficiary, his surviving Qualified Spouse may elect to receive the surviving spouse portion of the pension so elected by the Employee in lieu of the Pre-Retirement Spouse Benefit. The surviving Qualified Spouse would not have the right to make this election in the event that the pension for which the Vested Employee applied would not commence within 90 days of the date of application. The Spouse's election shall be in writing, shall acknowledge the effect of such election, and shall be witnessed by a Notary Public. {Adopted 12/4/95, effective 7/1/95} {Revisions adopted 12/10/96, effective 1/1/97}

## Section 6.03    Pre-Retirement Death Benefits: Return of Employee Contributions

(a) *Eligibility*

Death Benefits under this Section will be paid to the Designated Beneficiary of an Active Employee or Vested Employee who dies prior to the commencement of his retirement benefit and who is not married on the date of his death or who leaves a Spouse who is not eligible for Pre-Retirement Spouse's Benefits under Section 6.01 or 6.02.

(b) *Amount*

The Designated Beneficiary under this Section will receive a lump sum payment consisting of the Employee's Accumulated Employee Contributions, if any, as of the first day of the month in which the death of the Employee occurred.

(c) *Following the Death of the Employee's Spouse*

Upon the death of an Active Employee or Vested Employee whose Spouse is eligible for the Pre-Retirement Spouse's Benefits under Section 6.01 or 6.02 and following the death of the Employee's Spouse, the Designated Beneficiary will receive a lump sum payment consisting of the excess, if any, of the Employee's Accumulated Employee Contributions to the date the Spouse's Benefit commenced over the total amount of the pension payments received by the Employee and/or his Spouse.

(d) If an Employee dies before a distribution began, payments shall be made over a period no longer than the life expectancy of his Spouse.

(e) If an Employee's Beneficiary is not his surviving spouse, the payment of any benefits that become payable on account of the Employee's death shall begin no later than one year from the date of death or, if later, as soon as practicable after the Trustees learn of the death.

## Section 6.04    Retired Employee Death Benefits

(a) *Return of Employee Contributions*

Upon the death of a Retired Employee who is either unmarried on the date of his death or who is married and has elected the Straight Life Benefit in Section 5.03(a), the Employee's Designated Beneficiary will receive a lump sum payment consisting of the excess if any, of the Employee's Accumulated Employee Contributions to the date the pension commences over the total amount of the pension payments received by the Employee and any other payments required to be made under the terms of a Qualified Domestic Relations Order as defined in the Employee Retirement Income Security Act, as amended.

NEIP0109

Upon the death of a married Retired Employee who has not elected the Straight Life Benefit and following the death of the Retired Employee's Spouse, there will be paid to the Designated Beneficiary a lump sum consisting of the excess, if any, of the Employee's Accumulated Employee Contributions to the date the pension commences over the total amount of the pension payments received by the Employee and his Spouse.

(b)    *Lump Sum Death Benefit*

A lump sum death benefit of five thousand dollars ($5,000.00) will be paid to the Designated Beneficiary of a Retired Employee who is receiving a Normal, Early, Vested, or Disability Retirement Pension under the Plan except that this Lump Sum Death Benefit is not payable to the Designated Beneficiary of a Retired Employee receiving a Disability Retirement Pension who is entitled to a life insurance benefit under the National Elevator Industry Health Benefit Plan. {Adopted 5/9/95, effective 7/1/95}

## Section 6.05    Designated Beneficiary

(a)    Each Employee may name a Designated Beneficiary or Beneficiaries to receive benefits under this Article by filing such designation in writing with the Trustees on a form prescribed by the Trustees. The Employee has the right to change his Designated Beneficiary(ies) at any time. Any designation or change shall be effective upon receipt by the Trustees prior to the death of the Employee.

It shall be the responsibility of an individual who claims to be a Designated Beneficiary to demonstrate that a designation or change has been so received by the Trustees if the Fund records do not reflect such designation or change.

(b)    Upon the death of an Employee who has no properly Designated Beneficiary(ies), who has divorced his Designated Beneficiary(ies), or whose Designated Beneficiary(ies) has predeceased him, amounts otherwise payable to a Designated Beneficiary(ies) shall be paid to the following in the order listed:

(1)    The Employee's Spouse
(2)    The Employee's Children
(3)    The Employee's Parents
(4)    The Employee's Personal Representative

Amounts shall be paid to individuals in a category only if there are no persons in a higher category who survive the Employee. Amounts will be divided equally among all persons in a category.

(c)    Notwithstanding anything herein to the contrary, a married Participant who, with his Spouse, has elected the Straight Life Benefit, may change his Designated Beneficiary(ies) only with the consent of his Spouse. Such consent must be in writing, must acknowledge the Beneficiary or Beneficiaries so designated, and must be witnessed by a Notary Public.

## Section 6.06    Return of Employee Contributions

(a)    *Eligibility*

An Employee may elect to receive his Accumulated Employee Contributions in a lump sum at any age, subject to the following conditions:

(1)    He has not attained Vested Status; and

(2)    He has suffered a Break-in-Service or he has left Covered Employment for a period of at least twelve (12) months; and

(3)    He has not been employed in Covered Employment for at least six (6) months prior to his application for return of his Accumulated Employee Contributions; and

(4)    He has not received any pension benefit from this Plan; and

NEIP0110

(5)   His Spouse, if any, consents in writing to the withdrawal of his Accumulated Employee Contributions. Such consent must acknowledge the effect of the withdrawal and must be notarized.

(b)    *Amount*

The amount of an Employee's severance benefit shall be his Accumulated Employee Contributions to the first day of the month in which his application is received by the Trustees.

(c)    *At Age 65*

Any former Employee who, at the time of his termination of employment, did not elect to receive a return of his Accumulated Employee Contributions under Section 6.06(a) above, and who is not eligible for a Vested Pension shall, upon attaining age 65, receive his Accumulated Employee Contributions as of the first of the month following the date the Employee attained age 65.

## Section 6.07    Cashout of Benefits

If the present value of a benefit to be paid to a surviving Spouse under Sections 6.01 or 6.02 is $3,500 or less, the benefit will be paid to the surviving Spouse in a lump sum; provided, however, that if the Spouse is the Designated Beneficiary for the Accumulated Employee Contributions and the amount of the Accumulated Employee Contributions as of the date of the Employee's death is greater than the present value of the applicable Spouse's benefit under Section 6.01 or 6.02, the Accumulated Employee Contributions shall be paid to the surviving Spouse instead of the present value of the Spouse's benefit.

The present value of the Spouse's benefit for purposes of this Section shall be determined using the 1971 Group Annuity Mortality Table. The interest assumption shall be equal to the rate promulgated by the Pension Benefit Guaranty Corporation, effective as of July 1 of the Plan Year in which the payment is due to be made, for the valuation of immediate annuities in terminated non-multiemployer pension plans that do not close out under a Notice of Sufficiency.

## Section 6.08    Waiver of Benefits {Adopted 9/22/93, Effective 8/1/93}

Subject to the limitations set forth in Section 7.13, any Retired Employee or Beneficiary who is eligible for, or who is receiving, any benefit may elect to waive all or any part of his benefits upon a showing that such waiver is necessary for eligibility for government-provided benefits by delivering to the Trustees a signed and acknowledged written waiver; provided, however, that such waiver may be withdrawn and the benefit resumed effective the first day of the first month beginning more than 30 days after receipt of written notice of the waiver withdrawal to the Trustees. The Retired Employee or Beneficiary shall not be entitled to the benefits which have been waived. No Retired Employee is permitted to waive under the provisions of this Section 6.08 any part of the benefits which may be payable following his death to his surviving Spouse under the 50% Husband and Wife Pension, under any other benefit option, or under any death benefit provided by the Plan.

A Retired Employee or Beneficiary may not waive his benefits once the mandatory distribution requirements of Section 7.13 apply to him. However, a Retired Employee who does not have a living Spouse or a Beneficiary to whom the mandatory distribution requirements of Section 7.13 apply may waive the receipt of his remaining monthly payments and elect to receive a single sum that is the actuarial equivalent of his monthly benefit but only upon a showing that such a single sum payment is necessary for eligibility for government-provided benefits. If the actuarial equivalent of the monthly payment is greater than $3500, the Retired Employee or Beneficiary will only be entitled to receive a lump sum payment of $3500 with the remainder of the actuarial equivalent of his benefit being paid in monthly payments for the remainder of his life. The payment of the single sum alone shall discharge the Fund completely from any further obligation to pay benefits to the Retired Employee, his Beneficiaries or survivors.

NEIP0111

## ARTICLE VII

## APPLICATIONS, BENEFIT PAYMENTS
## AND RETIREMENT

**Section 7.01     Application**

A pension must be applied for in writing filed with the Trustees in advance of its Effective Date. Except as provided in Section 7.05, a pension shall first be payable for the first month after the month in which the application is received by the Trustees.

**Section 7.02     Information and Proof**

Every Employee or Retired Employee shall furnish, at the request of the Trustees, any information or proof reasonably required to determine his benefit rights. If the claimant makes a willfully false statement material to his application or furnishes fraudulent information or proof material to his claim for benefits, any benefits to which he would not otherwise have a right under this Plan shall be denied, suspended, or discontinued. The Trustees shall have the right to recover any benefit payments made in reliance on any willfully false or fraudulent statement, information, or proof submitted by a claimant (including withholding of material facts) plus interest and costs, without limitation by recovery through offset of benefit payments as permitted by this Section.

**Section 7.03     Action of Trustees**

(a)     The Trustees shall have discretionary authority to make interpretations of this Plan as are necessary to carry out the intent and purpose of the Plan and provide for its effective administration.

(b)     In all actions regarding determinations concerning benefit eligibility, the Trustees shall be the sole judge of:

    (1)     the standard of proof required in any case;

    (2)     the application and interpretation of the Plan;

    (3)     the amount of or entitlement to a pension; and,

    (4)     the crediting of Future or Past Service.

(c)     The decisions of the Trustees with respect to any of the foregoing shall be final and binding on all parties.

(d)     Wherever in the Plan the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and non-discriminatory manner.

**Section 7.04     Right of Appeal**

(a)     An Employee whose application for benefits under this Plan has been denied, in whole or in part, is to be provided with adequate notice in writing setting forth the specific reasons for such denial, and shall have the right to appeal the decision, by written request received by the Trustees within 180 days after receipt of such notice. Such written request must clearly indicate that the Employee desires the Trustees to review his claim. The appeal shall be considered by the Trustees or a person or committee designated by the Trustees and a decision shall be communicated to the claimant.

(b)     All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons, in connection with this Pension Plan or the administration thereof, whether as to any

NEIP0112

claim for any benefits preferred by an Employee, Beneficiary or any other person, or whether as to the construction or the language or meaning of the Pension Plan or the Trust Agreement, or as to any writing, decision, instrument or accounts in connection with the operation of the Pension Plan or otherwise, shall be submitted to the Trustees, and the decision of the Trustees shall be binding upon all persons dealing with the Pension Plan or claiming benefits under the Pension Plan.

**Section 7.05    Benefit Payments Generally**

(a)    An Employee who is eligible to receive benefits under this Plan and who makes application in accordance with the rules of the Pension Plan shall be entitled upon retirement to receive the monthly benefits provided for the remainder of his life, subject to the other provisions of this Article and of any other applicable provisions of this Plan.  If the Actuarial Present Value of the benefit payable under the Plan exceeds $3500, benefits may not be paid prior to the date the Employee has attained Normal Retirement Age without the consent of the Employee. The consent of the Employee and the Employee's Spouse (within the meaning of Section 1.29), if applicable, shall be obtained in writing within the 90-day period ending on the Effective Date of the Pension.  The consent shall not be valid unless the Employee and his Spouse have received a general description of the material features and an explanation of the relative values of the optional forms of benefit available under the Plan prior to giving consent.

(b)    Pension benefits shall be payable commencing with the first day of the month following the month in which the Trustees received the Employee's application or such later date as is necessary to meet the consent requirements in Section 7.05(a), unless the payee elects a later date; provided however, that he has fulfilled all the conditions for entitlement to benefits, including the requirement of Section 7.01 for the filing of an application and notice of retirement with the Trustees.  Such first day of such first month is what is meant by the "Effective Date" or "Annuity Starting Date" of the Employee's pension.  In the case of a Benefit paid under Section 7.05(c), the Effective Date shall be as described in this Section 7.05(b) regardless of any retroactive payment of benefits required by law.

An Employee may elect in writing signed by the Employee and filed with the Trustees to receive benefits first payable for a later month, provided that no such election filed on or after January 1, 1984 may postpone the commencement of benefits to a date later than April 1 following the calendar year in which the Employee will reach age 70½ unless the Employee remains in Covered Employment until a later date.

No election filed on or after July 1, 1989 may postpone the commencement of benefits to a date later than April 1 following the calendar year in which the Employee will reach age 70½ subject to the rules of Section 401(a)(9) of the Internal Revenue Code and related regulations.

Benefit payments shall be made as soon as practical after the Employee's Effective Date but, in no event, unless the Employee elects otherwise, as provided in this Section 7.05(b) shall the payment of benefits begin later than the 60th day after the later of the close of the plan year in which:

(1)    the Employee attains Normal Retirement Age, or

(2)    the Employee terminates his Covered Employment and retires as that term is defined in Section 7.06 of this Article.

In any event, the Trustees need not make payment before they are first able to ascertain entitlement to, or the amount of, the pension.

(c)    If application is delayed beyond 60 days after the Plan Year in which the Employee both (1) reaches his 65th birthday, and (2) terminates Covered Employment, an additional payment shall be made to the Employee.  Such additional payment shall be equal to the total of the monthly payments which would have been made to the Employee for the period from the first day of the month following 60 days after such Plan Year to the date the pension payments commence.

NEIP0113

(d)  Payment of benefits shall include retroactive payment for any months for which the pension is due and payable in accordance with subsection (b) of this Section.

(e)  (1)  This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Article, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(2)  Definitions

(i)  Eligible rollover distribution: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, any distribution to the extent such distribution is required under section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(ii)  Eligible retirement plan: An eligible retirement plan is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described section 401(a) of the Code that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(iii)  Distributee: A distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined by section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(iv)  Direct rollover: A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

## Section 7.06    Retirement

(a)  To be considered retired, an Employee must have separated from service with any and all covered Employers, except for employment for the purpose of rehabilitation as provided in Section 1.26.

(b)  An Employee who has so separated from service, as defined in (a) above, shall be considered retired notwithstanding subsequent employment or re-employment with a covered Employer for less than 40 Hours of Work in any month.

## Section 7.07    Suspension of Benefits

(a)  *Before Normal Retirement Age*

(1)  An Employee's monthly benefit shall be suspended for any month in which he worked or was paid for any employment in "Disqualifying Employment" before he has attained Normal Retirement Age. "Disqualifying Employment" for the period before Normal Retirement Age is any work of the type covered by the trade or craft jurisdiction of the Union, including supervisory work, either for a person, firm or corporation, or employment or self-employment

39

NEIP0114

in any category of work in the elevator industry. For the purposes of this Article a Retired Employee shall not be considered to be employed in the elevator industry if he is employed solely as an elevator inspector and performs no work of the type which is Covered Employment under this Plan. {Revisions adopted 12/10/96, effective 1/1/97}

(2)     The benefits of an Employee retired on a Disability Pension who returns to employment prior to Normal Retirement Age shall not be suspended as provided in this section, but such Disability Pension may be terminated by the Trustees as provided in Section 4.05(d).

(b)     *After Normal Retirement Age*

An Employee's monthly benefit shall be suspended for any month in which he worked or was paid for at least 40 hours in "Disqualifying Employment" after he has attained Normal Retirement Age. "Disqualifying Employment" for the period after Normal Retirement Age means employment (or self-employment) that is in an industry covered by the Plan when the Employee's pension payments began, in the geographic area covered by the Plan when the Employee's pension began, and in any occupation in which the Employee worked under the Plan at any time or any occupation covered by the Plan at the time the Employee's pension payments began.

(1)     The term "industry covered by the Plan" means, for the purposes of this Article, the elevator industry and any other industry in which Employees covered by the Plan were employed when the Employee's pension began or, but for suspension under this Article, would have begun. For purposes of this Article, a Retired Employee shall not be considered to be employed in the elevator industry if he is employed solely as an elevator inspector and performs no work of the type which is Covered Employment under this Plan. {Revision adopted 12/10/96; effective 1/1/97}

(2)     The geographic area covered by the Plan is any state of the United States in which contributions were required to be made by or on behalf of any Employer, plus the remainder of any standard metropolitan statistical area which falls in part within such state, and any other area covered by the Plan when the Employee's pension began or, but for suspension under this Article, would have begun.

Notwithstanding any provision of the Plan to the contrary, an Employee's benefits will be suspended after Normal Retirement Age if he continues to work in Covered Employment for which Employer contributions to the Plan are required or continues to work in Disqualifying Employment. However, no benefits will be suspended after an Employee's Required Beginning Date, as defined in Section 7.13(c).

(c)     *Definition of Suspension*

"Suspension of benefits" for a month means non-entitlement to benefits for the month. If benefits were paid for a month for which benefits were later determined to be suspended, the overpayment shall be recoverable through deductions from future pension payments, pursuant to subsection (g), and in accordance with Section 7.03.

(d)     *Notices*

(1)     Upon commencement of pension payments, the Trustees shall notify the Retired Employee of the Plan rules governing suspension of benefits, including identity of the industries and area covered by the Plan.

(2)     A Retired Employee shall notify the Plan in writing within 30 days after starting any work of a type that is or may be Disqualifying Employment under the provisions of the Plan and without regard to the number of hours of such work (that is, whether or not less than 40 hours in a month). If a Retired Employee has worked in Disqualifying Employment in any month and has failed to give timely notice to the Plan of such employment, the Trustees shall presume that he worked at least 40 hours in such month and any subsequent month before the

40

NEIP0115

Employee gives notice that he has ceased Disqualifying Employment. The Employee shall have the right to overcome such presumption by establishing that his work was not in fact an appropriate basis, under the Plan, for suspension of his benefits.

If a Retired Employee has worked in Disqualifying Employment for any number of hours for a contractor at a building or construction site and he has failed to give timely notice to the Plan of such employment, the Trustees shall presume that he has engaged in such work for as long as the contractor has been and remains actively engaged at that site. The Employee shall have the right to overcome such presumption by establishing that his work was not in fact an appropriate basis, under the Plan, for suspension of his benefits.

The Trustees shall inform all retirees at least once every 12 months of the re-employment notification requirements and the presumptions set forth in this paragraph.

(3)     A Retired Employee whose pension has been suspended shall notify the Plan when Disqualifying Employment has ended. The Trustees shall have the right to hold back benefit payments until such notice is filed with the Plan.

(4)     An Employee may ask the Plan whether a particular employment will be disqualifying. The Plan shall provide the Employee with its determination.

(5)     The Plan shall inform a Retired Employee of any suspension of his benefits by notice given by personal delivery or first class mail during the first calendar month in which his benefits are withheld. Such notice shall include a description of the specific reasons for the suspension, copy of the relevant provisions of the Plan, a description of those provisions, reference to the applicable regulation of the U.S. Department of Labor, and a statement of the procedure for securing a review of the suspension. In addition, the notice shall describe the procedure for the Employee to notify the Plan when his Disqualifying Employment ends. If the Plan intends to recover prior overpayments by offset under Section 7.07(g)(2), the suspension notice shall explain the offset procedure and identify the amount expected to be recovered, and the periods of employment to which they relate.

(e)     *Review*

By written request filed with the Trustees an Employee shall be entitled to a review of a determination suspending his benefits. The same right of review shall apply, under the same terms, to a determination by or on behalf of the Trustees that contemplated employment will be Disqualifying Employment. Such review under this section shall be in accordance and pursuant to Section 7.04 on appeals.

(f)     *Waiver of Suspension*

The Trustees may, upon their own motion or on request of an Employee, waive suspension of benefits subject to such limitations as the Trustees in their sole discretion may determine, including any limitations based on the Employee's previous record of benefit suspensions or non-compliance with reporting requirements under this Article.

(g)     *Resumption of Benefit Payments*

(1)     Benefits shall be resumed for months after the last month for which benefits are suspended with payments beginning no later than the third month after the last calendar month for which benefits are suspended, provided the Employee has complied with the notification requirements of Section 7.07(d)(3) above.

(2)     Overpayments attributable to payments made for any month or months for which the Employee had Disqualifying Employment shall be deducted from pension payments otherwise paid or payable subsequent to the period of suspension. The deduction from a benefit after the Retired Employee has attained Normal Retirement Age shall not exceed 25% of the monthly pension payments, except that the Plan may withhold 100% of the first pension payment made

41

NEIP0116

upon resumption after a suspension. If a Retired Employee dies before recoupment of overpayments has been completed, deductions shall be made from the benefits payable to his Beneficiary or contingent annuitant, subject to the 25% limitation on the rate of deduction. Nothing in this Section shall prohibit the Trustees from taking legal action for overpayments in addition to any offset which is applied.

**Section 7.08     Benefit Payments Following Suspension**

(a)     The monthly amount of pension when resumed after suspension shall be determined under Section 7.08(a)(1) and adjusted for any optional form of payment in accordance with Section 7.08(a)(2). Nothing in this Section shall be understood to extend any benefit increase or adjustment effective after the Employee's initial retirement to the amount of pension upon resumption of payment, except to the extent that it may be expressly directed by other provisions of the Plan.

However, a Retired Employee who returns to Covered Employment and earns at least one (1) year of Vesting Service, shall, upon his subsequent retirement, be entitled to a recomputation of his pension amount based on his additional credited service after his initial retirement. The portion of his pension attributable to Covered Employment after his initial retirement shall be computed on the basis of his subsequent Applicable Benefit Rate.

(1)     The amount shall be determined as if it were then being determined for the first time, but on the basis of an adjusted age. The adjusted age shall be the age of the Employee at the beginning of the first month for which payment is resumed, reduced by (A) the months for which he previously received benefits to which he was entitled and (B) the months for which his benefits were suspended for work if that work was in Disqualifying Employment and would have been Disqualifying Employment if the Employee had already attained Normal Retirement Age.

(2)     The amount determined under the above paragraphs shall be adjusted for the 50% Husband and Wife Pension.

(b)     *Effect of Return to Covered Employment on Type and Form of Benefit.*

A Husband and Wife benefit form or any other benefit form which takes effect following the death of the Retired Employee in effect immediately prior to suspension of benefits shall remain effective if the Retired Employee's death occurs while his benefits are in suspension. If a Retired Employee returns to Covered Employment, he will not be entitled to a new election as to the form of benefit with respect to his benefit earned prior to his initial retirement. However, if a Retired Employee returns to Covered Employment and earns additional benefits, he will be entitled to an election as to the form of benefit with respect to the additional benefits in accordance with Section 7.08(c)(5) and (6) below. A Retired Employee who returns to Covered Employment shall not be entitled to change the type of benefit (Normal, Early, Disability, Vested) in effect at his initial retirement. {Adopted 9/22/93, effective 1/1/94}

(c)     *Additional Benefits Earned Following Suspension*

(1)     Benefit accruals will not cease and the rate will not be reduced because an Employee has reached any age and continues to work in Covered Employment.

(2)     Benefit increases shall apply to reemployed Pensioners to the same extent that they apply to any other Employees who have stopped working in Covered Employment under the Plan for a comparable period for reasons other than retirement.

(3)     An Employee's benefits accrued after Normal Retirement Age shall be reduced, but not below zero, by the actuarial equivalent of the benefits paid to the Employee for the periods in which the additional benefits were accrued.

42

NEIP0117

(4)    Any additional pension amount earned by an Employee in Covered Employment after Normal Retirement Age will be determined at the end of each Plan Year and will be payable as of the first month following the end of the Plan Year in which it accrued, provided payment of benefits at that time is not suspended due to the Employee's continued employment.

(5)    If an Employee retires with an Effective Date on or after Normal Retirement Age and then returns to Covered Employment, any subsequent benefit accrued will be payable in the benefit form selected at retirement.

(6)    If an Employee retires with an Effective Date before Normal Retirement Age and then returns to Covered Employment, any subsequent benefits accrued will be payable in the benefit form selected following the resumption of the Employee's benefit payments. The requirements of Section 7.05 shall apply to such additional benefits.

(7)    If benefit payments are suspended pursuant to Section 7.07 of the Plan for an Employee who continues in Covered Employment after Normal Retirement Age without a separation and who does not receive a benefit payment, the commencement of benefit payments following such suspension shall be the Effective Date.

## Section 7.09    Incompetence or Incapacity of a Retired Employee or Beneficiary

In the event it is determined by the Trustees that a Retired Employee or Beneficiary is unable to care for his affairs because of illness, accident or incapacity, either mental or physical, any payment due may, unless a claim shall have been made for such payment by a legally appointed guardian, committee or other legal representative, be applied to the maintenance and support of the Retired Employee or Beneficiary, or be paid to the Spouse or other relative of the Retired Employee or Beneficiary who appears to the Trustees to be best qualified to apply the payments to the comfort, maintenance and support of the Retired Employee or Beneficiary. Such payment shall discharge the Trustees of all liability with respect thereto.

## Section 7.10    Non-Assignment of Benefits

No Employee, Retired Employee, or Beneficiary entitled to benefits under this Plan shall have the right to assign, alienate, transfer, encumber, pledge, mortgage or anticipate his benefits in any manner. Neither the Pension Fund, nor any of the assets thereof, nor any benefit payments shall be subject to any legal process or proceeding, to levy, execution or to attachment or garnishment for the payment of any claim against any Employee, Retired Employee or Beneficiary; nor shall the Fund, its assets or such payments be subject to the jurisdiction of any bankruptcy court or insolvency proceedings. However, nothing in this Section shall be construed as preventing the Trustees from honoring a Qualified Domestic Relations Order as defined in the Employee Retirement Income Security Act, as amended.

## Section 7.11    No Right to Assets

No person other than the Trustees of the Pension Fund shall have any right, title or interest in any of the income, or property of any funds received or held by or for the account of the Pension Fund, and no person shall have any right to benefits provided by the Pension Plan except as expressly provided herein.

## Section 7.12    Maximum Limitations

(a)    Anything herein to the contrary notwithstanding, effective July 1, 1992 the Annual Pension Benefit payable to an Employee under this Plan in the form of a Straight Life Benefit (with no ancillary benefits) actuarially adjusted shall not at any time within the Limitation Year exceed the lesser of:

NEIP0118

(1)    $90,000.00 or such higher amount as adjusted for cost of living increases as permitted by Internal Revenue Service Regulations, or

(2)    100% of the Employee's average compensation for the three consecutive calendar years during which the Employee was both an active Employee in the Plan and had the greatest aggregate compensation from Contributing Employers.

(b)    The limitations of (a)(1) and (2) shall not apply if the Annual Pension Benefit payable to an Employee does not exceed $10,000 and the Employee was never a participant in a defined contribution plan of an Employer.

(c)    In the case of an Employee who has accrued less than 10 years of participation, the maximum Annual Pension Benefit payable to such Employee may not exceed the lesser of (a)(1) multiplied by a fraction, the numerator of which is his years of participation and the denominator of which is 10, or (a)(2).

(d)    If the Annual Pension Benefit of an Employee begins before the Social Security Retirement Age, the $90,000 limitation set forth in (a)(1), or, if applicable, (c) above shall be reduced so that it is equivalent to such a benefit beginning at the Social Security Retirement Age. The adjustment under this subsection (d) shall not be less than the greater of 5% or the rate specified in the Plan.

(e)    If the Annual Pension Benefit of an Employee begins after the Social Security Retirement Age, the $90,000 limitation set forth in (a)(1) or, if applicable, (c) above shall be increased so that it is equivalent to such a benefit beginning at the Social Security Retirement Age. The adjustment under this subsection (e) shall not be greater than the lesser of 5% or the rate specified in the Plan.

(f)    In the case of a plan maintained by Local Unions, which are tax exempt organizations, for their employees, (d) above shall be applied by substituting "age 62" for "Social Security Retirement Age" and as if (d) included the following provision: "The reduction under this subparagraph shall not reduce the limitation of (a)(1) below $75,000 if the benefit begins at or after age 55, or if the benefit begins before age 55, the equivalent of the $75,000 limitation for age 55. In such a case, (e), above shall be applied by substituting "age 65" for "Social Security Retirement Age".

(g)    If an Employee is covered by a defined benefit plan of an Employer (or any other employer under common control with an Employer) which is qualified under Section 401(a) of the Internal Revenue Code and which is other than a multiemployer plan, such plan will be aggregated with this Plan in accordance with IRS Regulation § 1.415-8(e) for purposes of determining compliance with the limitations under 415(b) of the Internal Revenue Code.

(h)    If an Employee is covered by a defined contribution plan of an Employer (or any other employer under common control with an Employer) which is qualified under Section 401(a) of the Internal Revenue Code and which is other than a multiemployer plan, such plan will be aggregated with this Plan in accordance with IRS Regulation Section 1.415-8(e) for purposes of determining compliance with the limitations under 415(e) of the Internal Revenue Code.

(i)    "Limitation Year" shall be the Calendar Year.

(j)    For purposes of this Section, "Compensation" shall mean the Employee's earned income for services rendered in the course of employment with an Employer maintaining the Plan, but shall not include any contributions made to this Plan, to any other plan of deferred compensation, or any other fringe benefit.

(k)    The Trustees shall be entitled to rely on a representation by an Employer that the pension payable to an Employee under this Plan to the extent attributable to employment with that Employer, does not, together with any other pension payable to him under any other plan maintained by that Employer, whether or not terminated, and to the extent attributable to employment with that Employer, exceed the limitations of Section 415 of the Internal Revenue Code.

NEIP0119

(l)    In the case of an Employee who has less than 10 years of service with an Employer, the limitations referred to in Sections 7.12(a)(2), 7.12(b), 7.12(g) and 7.12(h) shall be the limitations determined under such sections multiplied by a fraction, the numerator of which is his years of service with an Employer and the denominator of which is 10.

## Section 7.13    Mandatory Distribution for Older Employees

(a)    Benefit payments which are required to commence in accordance with this section shall be made automatically to Employees to whom benefits are payable by the Fund but who fail or refuse to apply for benefits.  Benefits shall be paid on the Required Beginning Date, as follows:

(1)    in a single sum if the present value of the Employee's benefit does not exceed $3,500; and

(2)    in the form of a 50% Husband and Wife Pension calculated on the assumption that the Employee is and has been married for at least one year by the date payments start and that the husband is four (4) years older than the wife.

(3)    once benefit payments commence, the benefit in the form of the 50% Husband and Wife Pension is irrevocable, provided, however, that the benefit may be changed to the normal form for an unmarried Employee, if the Employee proves that he was not married on the Required Beginning Date, and provided that the amount of future benefit payments may be adjusted based on the actual ages of the Employee and Spouse if different from the assumption in (ii) above.

(b)    Employees or beneficiaries who cannot be located through reasonable efforts shall be presumed dead and their benefits shall be forfeited, subject to reinstatement if the participant or beneficiary later makes application for benefits.

(c)    An Employee's Required Beginning Date is April 1 of the calendar year following the year in which the Employee attains the age of 70½ subject to the provisions of Section 401(a)(9) of the Internal Revenue Code and related regulations.

## ARTICLE VIII
## FINANCING OF BENEFITS

## Section 8.01    Contributions

All benefits provided by the Plan shall be paid from the National Elevator Industry Pension Fund to which Employers are contractually obligated to contribute.  Employee contributions ceased during the Plan Year ended June 30, 1982.  *{Prior to July 9, 1987 however, no contributions will be accepted after the last day of the month in which the Employee attains age 70}.*

The contributions by an Employer will made in the manner and within the time limits prescribed by: (a) the Standard Agreement, Otis Agreement, or other written agreement, (b) the Agreement and Declaration of Trust, and (c) this Plan and any rules or regulations adopted by the Trustees in administering this Plan.

## Section 8.02    Non-Reversion

In no event shall any of the corpus or assets of the Pension Fund revert to any Employer or be subject to any claims of any kind or nature by any employer; provided, however, that an erroneous contribution made by an Employer may be returned to the Employer within the time period and under the circumstances prescribed by law and the rules and regulations adopted by the Trustees.  See Appendix E.

NEIP0120

**ARTICLE IX**

**AMENDMENT, MERGER AND TERMINATION**

**Section 9.01     Amendment**

(a)     The Trustees may amend or modify this Plan at any time consistent with the Agreement and Declaration of Trust.

(b)     No such change or modification that increases the past service and/or future service benefits or involves a change in the eligibility requirements for any benefit under the Plan of Pension Benefits shall be adopted except by a resolution adopted by the unanimous vote of all Trustees following advice by the Actuary to the Trustees that any such change or modification is actuarially within the financial limitations of the Pension Trust Fund and that minimum funding standards as prescribed by any applicable law continue to be met.  In the event of failure to obtain a unanimous vote of the Trustees, the arbitration provisions outlined in Article VII of the Trust Agreement shall apply.  Any change or modification of the Plan of Pension Benefits made by the Trustees shall be set forth in writing in an appropriate resolution of the Trustees with notice to NEII and the Union prior to the effective date of any change or modification.  The Trustees shall reduce the benefits when, and to the extent that, they are advised by the Actuary that it is necessary to make any such reduction in order to stay within the financial limitations of the Pension Trust Fund.  However, benefits payable to persons retired under this Plan prior to amendment shall not in any event be reduced nor shall the accrued benefit of any Employee be reduced except as provided by the Employee Retirement Income Security Act of 1974, as amended.

**Section 9.02     Merger**

In the case of any merger or consolidation with or transfer of assets or liabilities to any other plan, each Employee shall be entitled to receive a benefit immediately after the merger, consolidation or transfer (if the plan then terminated) which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the plan had then terminated) to the extent determined by the Pension Benefit Guaranty Corporation.

**Section 9.03     Termination**

(a)     *Right to Terminate*

The Union and NEII shall have the right to discontinue or terminate this Plan in whole or in part.  The rights of all affected Employees, Retired Employees, surviving Spouses and Beneficiaries to benefits accrued to the date of termination, partial termination or discontinuance to the extent funded as of such date shall be nonforfeitable.

(b)     Termination of this Plan will occur as a result of:

(1)     the adoption of a Plan amendment which provides that Employees will receive no credit for any purpose under the Plan for service with any Employer after the date specified by such amendment; or

(2)     the withdrawal of every Employer from the Plan, or the cessation of the obligation of all Employers to contribute under the Plan; or

(3)     the adoption of an amendment to the Plan which causes the Plan to become a defined contribution plan.

NEIP0121

(c) (1) The date of termination under (b)(1) or (b)(3) above is the later of:

    (i) the date on which the amendment is adopted,

       or

    (ii) the date on which the amendment takes effect.

   (2) The date on which termination occurs under (b)(2) above is the earlier of:

    (i) the date on which the last Employer withdraws, or

    (ii) the first day of the first Plan Year for which no Employer contributions were required under the Plan.

(d) In case of termination under (b)(2) above, the Plan sponsor shall, except as provided in (f) below:

   (1) limit the payment of benefits to benefits which are nonforfeitable under the Plan as of the date of the termination, and

   (2) pay benefits attributable to Employer contributions, other than death benefits, only in the form of an annuity, unless the Plan assets are distributed in full satisfaction of all nonforfeitable benefits under the Plan.

(e) In case of a termination under (b)(2) above, the Plan sponsor shall reduce benefits and suspend benefit payments in accordance with Section 9.04 below.

(f) In the case of a termination under (b)(1) or (b)(3) above, the rate of an Employer's contributions under the Plan for each Plan Year beginning on or after the Plan termination date shall equal or exceed the highest rate of Employer contributions at which the Employer had an obligation to contribute under the Plan in the five preceding Plan Years ending on or before the Plan termination date, unless the PBGC approves a reduction in the rate based on a finding that the Plan is or soon will be fully funded.

(g) The Plan sponsor may authorize the payment other than in the form of an annuity of an Employee's entire nonforfeitable benefit attributable to Employer contributions, other than a death benefit, if the value of the entire nonforfeitable benefit does not exceed $1,750. The PBGC may authorize the payment of benefits under the terms of the terminated Plan other than nonforfeitable benefits, or the payment other than in the form of an annuity of benefits having a value greater than $1,750, if the PBGC determines that such payment is not adverse to the interest of the Plan's participants and beneficiaries generally and does not unreasonably increase the PBGC's risk of loss with respect to the Plan.

## Section 9.04     Benefits After Termination

(a) Upon termination of the Plan under Section 9.03 above, the Plan sponsor shall amend the Plan to reduce benefits and shall suspend benefit payments, as required by this Section 9.04.

(b) (1) Upon termination under (a) above, the value of nonforfeitable benefits under the Plan and the value of the Plan's assets shall be determined in writing, in accordance with regulations prescribed by the PBGC, as of the end of the Plan Year during which Section 9.03(d) above becomes applicable to the Plan, and each Plan Year thereafter.

   (2) For purposes of this Section, Plan assets include outstanding claims for withdrawal liability.

(c) (1) If, according to the determination made under (b) above, the value of nonforfeitable benefits exceeds the value of the Plan's assets, the Plan sponsor shall amend the Plan to reduce benefits under the Plan to the extent necessary to ensure that the Plan's assets are sufficient, as determined and certified in accordance with regulations prescribed by the PBGC, to discharge when due all of the Plan's obligations with respect to nonforfeitable benefits.

47

NEIP0122

(2)    Any Plan amendment by this Subsection shall, in accordance with regulations prescribed by the Secretary of the Treasury:

(i)    reduce benefits only to the extent necessary to comply with (c)(1);

(ii)    reduce accrued benefits only to the extent that those benefits are not eligible for the PBGC's guarantee under Section 4022A(b) of ERISA;

(iii)    comply with the rules for and limitations on benefit reductions under a Plan in reorganization, as prescribed in Section 4022A of ERISA except to the extent that the PBGC prescribes other rules and limitations in regulations under this Section; and

(iv)    take effect no later than 6 months after the end of the Plan Year for which it is determined that the value of nonforfeitable benefits exceeds the value of the Plan's assets.

(d)    (1)    If the Plan is insolvent under 2(i) below and the benefit payments exceed the resource benefit level, any such payments which are not basic benefits shall be suspended, in accordance with this Subsection, to the extent necessary to reduce the sum of such payments and such basic benefits to the greater of the resource benefit level of basic benefits, unless an alternative procedure is prescribed by the PBGC in connection with a supplemental guarantee program established under Section 4022A(g)(2) of ERISA.

(2)    For purposes of this Subsection, for a Plan Year:

(i)    the Plan is insolvent if:

(A)    the Plan has been amended to reduce benefits to the extent permitted by (c) above, or

(B)    the Plan's available resources are not sufficient to pay benefits under the Plan when due for the Plan Year, and

(ii)    'resource benefit level' and 'available resources' have the meanings set forth in paragraphs (2) and (3), respectively, of Section 4245(b) of ERISA.

(3)    If the Plan is insolvent under (2) (i) above, the Plan sponsor shall have the powers and duties of the plan sponsor of a plan in reorganization which is insolvent within the meaning of Section 4245(b)(1) of ERISA, except that regulations governing the plan sponsor's exercise of those powers and duties under this Section shall be prescribed by the PBGC, and the PBGC shall prescribe by regulation notice requirements which assure that Plan participants and beneficiaries receive adequate notice of benefit suspensions.

(4)    The Plan is not required to make retroactive    benefit payments with respect to that portion of a benefit which was suspended under this Subsection, except that the provisions of Sections 4245(c)(4) and (5) of ERISA shall apply if the Plan is insolvent under (2)(i) above, in connection with the Plan Year during which such Section 9.03(d) first became applicable to the Plan and every year thereafter, in the same manner and to the same extent as such provisions apply to insolvent plans in reorganization under Section 4245 of ERISA in connection with insolvency years under such Section 4245.

48

NEIP0123

## ARTICLE X
## EMPLOYER WITHDRAWAL LIABILITY

**Section 10.01    General**

(a)    An Employer that withdraws from the Plan after September 25, 1980, in either a complete or partial withdrawal shall owe and pay withdrawal liability to the Plan, as determined under this Article and the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, and the Deficit Reduction Act of 1984.

(b)    For purposes of this Article, all corporations, trades or businesses that are under common control, as defined in regulations of the Pension Benefit Guaranty Corporation (PBGC) are considered a single employer, and the entity resulting from a change in business form described in Section 4218(1) of ERISA is considered to be the original employer.

(c)    The Trustees have determined that this Plan is a Pension Plan to which the Building and Construction Industry rules of Section 4203(b) of ERISA applies. Withdrawal liability shall be determined under the laws and regulations promulgated under the special rules of ERISA applicable to Building and Construction Industry Pension Plans.

**Section 10.02    Complete Withdrawal Defined**

(a)    A complete withdrawal occurs if:

    (1)    the Employer ceases to have an obligation to contribute under the Plan, and

    (2)    the Employer

        (i)    continues to perform work in the jurisdiction of the collective bargaining agreements of the type for which contributions were previously required, or

        (ii)    resumes such work within 5 years after the date on which the obligation to contribute under the plan ceased, and does not renew the obligation at the time of the resumption.

(b)    For this purpose, an Employer's obligation to contribute is not considered to have ceased solely because:

    (1)    the Employer is not, at the particular time, engaged in activity for which it has a contractual obligation to contribute, or

    (2)    the Employer temporarily suspends contributions during a labor dispute involving its employees.

(c)    The date of a complete withdrawal is the date the Employer's obligation to contribute ceased.

**Section 10.03    Amount of Liability for Complete Withdrawal**

(a)    *General*

The amount of an Employer's liability for a complete withdrawal shall be its initial liability amount, reduced in accordance with Subsection (g). The amount of liability is determined in accordance with the presumptive method for determining employer liability under the Multiemployer Pension Plan Amendments Act of 1980. However, since the Plan had a zero unfunded vested liability as of June 30, 1980, all references under the presumptive method to unfunded vested liability as of June 30, 1980 are omitted.

NEIP0124

The amount of an Employer's liability for a complete withdrawal shall be determined as of the end of the Plan Year preceding the date of the Employer's withdrawal, taking into account the Plan provisions in effect on the last day of said Plan Year.

(b)   *Initial Liability Amounts*

The initial liability amount is the sum of its proportional shares of the balances of the changes in the Plan's unfunded vested liability and of the reallocated liability amounts for each Plan Year that ended after December 31, 1980 and before the date of the Employer's withdrawal.

(c)   *Unfunded Vested Liability Defined*

(1)   For purposes of this Article, the term "vested benefit" means a benefit for which a participant has satisfied the conditions for entitlement under this Plan (other than submission of a formal application, retirement, or completion of a required waiting period) whether or not the benefit may subsequently be reduced or suspended by a Plan amendment, an occurrence of any condition, or operation of law and whether or not the benefit is considered "vested" or "nonforfeitable" for any other purpose under the Plan.

(2)   The Plan's liability for vested benefits as of a particular date is the actuarial value of the vested benefits under this Plan, as of that date. Actuarial value shall be determined on the basis of methods and assumptions recommended by the Plan's enrolled actuary.

(3)   The unfunded vested liability of the Plan shall be the amount, not less than zero, determined by subtracting the value of the Plan's assets from the Plan's liability for vested benefits and also subtracting the unpaid balances of any withdrawal liability previously assessed. The Plan's assets are to be valued on the basis of rules recommended by the Plan's enrolled actuary.

(d)   *Annual Change in Unfunded Vested Liability*

(1)   The change in the Plan's unfunded vested liability for a Plan Year is the amount (which may be less than zero) determined by subtracting from the unfunded vested liability as of the end of the Plan Year the sum of the balances (as of the end of the Plan Year) of the unfunded vested liability for each Plan Year that ended after June 30, 1980 and before the Plan Year for which the change is determined.

(2)   The balance of the change in the Plan's unfunded vested liability for a Plan Year is the change in the Plan's unfunded vested liability for that year reduced by 5% of such amount for each succeeding complete Plan Year.

(3)   This result includes any amount designated as a Reallocated Liability Amount in accordance with (e) below.

(e)   *Reallocated Liability Amount*

For each Plan Year ended after June 30, 1980, the Reallocated Liability Amount is:

(1)   any amount of unfunded vested liability that the Trustees determine in the Plan Year to be uncollectible for reasons arising out of cases or proceedings under Title 11, United States Code, or similar proceedings;

(2)   any amount of unfunded vested liability that the Trustees determine in the Plan Year will not be assessed as a result of the limitations on liability described in Sections 4209, 4219(c)(1)(B) or 4225 of ERISA against an employer to whom a notice of liability under Section 4219 of ERISA has been sent; and

50

NEIP0125

(3)   any amount that the Trustees determine to be uncollectible or unassessable in the Plan Year for other reasons under standards not inconsistent with such regulations as may be prescribed by the Pension Benefit Guaranty Corporation.

(f)   *Apportionment of Unfunded Liability to Employer that has Withdrawn*

(1)   An Employer's proportional share of the change in the unfunded vested liabilities for a Plan Year ending after June 30, 1980 shall be determined by multiplying each of those amounts, if any, as determined for a Plan Year by a fraction:

(i)   the numerator of which is the total contributions that the Employer was obligated to make to the Plan for the Plan Year in which the change or reallocation arose and the four (4) preceding Plan Years ("Apportionment Base Period"); and

(ii)   the denominator of which is the total adjusted Employer contributions to the Plan with respect to the Apportionment Base Period, determined as follows:

(A)   The total contributions shall be the Employer contributions accrued in each of the Plan Years in the Apportionment Base Period if received by the Plan within two (2) months after the end of the Plan Year, plus any contributions accrued earlier but not included, for purposes of this denominator, as contributions with respect to any earlier Plan Year.

(B)   Notwithstanding Subparagraph (A), with respect to any Plan Year ended on or before June 30, 1980, the total employer contributions shall be the total reported in the Plan's audited financial statement for that Plan Year reduced by the amount of any Employer contributions included, consistent with these provisions, in any previous annual total.

(C)   The total adjusted Employer contributions shall be the total Employer contributions with respect to the Apportionment Base Period, determined under Subparagraphs (A) and (B), reduced by any contributions otherwise included in the total that were made by a substantial Employer that was not obligated to contribute to the Plan in the Plan Year in which the change or reallocation arose.

(2)   For purposes of the denominators of the fractions described in subparagraph (ii), "substantial Employer" means:

(i)   an Employer that contributed, in any one Plan Year of the relevant period, at least one percent of total Employer contributions to the Plan in the period, as determined for purposes of the relevant denominator, or if lower, $250,000; and

(ii)   any other Employer that was a member of an employer association, a group of employers covered by a single collective bargaining agreement or a group of employers covered by agreements with a single labor organization, if the contribution obligations of substantially all members of the group ceased in a single Plan Year and the group's aggregate contributions to the Plan in any one Plan Year of the relevant period totaled at least one percent of total Employer contributions to the Plan in the period, as determined for purposes of the relevant denominator or, if lower, $250,000.

(g)   *Limitations on the Amount of Withdrawal Liability*

(1)   Reduction for Employers with an Initial Liability of up to $150,000

From the initial liability amount, there shall be deducted the lesser of:

(i)   $50,000, or

(ii)   3/4 of 1 percent of the Plan's unfunded vested liability as of the end of the Plan Year preceding the Employer's withdrawal,

NEIP0126

less the excess of the initial amount over $100,000.

(2)    The amount of initial liability remaining after application of Subparagraph (1) shall be reduced, to the extent applicable, in accordance with Section 4219(c)(1)(B) of ERISA.

(3)    The amount of initial liability remaining after application of Subparagraph (2) shall be reduced in accordance with Section 4225 of ERISA if and to the extent that the Employer demonstrates that additional limitations under that Section apply.

### Section 10.04    Satisfaction of Withdrawal Liability

Withdrawal liability shall be payable in installments, in accordance with Section 10.05(c).  The total amount due in each 12-month period beginning on the date of the first installment shall be the product of:

(a)    the highest rate at which the Employer was obligated to contribute to the Plan in the Plan Year in which the withdrawal occurred and in the preceding nine (9) Plan Years, multiplied by

(b)    the Employer's average annual contribution base for the three (3) consecutive Plan Years, within the ten (10) consecutive Plan Years ending before the Year in which the withdrawal occurred, during which the Employer's contribution base was the highest.

(c)    This amount will be payable until the withdrawal liability is fully amortized (interest on the balance at the valuation interest rate), except that the number of installment payments due in the final year shall be reduced to assure that the total payments will not exceed the Employer's total amortized withdrawal liability, and in no event will payments be required for more than 20 years.

### Section 10.05    Notice and Collection of Withdrawal Liability

(a)    *General*

Notice of withdrawal liability, reconsideration, determination of the amortization period, and of the maximum years of payments shall be as provided in Section 4219 of ERISA and in this Section.

(b)    *Arbitration*

A dispute between an Employer and the Plan concerning a determination of withdrawal liability shall be submitted to arbitration as provided in Section 4221 of ERISA to be conducted in accordance with rules adopted by the Trustees not inconsistent with regulations of the Pension Benefit Guaranty Corporation.  No issue concerning the computation of withdrawal liability may be submitted for arbitration unless the matter has been reviewed by the Plan in accordance with Section 4219(b)(2) of ERISA and any Plan rules adopted thereunder.

(c)    *Schedule of Payment*

(1)    Withdrawal liability shall be paid in equal monthly installments.  The final monthly installment shall be adjusted to assure that the total payments will not exceed the Employer's total amortized withdrawal liability and in no event will more than 240 monthly installments be payable.  Notwithstanding the pendency of any review, arbitration or other proceedings, payment shall begin on the first day of the month that begins at least 10 days after the notice of, and demand for, payment is sent to the Employer.  Interest shall accrue on any late payment from the date the payment was due until the date paid, at the rate described in subsection (d)(2), below.

(2)    If, following review, arbitration or other proceedings the amount of the Employer's withdrawal liability is determined to be different from the amount set forth in the notice and demand, adjustment shall be made by reducing or increasing the total number of installment payments due.  If the Employer has paid more than the amount finally determined to be its




52

NEIP0127

withdrawal liability, the Plan shall refund the excess with interest at the rate used to determine the amortization period under Subsection (d)(2).

(d)   *Default*

(1)   An Employer is in default on its withdrawal liability if any installment is not paid when due, the Plan has notified the Employer of its failure to pay the liability on the date it was due, and the Employer has failed to pay the past-due installment within 60 days after receipt of the late payment notice.

(2)   Interest shall be charged on any amount in default from the date the payment was due to the date it is paid at an annual rate consistent with proposed or final regulations of the PBGC.

(3)   In the case of a default on withdrawal liability, the Plan may require immediate payment of some or all installments that would otherwise be due in the future.

(4)   In addition to the event described in paragraph (1), the Trustees or their designee may declare an Employer in default when notice is received of any circumstances indicating a substantial likelihood that further payments will not be made in a timely fashion.

(e)   In any suit by the Trustees to collect withdrawal liability, including a suit to enforce an arbitrator's award and a claim asserted by the Trustees in an action brought by an Employer or other party, if judgment is awarded in favor of the Plan, the Employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined under Subsection (d)(2), liquidated damages equal to the greater of:

(1)   the amount of interest charged on the unpaid balance, or

(2)   20 percent of the unpaid amount awarded.

The Employer shall also pay attorneys' fees and all costs incurred in the action, as awarded by the court. Nothing in this paragraph shall be construed as a waiver or limitation of the Plan's right to any other legal or equitable relief.

(f)   *Prepayment*

An Employer may prepay all or part of its withdrawal liability, without penalty.

(g)   *Other Terms and Conditions*

The Trustees may require that an Employer post a bond, or provide the Plan other security for payment of its withdrawal liability, if:

(1)   the Employer's payment schedule would extend for longer than 18 months;

(2)   the Employer is the subject of a petition under the Bankruptcy Code, or similar proceedings under state or other federal laws; or

(3)   a substantial portion of the Employer's assets are sold, distributed or transferred or the Plan receives notice of a pending sale, distribution or transfer.

### Section 10.06    Partial Withdrawal Defined

(a)   Subject to subsection (b), a partial withdrawal occurs if there is a shift in the work mix within the Elevator Industry and area jurisdiction of a collective bargaining agreement under which the Employer is obligated to contribute to the Plan, with the result that no more than an insubstantial portion of the work for which the Employer was obligated to contribute prior to the shift remains covered under the Plan.

(b)   Pending issuance of final regulations by the PBGC or enactment of other applicable laws or regulations, partial withdrawal shall be determined on the basis of the Employer's work mix within a

53

NEIP0128

period of three (3) consecutive Plan Years ("Test Period") compared to its work mix within the five (5) Plan Years ("Base Period") preceding the Test Period. A partial withdrawal shall be deemed to have occurred if the Hours of Work on the basis of which the Employer has been obligated to contribute to the Plan under the collective bargaining agreement are, for each of the three (3) years in the Test Period:

(1)  less than 30 percent of what they had been, on average, in the two (2) Base Period years in which such hours had been highest, and

(2)  in each year of the Test Period, less than 30 percent of the total work level (as measured by manhours) of the type that is within the craft and area jurisdiction of the collective bargaining agreement, and

(3)  in the most current year of this Test Period, the Employer continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required in an amount at least equal to 70% of the average Hours of Work for the two (2) Base Period Years.

The Employer's covered hours and total work level for any Plan Year ended by June 30, 1978 shall be deemed to be not greater than its covered hours and total work level for the Year Ended June 30, 1979.


## Section 10.07   Partial Withdrawal - Amount

(a)  *Total Amount*

The amount of an Employer's liability for a partial withdrawal shall be its liability calculated under Section 10.03 as if the Employer had withdrawn completely on the last day of the first year of the Test Period, multiplied by a fraction that is one (1) minus a fraction:

(1)  the numerator of which is the total Hours of Work for which the Employer was obligated to contribute under the collective bargaining agreement for the Plan Year following the Test Period, and

(2)  the denominator of which is the average of the annual total Hours of Work for which the Employer was obligated to contribute under the collective bargaining agreement for each year in the Base Period.

(b)  *Annual Amount*

The total amount due in a 12-month period with respect to a partial withdrawal shall be the amount determined as if for a complete withdrawal multiplied by the fraction described in subsection (a).


## Section 10.08   Liability Adjustments and Abatements

(a)  *Successive Withdrawals*

If, after a partial withdrawal, an Employer again incurs liability for a complete or partial withdrawal, the liability incurred as a result of the later withdrawal(s) shall be adjusted to the extent necessary to avoid duplication of liability.

(b)  *Abatement After Renewed or Increased Participation*

If an Employer that has withdrawn from the Plan later renews the obligation to contribute, or if an Employer that has partially withdrawn later increases the share of its work in the craft and area jurisdiction of the collective bargaining agreement under which the Employer is obligated to contribute to the Plan so that the portion of such work that is covered under the Plan is determined by

NEIP0129

the Trustees to be more than insubstantial, the unpaid balance of the Employer's liability incurred on account of the earlier withdrawal or partial withdrawal shall be reduced in accordance with rules adopted by the Trustees pursuant to regulations of the PBGC.

### Section 10.09    Mass Withdrawal

Notwithstanding any other provisions of this Article, if all or substantially all contributing Employers withdraw from the Plan pursuant to an agreement or arrangements, as determined under ERISA Sections 4209 and 4219(c)(1)(D), the withdrawal liability of each such Employer shall be adjusted in accordance with those ERISA sections.

### Section 10.10    Notice to Employers

(a) Any notice that must be given to an Employer under this Article or under Subtitle E of Title IV of ERISA shall be effective if given to the specific member of a commonly controlled group that has or has had the obligation to contribute under the Plan.

(b) Notice shall also be given to any other member of the controlled group that the Employer identifies and designates to receive notices hereunder, in accordance with a procedure adopted by the Trustees.

### Section 10.11    Geographical Coverage of Standard Agreement

For the purposes of this Article, the geographic coverage of the Standard Agreement shall be the entire area covered by the Standard Agreement.

# ARTICLE XI
## MISCELLANEOUS

### Section 11.01    General

The Board of Trustees shall adopt from time to time service and mortality tables and a rate of interest for use in all actuarial calculations required in connection with the Plan, and shall designate a qualified Actuary to serve at its pleasure to make periodic actuarial valuations of the contingent assets and liabilities and level of benefits of the Plan. At least one such valuation shall be made six (6) months prior to the International Union of Elevator Constructors' National Convention. With respect to all matters specified hereunder as to be determined or estimated by the Actuary and with respect to all other actuarial matters, such Actuary's decisions shall be final and binding upon all persons and parties in interest, and references in other sections of this Plan to the "Actuary" shall be deemed to refer to the Actuary so designated by the Trustees.

### Section 11.02    Plan Consistent with Trust

If any provision of this Plan of Pension Benefits is inconsistent or in conflict with the provisions, purpose or intent of the Trust Agreement, said provision shall be inoperative and of no force and effect.

### Section 11.03    Retiree Medical Benefits

A Retired Employee or Beneficiary who is entitled to make payments to the National Elevator Industry Health Benefit Plan for coverage by that plan may authorize in writing a deduction from his monthly pension

NEIP0130

check of the amount required for medical coverage. Such authorizations are strictly voluntary and may be revoked at any time. Such authorization shall not be an assignment of benefits in that the Health Benefit Plan shall have no right enforceable against this Fund to any part of the monthly pension benefit. The Health Benefit Plan must acknowledge in writing that transfer of these kinds of deductions create no enforceable right in or to any benefit payment, or portion thereof, from this Fund. The deduction and transfer will only be made when or after the money would otherwise be payable to the Retired Employee or Beneficiary. These deductions cannot be made unless the Health Benefit Plan reimburses this Fund the costs of the deductions and transfers.

### Section 11.04    Titles for Reference Only

The titles of sections are for reference only. In the event of a conflict between a title and the content of a section, the content of the section shall control.

### Section 11.05    Gender and Number

The masculine pronoun whenever used in this Plan shall include the feminine pronoun, and the singular form shall include the plural form unless the context of the Plan demands otherwise.

### Section 11.06    IRS Model Amendment

Notwithstanding any other contrary provision of the Plan, in calculating the accrued benefit (including the right to any optional benefit provided under the Plan) of any participant, such participant shall accrue no additional benefit under the Plan to the extent that such additional benefit accrual exceeds the benefit which would otherwise accrue in accordance with the terms of the Plan as subsequently amended to comply with those qualification requirements described in Income Tax Regulations Section 1.401(b)-1(b)(2)(ii)(TRA '86).

This provision shall be effective until the last day of the first Plan Year commencing in 1989 and shall be effective for such period only if the subsequent TRA '86 amendment is made on or before the last day of the first Plan Year commencing in 1989.

In addition, the benefit accrued by any participant during the 1989 Plan Year shall in no event exceed the benefit accrual provided during the 1989 Plan Year with respect to such participant under the terms of the Plan as subsequently amended to comply with TRA '86. However, such participant's accrued benefit shall not be less than what the participant had accrued as of the last day of the last Plan Year beginning before January 1, 1989.

*Editorial Note: Plan document references amendments adopted or with effective date after the May 23, 1993 restated Plan*

## ARTICLE XII

## TOP-HEAVY PROVISIONS

### Section 12.01    Application of Top Heavy Provisions

This Article applies to Employees who are not Collectively Bargained Employees or Employees of the Union. The rules in this Article will apply separately to the Employees of each Employer. Each group of Employees to which the Top Heavy provisions apply will be referred to as a "Plan of an Employer". The Trustees will determine whether a Plan of an Employer is Top Heavy, as defined in Section 416(g) of the Internal Revenue Code and the regulations promulgated thereunder, as of each Determination Date. In the event that the Plan of an Employer is found to be Top Heavy, the provisions of this Article shall apply to the

NEIP0131

Plan of the Employer during the following Plan Year, to the exclusion of all other inconsistent provisions contained elsewhere in this Plan.

### Section 12.02    Definitions

For purposes of this Article, the following special definitions shall apply:

(a)    "Key Employee" means each employee or former employee who is, at any time during the Plan Year ending on the "Determination Date," or was, during any one (1) of the four (4) Plan Years preceding the Plan Year ending on the Determination Date, any one or more of the following:

    (1)    An Officer of the Employer whose annual compensation for the Plan Year exceeds 50% of the dollar limit in Section 415(b)(1)(A) of the Code for such Plan Year; or

    (2)    One of the ten employees owning (by attribution or otherwise) both more than a 1/2% interest and the largest interests in the Employer and who have annual compensation from the Employer for the Plan Year of more than the dollar limitation in Section 415(c)(1)(A) of the Code for such Plan Year; or

    (3)    A five (5) percent owner of the Employer; or

    (4)    A one (1) percent owner of the Employer who has annual compensation from the Employer for the Plan Year of more than $150,000.

For purposes of determining whether a person is an Officer in paragraph (1) above, no more than 50 employees (or, if less, the greater of three or 10% of all the employees) will be treated as Officers. In addition, persons who are merely nominal Officers will not be treated as Key Employees solely by reason of their titles as officers.

For purposes of paragraph (2) above, if two employees have the same interest in the Employer, the employee with the greater annual compensation from the Employer will be treated as having the larger interest.

The Beneficiary of a Key Employee shall also be considered to be a Key Employee.

(b)    "Non-Key Employee" means any person who is employed by an Employer in any Plan Year, but who is not a Key Employee for that Plan Year, and the beneficiary of any Non-Key Employee.

(c)    "Determination Date" means the last day of the immediately preceding Plan Year.

(d)    "Required Aggregation Group" means a group of plans consisting of each plan of the Employer in which a Key Employee participates during the Plan Year ending on the Determination Date, or during any of the four (4) Plan Years preceding the Plan Year ending on the Determination Date, and each other plan of the Employer which enables any plan in which a Key Employee participates to meet the requirements of IRC Sections 410(b) and 401(a)(4) during any such Plan Year.

(e)    "Permissive Aggregation Group" means a group of plans consisting of a Required Aggregation Group and any other plan not required to be included in the Required Aggregation Group, provided the resulting group, taken as a whole, would continue to satisfy the provisions of Code Sections 401(a)(4) and 410(b).

(f)    "Top Heavy Compensation" means an employee's compensation for any Plan Year that the Plan of an Employer is "Top Heavy," as defined in this Plan.

(g)    "Top Heavy Plan" means a plan of an Employer, including the portion of this Plan attributable to service with the Employer, under which the aggregate present value of accrued benefits for "Key Employees" exceeds sixty percent (60%) of the present value of accrued benefits for all employees under such plan and which is not part of a Required or Permissive Aggregation Group that is not a Top Heavy Group. "Top Heavy Plan" also means a plan of an Employer, including the portion of

NEIP0132

this Plan attributable to service with the Employer, if applicable, which is part of a Required Aggregation Group that is a Top Heavy Group. The value of an employee's accrued benefit distributed during the five year period ending on the Determination Date will be included in determining whether a plan is a Top Heavy Plan. However, if a former employee has not performed any services for the Employer during the five year period ending on the Determination Date, or if an employee is not a Key Employee on the Determination Date but was a Key Employee for any Plan Year prior to the Determination Date, the value of his or her accrued benefit will not be included in determining whether a plan is a Top Heavy Plan.

(h)     "Top Heavy Group" means a Required or Permissive Aggregation Group in which, as of the Determination Date, the sum of the following, based on service with the Employer, (1) the present value of accrued benefits for Key Employees under all defined benefit plans included in the Group, and (2) the aggregate value of account balances of Key Employees under all defined contribution plans included in the Group, exceeds sixty percent (60%) of a similar sum determined for all employees under all plans of the Employer which are part of such Group. The value of an employee's accrued benefit or account balance distributed during the five year period ending on the Determination Date will be included in determining whether a Group is a Top Heavy Group. However, if a former employee has not performed any services for the Employer during the five year period ending on the Determination Date or if an employee is not a Key Employee on the Determination Date but was a Key Employee for any Plan Year prior to the Determination Date, the value of the accrued benefits or account balances will not be included in determining whether the Group is a Top Heavy Group.

**Section 12.03    Top Heavy Minimum Benefits.**

(a)     *General Rule*

In any Plan Year in which a plan of an Employer, including the portion of this Plan attributable to service with the Employer, is a Top Heavy Plan, this Plan will provide a minimum benefit to each Non-Collectively Bargained Non-Key Employee of that Employer of the lesser of (1) two percent (2%) times the number of Years of Vesting Service with the Employer during which the plan of the Employer was Top Heavy, or (2) twenty percent (20%) of his compensation for the five consecutive years for which the Non-Collectively Bargained Non-Key Employee had the highest Compensation from the Employer. The minimum benefit refers to a benefit payable at the Non-Key Employee's Normal Retirement Age in the form of a single life annuity. A Non-Key Employee will not fail to accrue a minimum benefit because the Non-Key Employee:

(1)     was not employed on a specified day; or

(2)     received compensation less than a stated amount; or

(3)     failed to make a mandatory employee contribution, if any.

(b)     In any Plan Year in which a Non-Key Employee is a participant in both this Plan and another defined benefit plan or a defined contribution plan included in a Top Heavy Group, the Employer will not be required to provide a Non-Key Employee with the full separate minimum defined benefit plan benefit under both defined benefit plans or with both the full separate minimum defined benefit plan benefit and the full separate defined contribution plan allocation. Therefore, for Non-Collectively Bargained Non-Key Employees who are participating in another defined benefit plan or a defined contribution plan maintained by the Employer, the minimum benefits provided to such Employee under this Plan will be offset by benefits provided to the Employee under such other plans of the Employer.

(c)     For any Plan Year in which a plan of the Employer is determined to be Top Heavy, the vested portion of any Participant's Accrued Benefit will be determined under the following vesting schedule:

NEIP0133

VESTING SCHEDULE

| Years of Vesting Service | Vested Percentage |
|---|---|
| 1 | 0% |
| 2 | 0% |
| 3 | 100% |

If in any subsequent Plan Year, the Plan of the Employer ceases to be a Top Heavy Plan, the Trustees may, in their sole discretion, elect to (1) continue to apply this vesting schedule in determining the vested portion of any Non-Collectively Bargained Non-Key Employee's benefit, or (2) revert to the vesting schedule in effect before the Plan of the Employer became Top Heavy. If the Trustees elect to revert to the vesting schedule in effect before the Plan of the Employer became Top Heavy, any portion of an Employee's benefit that was vested before the Plan of the Employer ceased to be Top Heavy will remain vested, and any Non-Collectively Bargained Non-Key Employee with three or more Years of Vesting Service must be given the option of remaining under the above Top Heavy vesting schedule.

(d)    Adjustment of Limitation on Annual Benefit

(1)    If, for any Plan Year, the Plan of an Employer becomes a Top Heavy Plan, paragraphs (2)(B) and (3)(B) of Section 415(e) of the Code will be modified by substituting the number "1.0" for "1.25" in that Section. However, this modification will not apply if the minimum benefit provided under Section 12.03(a)(1), above, is changed to three percent (3%), and the percentage in Section 12.03(a)(2), above, is changed to thirty percent (30%).

(2)    If the Plan becomes "Super Top Heavy" (that is, it would be a Top Heavy Plan if "90%" were substituted for "60%" in Sections 12.02(g) and (h)), the exception provided for in Section 12.03(d)(1) will not apply.

{Adopted 6/29/95, effective 7/1/94}

59

NEIP0134

# EXHIBIT
# 9

# Death Claim

**ING**

Complete and sign the Employer's Statement. The Statement of Beneficiary must be signed by the beneficiary if the amount payable to the beneficiary is $5,000 or more. ~~Forward completed claim form along with a certified death certificate, a copy of the Insured's enrollment forms, and any beneficiary changes to: ING Life Claims, P.O. Box 1548, Minneapolis, MN 55440.~~

☒ ReliaStar Life Insurance
☐ ReliaStar Life Insurance Company
  of New York (outside NY)
Members of the ING family of companies
Toll-Free: 888-238-4840

## Employer's Statement

| Insured's Name George W. Caviness, Jr. | Birthdate 01/17 | Marital Status | ☐ Married ☐ Never Married | ☐ Widow(er) ☒ Divorced |
|---|---|---|---|---|

Other names by which the Insured may be or have been known *(maiden, hyphenated, nickname, derivative of first and/or middle, or alias)*

| Address *(Street, City or Town, State, ZIP)* 4647 Cades Cove Dr. Gardendale, AL 35071-3663 | Sex ☒ Male ☐ Female | Social Security Number |
|---|---|---|

| Policyholder's Name George W. Caviness, Jr. | Group Policy Number 633062 | Account Number 1 | Job Title Construction |
|---|---|---|---|

| Amount of this claim | | Date first entered employment 10/13/82 | Date last worked prior to death |
|---|---|---|---|
| Basic $ 20,000.00 | Accidental Death $ _____ | | |
| Optional $ _____ | Opt. Accidental Death $ _____ | Salary $ NA per ☐ hour ☐ week ☐ month ☐ year | Status ☒ Full-time ☐ Part-time If part-time, average hours per week _____ |
| Supplemental $ _____ | Other _____ $ _____ | | |

| Reason for stopping work |
|---|

| Status of employee at death ☒ Active ☐ Retired ☐ Disability Waiver of Premium | ☒ Union ☐ Non Union |
|---|---|

| Date of Application for coverage | Effective Date of Coverage 09/01/92 | Date of last salary change NA | Date of last beneficiary designation 12/23/04 |
|---|---|---|---|

| Date of Death 01/25/07 | Cause of Death. If death was caused by injuries, explain *(Attach newspaper clipping, if available).* |
|---|---|

If claim is for insurance on a dependent, give the following information concerning dependent *(list life amount above)*:

| Name | Address *(Street, City, State, ZIP)* | Social Security Number |
|---|---|---|

| Birthdate | Sex ☐ Male ☐ Female | Relationship to Insured ☐ Spouse ☐ Child | Marital Status ☐ Married ☐ Single ☐ Divorced | Date this dependent insured |
|---|---|---|---|---|

**Employer Certification** The above statements as to the insured are correct as reported on the employer's records. A Settlement Option brochure as identified on the Company website, http://www.ingemployeebenefits-us.com/service/foremployers/formslibrary/death_claims.htm, has been provided to each beneficiary.

| Name of Employer National Elevator Industry Benefit Plan | Date *(Month, Day, Year)* 09/12/07 |
|---|---|
| Employer's Address *(Street, City or Town, State, ZIP)* 19 Campus Blvd. Suite 200, Newtown Square, PA 14073-3268 | Telephone Number 800-523-4702, Ext 3305 |
| Authorized Signature Maureen Green | Title Accounting Assistant |

**Statement of Beneficiary** Name, Address, Birthdate, and Social Security Number of each beneficiary is required.

| Name of Beneficiary D C | Social Security Number | Birthdate 4-2- | Relationship SON |
|---|---|---|---|
| Address *(Street, City, State, ZIP)* 1554 Sequoia Trail Helena AL 35080 | | Telephone Number (205) 664-2664 | |

I certify under penalties of perjury that the Social Security Number on this form is correct. I am not subject to backup withholding. I am filing claim for the life insurance proceeds as _____

*(Beneficiary, Spouse, Executor, Trustee, etc.)*

If trustee, give date the trust was created _____
  Date

**RS000002**

Internal Revenue Service does not require your consent to any provision of this document other than the certificate required to avoid backup withholding.

| Beneficiary Signature Rhonda Caviness Pierce | Date 9-24-07 |
|---|---|

*See reverse side of form for additional Statements of Beneficiary, and Fraud Warnings. Page 1 of 2 and page 2 of 2 are required to file a claim.*

# EXHIBIT
# 10

**EXHIBIT**

10

# Death Claim

**ING** 🏛️

Complete and sign the Employer's Statement. The Statement of Beneficiary must be signed by the beneficiary if the amount payable to the beneficiary is $5,000 or more. ~~Forward completed claim form along with a certified death certificate, a copy of the Insured's enrollment forms, and any beneficiary changes to: ING Life Claims, P.O. Box 1548, Minneapolis, MN 55440.~~

☒ ReliaStar Life Insurance Company
☐ ReliaStar Life Insurance Company
  of New York (outside NY)
*Members of the ING family of companies*
Toll-Free: 888-238-4840

## Employer's Statement

| Insured's Name | Birthdate | Marital Status |
|---|---|---|
| George W. Caviness, Jr. | 01/17/ | ☐ Married ☐ Never Married ☒ Divorced ☐ Widow(er) |

Other names by which the Insured may be or have been known *(maiden, hyphenated, nickname, derivative of first and/or middle, or alias)*

| Address (Street, City or Town, State, ZIP) | Sex | Social Security Number |
|---|---|---|
| 4647 Cades Cove Dr. Gardendale, AL 35071-3663 | ☒ Male ☐ Female | |

| Policyholder's Name | Group Policy Number | Account Number | Job Title |
|---|---|---|---|
| George W. Caviness, Jr. | 633062 | 1 | Construction |

| Amount of this claim | | | Date first entered employment | Date last worked prior to death |
|---|---|---|---|---|
| Basic $ 20,000.00 | Accidental Death $ _____ | | 10/13/82 | |
| Optional $ _____ | Opt. Accidental Death $ _____ | | **Salary** $ NA per ☐ hour ☐ week ☐ month ☐ year | **Status** ☒ Full-time ☐ Part-time If part-time, average hours per week _____ |
| Supplemental $ _____ | Other _____ $ _____ | | | |

Reason for stopping work

| Status of employee at death | | | ☒ Union ☐ Non Union |
|---|---|---|---|
| ☒ Active ☐ Retired ☐ Disability Waiver of Premium | | | |

| Date of Application for coverage | Effective Date of Coverage | Date of last salary change | Date of last beneficiary designation |
|---|---|---|---|
| | 09/01/92 | NA | 12/23/04 |
| **Date of Death** 01/25/07 | Cause of Death. If death was caused by injuries, explain *(Attach newspaper clipping, if available).* | | |

If **claim is for insurance on a dependent, give the following information concerning dependent** (list life amount above):

| Name | Address (Street, City, State, ZIP) | | Social Security Number |
|---|---|---|---|
| | | | |

| Birthdate | Sex | Relationship to Insured | Marital Status | Date this dependent insured |
|---|---|---|---|---|
| | ☐ Male ☐ Female | ☐ Spouse ☐ Child | ☐ Married ☐ Single ☐ Divorced | |

**Employer Certification** The above statements as to the insured are correct as reported on the employer's records. A Settlement Option brochure as identified on the Company website, http://www.ingemployeebenefits-us.com/service/foremployers/formslibrary/death_claims.htm, has been provided to each beneficiary.

| Name of Employer | Date (Month, Day, Year) |
|---|---|
| National Elevator Industry Benefit Plan | 09/12/07 |
| **Employer's Address** (Street, City or Town, State, ZIP) 9 Campus Blvd Suite 200, Newtown Square, PA 19073-3258 | **Telephone Number** 800-523-4702, ext 2305 |
| **Authorized Signature** Maureen Green   Maureen Green | **Title** Accounting Assistant |

**Statement of Beneficiary** Name, Address, Birthdate, and Social Security Number of each beneficiary is required.

| Name of Beneficiary | Social Security Number | Birthdate | Relationship |
|---|---|---|---|
| Dallas Christopher Caviness | | 08-21 | Son |
| **Address** (Street, City, State, ZIP) 554 Sequoia Trail Helena AL 35080 | **Telephone Number** (205) 664-2664 | | |

I certify under penalties of perjury that the Social Security Number on this form is correct. I am not subject to backup withholding. I am making claim for the life insurance proceeds as _____

_(Beneficiary, Spouse, Executor, Trustee, etc.)_

If trustee, give date the trust was created _____.
                                                    *Date*

**RS000003**

*Internal Revenue Service does not require your consent to any provision of this document other than the certificate required to avoid backup withholding.*

| Beneficiary Signature | Date |
|---|---|
| Dallas Caviness | 9/22/07 |

*See reverse side of form for additional Statements of Beneficiary and Fraud Warnings. Page 1 of 2 and page 2 of 2 are required to file a claim.*

# EXHIBIT
# 11



# NATIONAL ELEVATOR INDUSTRY

## BENEFIT PLANS



19 CAMPUS BLVD., SUITE 200, NEWTOWN SQUARE, PA 19073-3288

June 8, 2007

**VIA CERTIFIED MAIL –**
**RETURN RECEIPT REQUESTED**

Ms. Rhonda Caviness
1554 Sequoia Trl
Helena, AL  35080-3824

Re:    National Elevator Industry Health Benefit Plan and the
          National Elevator Industry Pension Plan
          George W. Caviness, Jr. (Deceased), ID#: 801058777

Dear Ms. Caviness:

The Trustees of the National Elevator Industry Health Benefit Plan and the National Elevator Industry Pension Plan reviewed your appeal for payment of all life insurance and pension benefits to the children of George W. Caviness, Jr. After an in-depth discussion, the Trustees of the Funds determined that they must deny the appeal, as discussed more fully below.

The Funds have competing claims to the benefits payable as a result of the death of George W. Caviness, Jr. George Caviness passed away on January 25, 2007. At the time of his death, he was not married; you and Mr. Caviness had divorced on February 23, 2004. You maintain that the dissolution documents require that Mr. Caviness's two children, Dallas and Devin, be treated as Mr. Caviness's beneficiaries for purposes of any life insurance and pension benefits payable by the Funds due to his death.

However, the last Enrollment and Information Changes Form that the Funds have on file lists Mr. Caviness's brother, Robert William Caviness, as his sole beneficiary for any benefits due from the National Elevator Industry Pension and Health Benefit Plans.

Because of these competing claims, the Trustees of the Funds decided to initiate an interpleader action to resolve this dispute, unless you can come to an agreement between yourselves on a division of the benefits. In an interpleader action, a court will determine which competing claimant shall be entitled to receive the benefits.

We urge you to consider this matter carefully and determine whether a mutually agreeable resolution is in the best interest of everyone concerned. Upon receipt of a joint written request signed by all of the claimants (including any custodial parent of a minor child) and notarized, the Funds will honor the request on how to divide the benefits between the claimants as long as the division does not actuarially increase the amount of benefits payable by the Funds.

---

NEIP0183

**DRAFT -- 6/7/07**

        If you do not notify the Fund Office, <u>in writing</u>, within thirty (30) days from the date of this letter that you have agreed to accept a mutually agreeable apportionment of the benefits along with the details of your agreement, the Funds will proceed with an interpleader lawsuit to resolve this matter. The Fund office will be happy to discuss any proposed apportionment with the parties.

        If you have any questions, please feel free to contact the undersigned.

                            Very truly yours,

                            James M. Govannicci
                            Director, Pension & Eligibility Operations

cc:    Robert William Caviness
       Mary C. Feller, Esq.
       Maureen Green, Accounting Associate

2

NEIP0184